**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| YASMINE MAHONE, an individual, DAIN OLSON, an individual, and BRANDON TOLE, an individual, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>AMAZON.COM, INC., a Delaware corporation, AMAZON.COM SERVICES LLC; a Delaware Limited Liability Company; and AMAZON.COM.DEDC, LLC; a Delaware Limited Liability Company; and AMAZON.COM.KYDC LLC, a Delaware Limited Liability Company<br><br>        Defendants. | **CASE NO. 2:22-CV-00594 MJP**<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT, 38 U.S.C. § 4301 *ET SEQ*. – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

      Plaintiffs Yasmine Mahone, Dain Olson, and Brandon Tole ("Plaintiffs"), on behalf of themselves and the class of all other similarly situated persons, complain and allege upon information and belief, based among other things, upon the investigation made by Plaintiffs and their attorneys, allege as follows:

/ / /

/ / /

# I.  NATURE OF THE ACTION

1.  This is a civil class action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq*. ("USERRA"). It is brought by Plaintiffs on behalf of a nationwide Class of all persons similarly situated, including current and former employees of Amazon.com, Inc., Amazon.com Services LLC Amazon.com.dedc, LLC and/or Amazon.com.kydc LLC ("Amazon"), who were or are currently serving in the United States Armed Services or National Guard.

# II.  PARTIES

## A.  Plaintiff Yasmine Mahone

2.  Plaintiff Yasmine Mahone ("Plaintiff Mahone") is a citizen of the United States and a resident of the State of Alabama.

3.  Plaintiff Mahone was employed by Amazon from July 16, 2020 until she was terminated on October 18, 2020. At all times relevant, Plaintiff Mahone worked for Amazon in Bessemer, Alabama.

4.  At all times relevant, Plaintiff Mahone was in the Alabama Army National Guard ("AANG") and currently holds the rank of Specialist (paygrade E-4).

5.  During the relevant times referenced herein, Plaintiff Mahone was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

## B.  Plaintiff Dain Olson

6.  Plaintiff Dain Olson ("Plaintiff Olson") is a citizen of the United States and a resident of the State of Washington.

7.  Plaintiff Olson was employed by Amazon from May 9, 2016 until he was terminated on September 22, 2016. At all times relevant, Plaintiff Olson worked for Amazon in Seattle, Washington.

8.  At all times relevant, Plaintiff Olson was in the Army Reserve and held the rank of Lieutenant Colonel. Plaintiff Olson has had continued military responsibilities in the Army since 1996.

9.     During the relevant times referenced herein, Plaintiff Olson was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

**C.     Plaintiff Brandon Tole**

10.     Plaintiff Brandon Tole ("Plaintiff Tole") is a citizen of the United States and a resident of the state of Illinois.

11.     Plaintiff Tole began employment with Amazon at its Cross Dock facility located in Joliet, Illinois on June 19, 2017.  He is currently still employed by Amazon as an Operations Manager.

12.     At all times relevant, Plaintiff Tole served as a commissioned officer in the United States Marine Corps Reserve ("USMCR"), currently holding the rank of Major.  Plaintiff Tole has had continued service in the USMCR since 2017.

13.     During the relevant times referenced herein, Plaintiff Tole was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

**D.     Defendant Amazon**

14.     Plaintiffs are informed and believe that Defendant Amazon.com, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in the state of Washington. At all relevant times, Amazon was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

15.     Plaintiffs are informed and believe that Defendant Amazon.com Services LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business in the state of Washington. At all relevant times, Amazon.com Services LLC was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

16.     Plaintiffs are informed and believe that Defendant AMAZON.COM.DEDC, LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business in the state of Washington. At all relevant times, AMAZON.COM.DEDC, LLC was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

/ / /

17.    Plaintiffs are informed and believe that Defendant AMAZON.COM.KYDC LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business in the state of Washington. At all relevant times, AMAZON.COM.KYDC LLC was and is an employer as defined by 38 U.S.C. § 4303(4)(A).

18.    Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of defendants, or any of them herein, such individuals at all times acted on behalf of defendants named in this action within the scope of their respective employments and agencies.

19.    Whenever and wherever reference is made in this Complaint to any conduct of defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each defendant, acting individually, jointly and severally.

20.    At all times relevant to this Complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

21.    Plaintiffs do not seek any category of relief greater than or different from the relief sought for the Class of which Plaintiffs are members. This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons. Private enforcement is necessary and individual prosecution places a disproportionate financial burden on Plaintiffs in relation to Plaintiffs' stake in the matter.

III.    **JURISDICTION AND VENUE**

22.    The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. §1331, as conferred by 38 U.S.C. §4323(b)(3).

23.    Venue is proper because the Company maintains its corporate headquarters in this district, as provided in 38 U.S.C. §4323(c)(2) and 28 U.S.C. §1391(b).

/ / /

24.     Pursuant to 38 U.S.C. § 4323(h), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

## IV.    GENERAL ALLEGATIONS

25.     Plaintiffs are informed and believe and thereon allege Amazon employs more than 1,500,000 persons, of whom more than 1,000 are or were members of the United States Armed Services Reserves or National Guard.

26.     Amazon's policies, practices and/or omissions relating to its failures to protect military servicemembers in violation of USSERA has harmed, and continues to harm, members of the Class herein. Harm to Plaintiffs and the Class include discrimination and involuntary termination. Amazon's stated policy on "Involuntary Termination" is that "a corporate Amazon employee who is underperforming at the time of termination should be marked as Ineligible for Rehire and cannot be rehired at Amazon or its affiliates as an employee or contractor."

### A.    Discrimination Against Plaintiff Mahone Based on Military Status

27.     From her initial hiring with Amazon on July 16, 2020, until she was terminated by Amazon on October 18, 2020, Plaintiff Mahone performed various periods of military service obligations that required her to take military leave.

28.     Plaintiff Mahone's regular schedule with Amazon was overnight shifts Thursday through Saturday, 5:45 p.m. until 5:45 a.m. the next day.

29.     Amazon employees used a mobile phone application ("app") called "AtoZ" to, among other things, monitor their schedules, view documents such as timesheets, paystubs, etc., and input various human resources inquires such as requests for time off, or in Plaintiff Mahone's case the notification of her military service obligations.

30.     Amazon, through its "AtoZ" app and other internal records and databases, keeps track of its employees' time off, paid ("PTO") or unpaid ("UPT").

31.     From October 16 through 18, 2020, Plaintiff Mahone was performing military service obligations, also known as a "drill weekend" or "battle assembly." This drill weekend was a three-day

1  period and required Plaintiff Mahone's attendance from approximately 7:00 a.m. until 4:30 p.m. each
2  day.

3        32.    Prior to the October drill weekend, Plaintiff Mahone timely notified Amazon of her
4  impending military service obligations and took military leave without pay ("LWOP") from Thursday,
5  October 15 through Sunday, October 18. Amazon approved this request on September 29, 2020.

6        33.    On Sunday, October 18, 2020, Plaintiff Mahone was performing military service
7  obligations when she received an email from Amazon terminating her employment because her UTP
8  balance was 36 hours, which was a direct result of the three shifts she missed for the military drill
9  weekend.

10        34.    On October 22, 2022, Amazon Disability and Leave Services ("DLS") Case Manager
11  Ms. Maggie Otarola emailed Ms. Mahone stating "[w]e wanted to reach you and you have recently
12  been terminated from Amazon, and we want to confirm if you believe this had anything to do with un-
13  reported Military leave dates. Please contact our HR Military Team, if you believe you were
14  incorrectly terminated. **You will be required to provide military documentation to support any**
15  **unreported dates."**

16        35.    Ms. Mahone responded on October 26, 2020, that she provided proof that she was
17  performing military service during October 15-18, 2020 prior to her departure to drill. However, Ms.
18  Mahone again emailed a copy of her fiscal year 2021 drill schedule to Ms. Otarola on October 27,
19  2020 – demonstrating that the time she was absent from Amazon in October was to perform her
20  monthly military drill obligation.

21        36.    Ms. Otarola responded to Ms. Mahone on October 27, 2020, stating "[t]hank you for
22  the documentation, I will escalate the case to our specialist for a review. Please note the process takes
23  around 2 weeks and, if possible, the reinstatement is an HR's decision."

24        37.    On November 11, 2020, Ms. Otarola emailed Ms. Mahone and stated "our escalations
25  department evaluated your termination case and informed us that since documentation was not
26  provided timely, the leave time was not coded causing the negative UPT hours. At this moment, the

1  DLS team will not proceed with the reinstatement request."

2      38.    Ms. Otarola, as a member of Amazon's "DLS Military Team," and other employees of

3  Amazon's "escalation department" had actual knowledge of USERRA and Amazon's obligations

4  thereunder.

5      39.    Despite Amazon having knowledge that Ms. Mahone's UTP was to perform military

6  service, they knowingly terminated her from her position of employment and failed to offer her

7  reinstatement despite Ms. Mahone providing proof of her military service obligation.

8      40.    After the November 11, 2020 email from Ms. Otarola informing Ms. Mahone she

9  would not be reinstated with Amazon, Ms. Mahone received no communication from Amazon about

10  her termination until she brought this legal action on May 4, 2022.

11      41.    On September 6, 2022 counsel for Amazon advised counsel for Ms. Mahone that

12  Amazon determined Ms. Mahone's termination was a result of successive technical and human errors,

13  and they were issuing checks to Ms. Mahone for amounts to which they believed Ms. Mahone was

14  entitled.  These amounts were not negotiated by counsel for Ms. Mahone nor were the calculations for

15  the amounts ever disclosed to Ms. Mahone.

16      42.    Ms. Mahone felt wronged by Amazon by being involuntarily terminated and becoming

17  ineligible for rehire as an employee or contractor at Amazon or its affiliates. Ms. Mahone has

18  subsequently obtained other employer and does not seek reinstatement to her position with Amazon

19  due to the discriminatory treatment she endured during her employment with Amazon.

20      **B.    Discrimination Against Plaintiff Olson Based on Military Status**

21      43.    From his initial hiring with Amazon on May, 9, 2016, until he was terminated by

22  Amazon on September 22, 2016, Plaintiff Olson performed various periods of military service

23  obligations that required him to take military leave.

24      44.    Prior to taking any military leave of absence from Amazon, Plaintiff Olson provided

25  Amazon with his military schedule for 2016, which included dates of military leave from June 1-16,

26  July 23-24, August 20-21, and September 17-18, 2016.

45. When Plaintiff Olson was performing military service obligations during a "battle assembly" on July 23-23, Amazon continuously interrupted Plaintiff Olson's military service demanding that he perform work for Amazon simultaneously while on military leave of absence. Amazon became hostile toward Plaintiff Olson as a result of his performance of military obligations making him unavailable to Amazon at its beck and call.

46. Upon return from his July "battle assembly," despite otherwise positive reviews of Plaintiff Olson by his peers, reports and management, Plaintiff Olson's direct supervisor, Nityanath Vaidya, exercised open hostility toward Plaintiff Olson, including interrogation of all Plaintiff Olson's direct reports and deployment of other management to his employment site to seek independent reasons to terminate Plaintiff Olson as cover separate from his military status.

47. When Plaintiff Olson was performing military service obligations during a "battle assembly" on August 20-21, 2016, Amazon continuously interrupted Plaintiff Olson's military service demanding that he perform work for Amazon simultaneously while on military leave of absence, and Amazon continued hostility toward Plaintiff Olson as a result of his performance of military obligations continuing to make him unavailable to Amazon at its beck and call.

48. Plaintiff Olson performed military service obligations during a "battle assembly" on September 17-18, 2016. Upon his return to work for Amazon, on September 22, 2016, Amazon continued the hostility toward Plaintiff Olson as a result of his performance of military obligations and terminated him from Amazon employment.

49. At no time during Plaintiff Olson's employment with Amazon was he formally disciplined or assigned a performance improvement plan or "focus plan."

50. Plaintiff Olson held out hope that he might be reemployed by Amazon despite the apparent disdain for his military service obligations; and he subsequently applied for Reemployment with Amazon multiple times, including: on May 18, 2017 for a position of an Amazon Military Talent Pipeline Program Manager; on June 15, 2019 for a position of a Supply Chain Manager; on May 23, 2020 for a position of a Head, Worldwide Business Development – Sales Transformation; on June 16,

2020 for a position in the Consumer Veteran Business Leader Program; on October 10, 2020 for a position as a Manager, Business Coach, DSP Northwest, and also for a position as the General Manager of Manufacturing; on June 10, 2022 for a position in the US Space Force – Sales Executive – Department of Defense Team, and also for a position as a Customer Solutions Manager, Joint DoD Sales Team; and on June 15, 2022 for a position as a Senior Program Manager, Air Operations, Amazon Air.

51.     Plaintiff Olson was not hired by Amazon for reemployment regarding any of the positions for which he applied.

**C.     Discrimination Against Plaintiff Tole Based on Military Status**

52.     Plaintiff Tole began his employment as an Outbound Area Manager with Amazon through its Military Leaders Program ("MLP"), which was an executive management program wherein members would gain experience in as an Area Manager (L5), Operations Manager (L6), Senior Operations Manager (L7), and then "graduate" the Program to the position of General Manager (L8). The program was expected to be four years long in duration. This program has since been renamed to "Amazon Pathways" ("Pathways") and is "designed to rapidly develop talented MBA or Masters-level graduates and high-potential transitioning military leaders with the skills they need to be Amazon General Managers and Directors."

53.     In December of 2017, Plaintiff Tole was promoted to the position of Operations Manager (L6). In that capacity, among Plaintiff Tole's responsibilities were to oversee boards where Amazon employees could appeal their termination from Amazon. On one such occasion, Plaintiff Tole was overseeing a board wherein a military veteran and Amazon employee appealed his termination from absences related to medical issues. Plaintiff Tole agreed that the veteran had been wrongfully terminated, and used his authority on the board to overturn the employee's termination.  He was subsequently told by his peers that were Operation Managers that "Human Resources was not happy" with Plaintiff Tole's decision, and has since not been asked to be a member of Amazon termination appeal boards.

54.     In January of 2019, Plaintiff Tole provided written notice to Amazon General Manager Andrew Walker that he accepted military deployment orders that were to begin in May of 2019, and conclude in the fall of 2021.

55.     In Plaintiff Tole's performance review for the first quarter of 2019, his supervisor made several positive statements regarding Plaintiff Tole's accomplishments: "Brandon's strength is delivering results… Throughout peak [season] he ran the benchmark shift for a benchmark building and led peers through strategic changes to make all shifts more optimal…  Insisting on the highest standards… His team broke throughput records for the OB sorter…. He led back to back record breaking shifts,… beating last year's record."

56.     Plaintiff Tole expected to be eligible for promotion to L7 during the spring of 2019, however, after notice of his pending military service obligation, Plaintiff Tole was pulled from consideration for L7 by his supervisor Andrea Lueken.

57.     Plaintiff Tole's peer in the Pathways program, Ms. Vivian Gaddis, was promoted to L7 in April of 2019. She is currently believed to be employed with Amazon as an L8 since October 2021. Plaintiff Tole and Ms. Gaddis are believed to have started their respective employment with Amazon approximately a month apart.

58.     Plaintiff Tole's peer in the Pathways program, Mr. Harshbir Sindu, was promoted to L7 in April of 2019. Mr. Sindu is currently believed to be employed with Amazon as an L8 since April 2022. Mr. Sindu are believed to have started his respective employment with Amazon less than three months after Plaintiff Tole.

59.     Upon information and belief, Plaintiff Tole's peer in the MLP/Pathways program, Mr. Mike Waterman, was promoted to L7 prior to Plaintiff Tole. Plaintiff Tole and Mr. Waterman began their respective employment with Amazon approximately the same day in June 2017.

60.     From the time of his promotion to L6 to the time of his departure for military deployment in May of 2019, Plaintiff Tole had been in the role of Operations Manager (L6) for approximately seventeen months.

61.     Amazon's employee performance evaluation system generally includes five separate tiers: "Least Effective" ("LE"), the poorest rating an employee can receive; "Highly Valued" ("HV"), which is further broken into three separate sub-categories ranging from HV1, HV2, and HV3, wherein HV1 is the lowest and HV3 is the highest; and "Top Tier" (TT), which is the highest rating an Amazon employee can receive. These rankings directly impact an employees' incentive compensation, eligibility for promotions, retention in employment, and may also result in employees being faced with disciplinary action, such as performance improvement plans ("PIP"), "focus plans," or even termination from employment with Amazon.

62.     After Plaintiff Tole departed on military leave of absence ("MLOA") in May of 2019, he was rated "LE" by his Senior Operations Manager, believed to be Ms. Andrea Lueken or Mr. Chris Rodriguez, and was assigned a "focus plan." Plaintiff Tole was not notified by the manager who rated him LE that he received such a rating, nor was he presented with a focus plan.

63.     During Plaintiff Tole's MLOA, he was assigned to five separate Senior Operational Managers, beginning with Ms. Andrea Lueken, then Ryan Truax, Steve Sniadeki, Taseen Mohammed, Chris Rodriqguez, and then back to Taseen Mohammed.

64.     While on MLOA, Plaintiff Tole did not receive any pay raises commensurate with his peers in the Amazon Military Leaders Program, nor did he receive a bonus or increase to his compensation for the time he worked during 2019, despite having positive employee evaluations during his time working with Amazon.

65.     On May 6, 2020, while still on MLOA, Plaintiff Tole emailed Amazon Military Affairs Director, Mr. John Quintas, regarding his career progression and delayed promotion to L7 in the context of his positive performance evaluations, and that of his peers – Ms. Gaddis, Mr. Sindu, and Mr. Waterman – all having been promoted to L7 while Plaintiff Tole remained at L6.  Mr. Quintas did not provide any substantive response in the email regarding Plaintiff Tole's delayed promotion to L7.

66.     Additionally on May 6, 2020, Plaintiff Tole spoke with Jessica Pizzica, who was the Senior Manager for the World-Wide Pathways program at that time, about the potential for a transfer

to a new building upon his return from MLOA. Ms. Pizzica advised Plaintiff Tole that he would be required to return to the same site and role as the one he had when he left of MLOA. Additionally, Ms. Pizzica stated "[f]rom a Pathways perspective, you pause where you were in your timeline, for example if you were at 12 months when you left, and you were gone for 12 months, you will come back at 12 months tenure in Pathway."

67.    Amazon's policy on "Position Reinstatement" for return from Military Leave" states "[R]einstatement to prior position, or position that you would have been in had you not taken military leave, is offered."

68.    On October 18, 2021, Plaintiff Tole was concluding his military deployment, and emailed Mr. Ali Amir to address concerns he had with Amazon's compliance with USERRA via their military leave policy, reemployment into the MLP, and what position he would fill upon his return to work. Specifically, Plaintiff Tole referenced Amazon's Leave of Absence policy, stating "Military Leave: Reinstatement to prior position, or position that you would have been in had you not taken military leave, is offered…" then asked Mr. Amir "[h]ow should his be interpreted and determined? What position and role will I fill upon return." Mr. Amir did not respond to Plaintiff Tole's email. Rather, Mr. Amir forwarded Plaintiff Tole's questions to Amazon Human Resources Manager Mr. Neels Ols, who called Plaintiff Tole and advised that he would "look into it" upon Plaintiff Tole's return to work.

69.    Plaintiff Tole returned to work at Amazon in early November of 2021. He was assigned to the position of Inbound Operations Manager (L6), and rescheduled to a night shift position under Amazon Senior Operations Manager Mr. Gimi Baftiri. None of his peers in the MLP were assigned to the night shift.

70.    Plaintiff Tole scheduled a meeting with his supervisor Mr. Baftiri, Mr. Ali Amir, Mr. Taseen Mohammed, and Mr. Ols on January 24, 2022 because he believed Amazon had not resolved the issues Plaintiff Tole raised in his October 18th email to Mr. Amir. During the meeting, Plaintiff Tole specifically requested when he was would be eligible for promotion to L7. Mr. Mohammed told

him that none of the projects that he completed prior to his MLOA in 2019 would count towards his eligibility for L7, and that due to the time he was gone on MLOA, Plaintiff Tole progress towards L7 was starting over with a "clean slate." Mr. Baftiri additionally reset Plaintiff Tole's "progress rating" – which is believed to be a mentoring metric utilized by Amazon managers, to zero percent, without explanation.

71.    During the January 24th meeting, Plaintiff Tole also learned that he received the "LE" rating while he was on MLOA. When Plaintiff Tole asked for the basis for his "LE" rating, he was told by Mr. Mohammed that information would not be provided.

72.    Additionally, during the January 24th meeting, Plaintiff Tole was advised by Mr. Mohammed that he was "too new to rate," and that his Operational Leadership Ranking for 2022 would automatically be rated "HV1." This ranking limited the bonus and incentive compensation for which Plaintiff Tole was eligible and was a violation of Amazon's corporate policy not to assign generic ratings to employees.

73.    Plaintiff Tole was told in the January 24th meeting by Mr. Mohammed that the next opportunity for Plaintiff Tole to interview for promotion to L7 would occur in June 2022. However, in March 2022, Mr. Mohammed told Plaintiff Tole that the expected June 2022 opportunity to interview for L7 would be delayed again until August 2022.

74.    Upon information and belief, sometime after the January 24th meeting, Mr. Ols spoke with the Senior Program Manager for the Pathways program, Mr. Brian Dwyer, to discuss Plaintiff Tole's participation in the MLP and whether promotion standards for Pathways, which were different from the MLP, applied to Plaintiff Tole's position with Amazon.

75.     Early spring of 2022, Plaintiff Tole was conducting a one-on-one meeting with his direct supervisor, Udit Dave. During this meeting, Mr. Dave advised Plaintiff Tole that he may be subject to removal from the MLP due to the not meeting the Pathways standard of obtaining the position of L7 within thirty-six months. Mr. Dave further told Plaintiff Tole at he needed to "find more projects" because the former projects Plaintiff Tole completed would not count towards his eligibility

to L7.

76.     In August of 2022, Plaintiff Tole was not provided an opportunity to interview for promotion to L7.

77.     Currently, Plaintiff Tole is the longest tenured L6 at his working location, having approximately 28 months experience at that pay grade.

78.     Plaintiff Tole has never been formally disciplined during his employed with Amazon.

79.     All of Plaintiff Tole's contemporaries in the MLP and Pathways still employed by Amazon at his working location are currently L7s or L8s, while Plaintiff Tole remains an L6.

80.     Other Amazon employees in the MLP to which Plaintiff Tole has at least one year seniority over have been promoted to L7 or even L8, while Plaintiff Tole remains an L6.

81.     Mr. Will Morgan joined Amazon Pathways over a year after Plaintiff Tole. Mr. Morgan was promoted to L7 in June of 2020.

82.     Mr. Gimi Baftiri, a non-Pathways Amazon employee, was promoted to L6 approximately eight months after Plaintiff Tole. Mr. Baftiri later was promoted to L7 in September of 2020, and served as Plaintiff Tole's direct supervisor after Plaintiff Tole's return from MLOA.

**V.      CLASS ACTION ALLEGATIONS**

83.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 23(a) and 23(b)(1), 23(b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure. The nationwide Class which Plaintiffs seek to represent are Amazon employees who are or were members of the United States Armed Services Reserves or National Guard and who took or have taken military leave while being employed by Amazon.

84.     Plaintiffs are members of the Class they seek to represent.

85.     The members of the Class are sufficiently numerous such that joinder of all members is impracticable. Based on its website, Amazon employs nearly 40,000 "veterans and spouses." [available  at:  https://www.aboutamazon.com/news/workplace/amazon-will-hire-100-000-veterans-and-military-spouses-by-2024]. Although this number does not specify those who did serve or are

actively serving in the National Guard or Reserves, Plaintiffs are informed and believe that the Class exceeds 1,000 present and former Company employees. The exact size of the Class is ascertainable through Amazon's records, including but not limited to Amazon's employment records.

86.    As Amazon does business throughout the nation with hubs and distribution centers in states across the country, the members of the Class are likely geographically dispersed throughout the United States.

87.    There are questions of law and fact common to the Class, and these questions predominate over individual questions. Such questions include, without limitation:

      A.  whether Amazon's practice of terminating employees because of their military leave violates USERRA;

      B.  whether Amazon's acts and practices have violated USERRA by discriminating against its employees who are members of the National Guard or Reserves and have taken military leave;

      C.  whether Plaintiffs and the Class are entitled to compensatory and/or liquidated damages, and;

      D.  whether injunctive and other equitable remedies for the Class are warranted.

88.    The named Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no conflict of interests with the Class.

89.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiffs retained adequate counsel who have substantial experience and success in the prosecution of class actions, including USERRA class actions, and complex business litigation matters.

90.    Class certification is appropriate pursuant to Fed. R. Civ. Proc. Rule 23(b)(2) because the Company has acted on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief to Plaintiffs and the Class as a whole. The Class members are entitled to injunctive relief to end the Company's practices that have caused military affiliated employees to be terminated because of their military service obligations and to be treated differently than employees without military service obligations.

## VI.    CLAIMS ALLEGED - Violations of 38 U.S.C. § 4301, *et seq.*

91.    Plaintiffs hereby allege and incorporate all paragraphs 1-90 above by reference herein.

92.    USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

93.    Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed…or has an obligation to perform service in a uniformed service shall not be denied… reemployment, *retention in employment…*or any benefit of employment by an employer on the basis of that membership… performance of service, or obligation." (emphasis added).

94.    Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

95.    "Benefit" is defined as:

> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."

38 U.S.C. §4303(2).

96.    A "benefit of employment" includes the right to select work hours or the location of employment. 20 C.F.R. §1002. 5(b).

97.    In the Department of Labor's Fiscal Year 2010 report to Congress (published in July 2011), the department clarified its interpretation that a "benefit of employment" included freedom from workplace harassment and/or a hostile work environment:

> The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective

> action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations.

Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.

98.    USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a *voluntary* or *involuntary* basis, in time of peace or war. 38 U.S.C. §4312(e)(1)(A)(i); 20 C.F.R. §1002.115. (emphasis added).

99.    Section 4312 of USERRA provides:

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter…

38 U.S.C. §4312(a).

100.    Section 4313 of USERRA (further codified by 20 C.F.R. § 1002.191) provides that an employee is entitled to be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service.

101.    Section 4316 of USERRA provides that any period of absence from employment due to or necessitated by uniformed service is not considered a break in employment, so an employee absent due to military duty must be treated as though they were continuously employed.

102.    Section 4316 further provides that a person who is reemployed "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."

103.    "The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. §1002.193.

104.    USERRA expressly supersedes any state or local law, agreement, and/or employer policy. 38 U.S.C. § 4302(b); 20 C.F.R. § 1002.7(b).

105.    An employee need not request time off or permission to perform military service obligations. The employee must give notice to the employer, such notice may be verbal or written, and need not follow any particular format. 20 C.F.R. §§ 1002.87; 1002.85(b).

106.    An employee need not provide documentation prior to performing periods of military service obligations, only upon reemployment after periods of service of more than thirty days. 20 C.F.R. §§ 1002.121; 1002.122; 1002.123.

107.    USERRA provides at a minimum, an employee must have enough time after leaving the employment position to travel safely to the uniformed service site and arrive fit to perform the service. "If the employee performs a full overnight shift for the civilian employer and travels directly from the work site to perform a full day of uniformed service, the employee would not be considered fit to perform the uniformed service. An absence from that work shift is necessitated so that the employee can report for uniformed service fit for duty." 20 C.F.R. § 1002.74(a).

108.    An employee may use any paid time off ("PTO") during his or her period of military leave, but an employer may not require the employee to use accrued vacation, annual, or similar leave during a period of service in the uniformed services. 38 U.S.C. § 4316(d); 20 C.F.R. §1002.153.

109.    Plaintiffs' protected status as members of the military was a motivating factor in Amazon's denial of benefits, conditions and privileges of Plaintiffs' employment, to include terminating their employment without good cause, and as a result of their military responsibilities.

110.    One of the benefits of employment available to the Plaintiffs and the Class is the right to retention in employment while performing their military service obligations.

111.    Plaintiffs and members of the Class have been discriminated against and/or terminated for using military leave when that military leave caused a negative balance in their "unpaid time off" ("UTP") accounts, and/or caused Plaintiffs to be unavailable to perform work for Amazon simultaneously during their military duty.

112.    Amazon's policy and practice of docking its employees' UTP accounts for using military leave then terminating those employees violates USERRA.

113.    Amazon's policy and practice of contacting its employees while performing military duty and demanding they perform work for Amazon violates USERRA.

114.    Amazon's policy and practice of terminating its employees for being unavailable to perform work for Amazon during their military duty violates USERRA.

115.    Amazon's policy and practice of denying promotions to its employees due to their taking leave to perform military duty violates USERRA.

116.    Amazon's policy of "pausing" its employees' tenure while performing military duty violates USERRA.

117.    Plaintiffs and the Class's military service obligations were motivating factors in Amazon's discriminatory actions.

118.    Amazon knowingly and willfully violated USERRA, including but not limited to Section 4311, 4312, 4313 and 4316, among other ways, by discriminating against Plaintiffs and the Class members, and by denying them employment benefits "on the basis of" their "obligation to perform service in a uniformed service."

119.    As a direct and proximate result of the conduct of Amazon, as set forth in this count, Plaintiffs and the Class have suffered injuries and damages including but not limited to loss of past and future benefits, all to their damage in an amount to be proven at trial.

120.    Plaintiffs alleges such violations of USERRA were willful and request liquidated damages to the Class in an additional amount equal to the present value of their lost wages and other benefits pursuant to Section 4323(d)(1)(C).

### JURY DEMAND

121.    Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiffs demand a trial by jury for all causes of action and issues for which trial by jury is available.

### PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiffs pray for relief against Defendants, and each of them, as follows:

1.   Determine that this action may proceed and be maintained as a class action, designating Plaintiffs as Lead Plaintiffs, and certifying Plaintiffs as the Class representatives under Rule 23 of the Federal Rules of Civil Procedure and their counsel of record as Class Counsel;

2.   Declare that the acts and practices complained of herein are unlawful and are in violation of USERRA;

3.   Require that Amazon fully comply with the provisions of USERRA by providing Plaintiffs and Class Members all employment benefits denied them as a result of Amazon's unlawful acts and practices described herein;

4.   Enjoin Amazon from taking any action against Plaintiffs and members of the Class that fail to comply with the provisions of USERRA;

5.   Award fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h);

6.   Award Plaintiffs and the Class prejudgment interest on the amount of lost wages or employment benefits due;

7.   Order that Amazon pay compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered due to its willful violations of USERRA;

8.   Grant an award for costs of suit incurred; and

9.   Grant such other and further relief as may be just and proper and which Plaintiffs and the Class may be entitled to under all applicable laws.

DATED January 4, 2023.


*/s/ Daniel Kalish*
WSBA 35815

Daniel Kalish, Esq.
**HKM Employment Attorneys LLP**
600 Stewart Street, Suite 901
Seattle, WA 98101
Telephone: 206-838-2504
Email: dkalish@hkm.com

Brian J. Lawler (*pro hac vice*)
**PILOT LAW, P.C.**
4632 Mt. Gaywas Dr.
San Diego, CA 92117
Tel: 619-255-2398
Email: blawler@pilotlawcorp.com

Gene J. Stonebarger (*pro hac vice*)
**STONEBARGER LAW, APC**
101 Parkshore Dr., Suite 100
Folsom, CA 95630
Tel: 916-235-7140
Email: gstonebarger@stonebargerlaw.com

Kevin L. Wilson (*pro hac vice*)
**KEVIN WILSON LAW PLLC**
3110 Horton Avenue
Louisville, KY 40220
Telephone: 502-276-5050
Email: kevin@klwilsonlaw.com

*Counsel for Plaintiffs*
*and the Proposed Putative Classes*

**CERTIFICATE OF SERVICE**

I certify that on January 4, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to all registered users of the CM/ECF system.

Dated: January 4, 2023

*s/ Gene J. Stonebarger*
Gene J. Stonebarger