UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YASMINE MAHONE, DAIN OLSON, and BRANDON TOLE,

                Plaintiffs,

v.

AMAZON.COM, INC., ET AL.,

                Defendants.

CASE NO. C22-594 MJP

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: LACHES

The Court held an evidentiary hearing on April 5, 2023 to consider the merits of the laches defense asserted by Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon.com.dedc, LLC and Amazon.com.kydc LLC (collectively "Amazon") against Plaintiff Dain Olson's claims under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq. ("USERRA"). Having held the evidentiary hearing and considered the Parties' briefing (Dkt. Nos. 51, 52), supporting materials, and arguments, the Court issues the following findings of fact and conclusions of law.

# FINDINGS OF FACT

**A.  Olson's Employment with Amazon**

1. Dain Olson was hired by Amazon on May 9, 2016 as a Station Manager.

2. Olson testified at the evidentiary hearing.

3. Olson is in the Army Reserve and had military responsibilities during his employment with Amazon.

4. Olson has served in combat in both Iraq and Afghanistan in 2003, 2004, 2009, and 2010.

5. During his employment with Amazon, Olson was a qualified employee and member of the uniformed services as defined by 38 U.S.C. § 4303(3) and (16).

6. During his employment with Amazon, Olson took leave to perform military service, as he was obligated to do as an Army reservist.

7. Olson took military leave from June 1-6, 2016, July 23-24, 2016, August 20-21, 2016, and September 17-18, 2016.

8. Olson informed his manager, Nityanath Vaidya, about his military leave obligations by phone in May shortly after he began his employment.

9. Olson provided a written list of his military obligations to Vaidya on June 14, 2016.

10. Olson also provided a list of his military leave obligations to Amanda Bania, the human resources representative for the station where Olson worked.

11. Vaidya contacted Olson while he was on each of his periods of military leave.

12. Olson has no specific recollection of being contacted by anyone from Amazon during his June 2016 leave.

13. Olson believes he spoke to other Amazon employees during his July and August military leave.

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: LACHES - 2

1  14.     Olson presented no written records documenting the substance of any phone calls or text messages during any period of military leave, aside from text messages exchanged between him and Vaidya during the July 2016 leave period.

15.     Olson testified that he has requested phone records to show whether he was contacted while on military leave. No such records were presented during the evidentiary hearing or submitted into evidence. Olson believes the records would only show a log of calls, not their substance.

16.     Olson testified that Vaidya and two other managers displayed hostility towards Olson on account of his military obligations after his July 2016 leave, although no records were produced to confirm this testimony.

17.     Olson testified that Vaidya was the principal person who displayed hostility towards Olson on account of his military leave, but he did not recall any specific words or statements.

18.     Olson believes that Vaidya disliked him because he had military leave obligations and was not at Vaidya's "beck and call" while on military leave.

19.     Olson's memory of the specific hostile actions taken by any of his managers took where not particularly detailed. But he recalls with some detail one episode where he believed Vaidya mockingly and angrily explained basic mathematics and logistics concepts on a white board.

20.     Olson testified that Vaidya interrogated Olson's direct reports in August 2016 about his work performance and that this was further hostility against him.

21.     Olson believed that Christopher Sherry was one of the individuals who Vaidya interrogated.

22. Sherry testified at the evidentiary hearing that he had no memory of being asked or interrogated by Vaidya about Olson's performance. Sherry testified that his memory of events in 2016 has faded.

23. Olson did not identify any written records concerning Vaidya's interrogations.

24. Bania testified at the evidentiary hearing and recalls that there were concerns with the timeliness of deliveries from the station that Olson managed. But she does not recall specifics.

25. Olson testified that he had regular phone calls with Bania to discuss getting assistance in dealing with Vaidya concerning his military service. But Olson only has specific memories of two conversations.

26. Bania recalls that Olson complained to her about Vaidya's management style, but she recalls no specific details.

27. Bania recalls a meeting between Olson and Vaidya during which Olson's performance and the performance of the station were discussed.

28. Bania knew that Olson was a military servicemember when he was employed by Amazon.

29. Bania does not recall if Olson ever complained to her about being contacted by Amazon employees while he was on military leave.

30. Bania's memory could not be refreshed with documents presented to her concerning Olson's complaints about being contacted while on military leave.

31. Olson was terminated by Amazon on September 22, 2016.

32. Olson believes that his military service obligation was a motivating factor in his termination.

33. Olson also believes that one of the reasons he was terminated by Amazon was because he and Vaidya did not get along.

34. Bania recalls that Olson was terminated for performance reasons, based in part on his performance concerns as identified by Vaidya and the performance of the station that Olson managed.

35. Bania stated that Olson was not terminated because he took military leave.

36. Bania has no memory of Olson telling her that Vaidya was hostile towards him or that Vaidya had interrogated Olson's direct reports.

37. Bania identified that she primarily communicated in person or by phone, though she also used email.

38. Bania believes her memory has faded since 2016 and she would have had a far better recollection of the specific events closer to 2016.

**B.  Olson's Personal Situation**

39. Olson's wife was employed by Amazon at the same time Olson was in 2016 and remains an Amazon employee.

40. Neither party offered any evidence concerning Olson's wife's position with Amazon.

41. Olson's wife is not a servicemember.

42. Olson and his family have medical insurance through his wife's employment with Amazon.

43. Olson has a five-year old son who is a cancer survivor who incurs regular and significant medical costs for his continued care.

44. Olson's son was born after Amazon terminated his employment.

45. Olson testified that he did not want to pursue claims against Amazon for fear that his wife would be terminated and they would lose health coverage.

46. Olson testified that he would not be able to afford medical insurance or pay for the medical care necessary for his family without his wife's medical insurance coverage from Amazon.

47. Olson testified that he could have obtained other health care insurance, but it would have covered far less of the cost associated with his son's care.

48. Olson has been diagnosed with post-traumatic stress disorder (PTSD).

49. Olson provided no specifics about his diagnosis or experience of PTSD.

**C.   Olson's Knowledge of USERRA and Prior USERRA Complaints**

50. Before his employment with Amazon, Olson was aware of his rights under USERRA and that there could be time limitations to bringing a lawsuit under USERRA.

51. Olson was also aware before he was employed at Amazon that USERRA has no statute of limitations.

52. Before joining this lawsuit Olson was not aware of the concept of laches or that it might apply to a USERRA claim.

53. Olson had previously filed a complaint against a different former employer, Menlo Worldwide Logistics (Menlo), with the United States Department of Labor (DOL) alleging USERRA violations.

54. In August 2015, the Department of Justice (DOJ) reviewed a referral of Olson's complaint and declined to provide him representation.

55. As part of the declination letter, the DOJ informed Olson that he could retain his own counsel and/or file a lawsuit in a court of competent jurisdiction.

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: LACHES - 6

56. The declination letter stated: "you should be aware that some courts have held that a lawsuit must be filed within a certain period of time after the alleged USERRA violation. You should seek counsel of your own choosing and at your own expense to determine whether such a time limitation would apply to your case."

57. Olson admits he received the declination letter.

58. Olson ultimately retained counsel and filed a lawsuit against Menlo (and its successor) in April 2018 in the United States District Court for the Northern District of Illinois.

59. In October 2016, Olson filed a claim with the DOL, alleging that Amazon had violated his rights under USERRA while he was employed and terminated by Amazon.

60. On February 10, 2017, DOL reviewed the claim and found it had no merit.

61. The notice from the DOL informed Olson that he could seek a referral of his claim to the DOJ, retain his own counsel, and/or file his own claim in a court of competent jurisdiction.

62. Olson did not request a referral of his complaint to the DOJ, retain counsel, or file a lawsuit.

63. Olson was aware that he could have brought a lawsuit against Amazon in February 2017.

64. Olson filed a complaint of discrimination against Amazon with the Washington Human Rights Commission (HRC) on January 10, 2017 concerning his termination from Amazon in 2016.

65. Olson's HRC complaint identified claims brought under Title VII of the Civil Rights Act, the Americans With Disabilities Act, and the Washington Law Against Discrimination.

66. Olson's HRC complaint did not allege USERRA violations, but it identified the hostility Olson alleged he endured after performing his military leave while employed by Amazon.

67. Olson's HRC complaint identified the USERRA complaint he filed with the DOL.

68. Olson did not pursue his HRC complaint.

69. Olson stated that his own memory of the events in 2016 was better closer to the events and he believes this is true for everyone.

70. Olson spoke to counsel in 2020 about his termination from Amazon.

71. Olson did not retain counsel to investigate his claims against Amazon until August 1, 2022.

72. Olson joined this lawsuit on August 10, 2022, and seeks to be a named class representative.

**D.    Olson's Attempt at Employment**

73. Since his termination with Amazon, Olson has not found employment.

74. Olson testified that he has applied for ten different positions with Amazon since his termination, though he voluntarily withdrew five applications.

75. Olson provided no information about the nature of the five positions that he pursued but did not obtain from Amazon.

76. Olson provided no evidence about whether he was qualified for the five jobs to which he applied, how many applicants applied, and what the requisite skill and experience was needed to obtain each position.

77. Olson believes that he is ineligible to work for Amazon, but he provided no evidence to support his belief.

78. Olson is now a student in a doctoral program.

**CONCLUSIONS OF LAW**

1. The Court has original jurisdiction over this matter under 28 U.S.C. § 1331, as specified in USERRA, 38 U.S.C. § 4323(b)(3).

2.  The Parties agree that USERRA does not have a statute of limitations.

3.  Amazon seeks dismissal of Olson's claims based on the affirmative defense of laches.

4.  Laches, as an equitable defense, applies to USERRA.

5.  Before Congress amended USERRA in 2008, USERRA contained an express provision stating that "[n]o state statute of limitations shall apply." 38 U.S.C. § 4323(i) (2007).

6.  The congressional record evidences that although USERRA contained no statute of limitations, "the equitable doctrine of laches [could] . . . bar relief," though "laches should be applied sparingly." See S. Rep. No. 103-158, at 70 (1993), 1993 WL 432576, at *70.

7.  Prior to the 2008 amendments, the Seventh Circuit held that laches was a valid defense to a USERRA claim. See Miller v. City of Indianapolis, 281 F.3d 648, 653 (7th Cir. 2002).

8.  In 2008 Congress amended USERRA to clarify that neither a state nor a federal statute of limitations applies. Veterans' Benefits Improvement Act of 2008 § 311(f)(1), 122 Stat. at 4164 (codified at 38 U.S.C. § 4327(b)). The amendments did not speak to the applicability of laches.

9.  The Ninth Circuit has not addressed the effect of the 2008 amendments to USERRA on a laches defense.

10. After the 2008 amendments to USERRA went into effect, courts have applied laches to USERRA claims. See Sleevi v. Merit Sys. Prot. Bd., No. 2021-1447, 2021 WL 2879045, at *1 (Fed. Cir. July 9, 2021) (unpublished) (affirming dismissal of a USERRA claim based on laches); Durr v. Merit Sys. Prot. Bd., No. 2022-1072, 2022 WL 16943007, at *2 (Fed. Cir. Nov. 15, 2022) (same); Travers v. FedEx Corp., 567 F. Supp. 3d 542, 547 (E.D. Pa. 2021) ("Congress did not bar laches defenses to [USERRA] claims through the Act's 2008 amendment in subsection 4327(b)."); Clarkson v. Alaska Airlines, Inc., No. 2:19-CV-0005-TOR, 2020 WL 5899398, at *4 (E.D. Wash. Oct. 5, 2020) (finding that laches continues to be a valid defense

after the 2008 USERRA amendments and collecting cases, though refusing to grant summary judgment to plaintiff's as to the defendants' laches defense).

11.   Regulations under USERRA further recognize that "if an individual unreasonably delays asserting his or her rights, and that unreasonable delay causes prejudice to the employer, the courts have recognized the availability of the equitable doctrine of laches to bar a claim under USERRA. 20 C.F.R. § 1002.311 (emphasis in original).

12.   Plaintiffs have identified no statutory or case law suggesting that laches is not a valid defense.

13.   Based on the legislative history, the case law, and the regulation cited above, the Court concludes that laches remains a valid defense, though it should be used sparingly.

14.   "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) (citation and quotation omitted).

15.   "To establish laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000).

16.   Unreasonable delay is measured by assessing when the plaintiff knew or should have known about the claim and whether the delay is reasonable, including any excuses for the delay. Jarrow, 304 F.3d at 838.

17.   As to prejudice, the Ninth Circuit generally recognizes two forms: evidentiary and expectations-based prejudice. Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001).

18.   "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." Id.

19. Expectation-based prejudice may be shown where the defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." Id.

20. The Court enjoys discretion in making a determination that laches applies. See Jarrow, 304 F.3d at 833.

21. The Court finds that Olson's delay in joining this lawsuit nearly six years after being terminated was unreasonable.

22. Olson was aware of his rights under USERRA before he began working for Amazon.

23. Olson was aware that he needed to timely pursue any USERRA claims, although he knew there was no statute of limitations.

24. In fact, shortly after his termination in 2016, Olson filed two administrative complaints against Amazon related to his termination, though only one alleged USERRA violations.

25. Olson failed to pursue either of his claims against Amazon concerning his termination.

26. Olson offered no tenable reason why did not pursue his claims in a timely manner.

27. The Court does not find credible Olson's belief that if he pursued his USERRA claims he would have jeopardized his wife's job or health care coverage.

28. Olson presented no evidence to support this belief and the Court finds it was not a valid reason to excuse his delay of six years before he joined this lawsuit.

29. When Olson was terminated, his son was not yet born. This undermines Olson's claim that he did not pursue his USERRA claims for fear that his wife would lose her job and he could not afford the cost of treatment for his son's care.

30. The Court also finds that Olson's decision to participate in this lawsuit as a named plaintiff, representing not just his own but the interests of others, undermines his claim that he did not act quickly because he feared his wife would lose her job and insurance coverage. Olson

identified no reason why he no longer has such a fear. This undermines the entire validity of this excuse for his inaction since termination.

31. On the record before it, the Court concludes that Olson's six-year delay is unreasonable and unjustified.

32. The Court finds that Amazon faces an evidentiary prejudice on account of Olson's unreasonable delay.

33. In order to defend itself against Olson's claims, Amazon would need to rebut Olson's claims that his military service was a motivating factor for the discrimination he claims he faced from Vaidya and other managers.

34. But the primary evidence on which Olson relies are unrecorded conversations and other interactions for which no written records exist.

35. And the memories of the key witnesses, including Olson, have substantially faded.

36. For example, Bania, a critical figure in Olson's termination, has little specific recollection of facts concerning Olson's claims and her memory appears to have faded substantially since the events in 2016. Efforts to refresh her recollection were not successful.

37. One of the witnesses who Olson identified as being a witness of Vaidya's discriminatory actions, Sherry, has no memory of the alleged interrogation of Olson's reports.

38. Each of the three witnesses who testified at the hearing, including Olson, confirmed that their memories would have been far sharper had Olson sought relief under USERRA in a timely manner.

39. The Court concludes that Amazon faces a substantial evidentiary prejudice if it is forced to defend itself against Olson's stale claims, given that his claims turn on unrecorded

1  conversations where the key witnesses' memories have faded and cannot be refreshed. See Danjaq, 263 F.3d at 955.

40. Although Olson claims phone records have been requested, he not only failed to submit them into evidence, but he also failed to show how they would enable Amazon to prepare a defense. Olson elicited no testimony from Bania or Sherry that these call logs would refresh their recollection of the substance of and conversations with or about Olson. The potential production of call logs, which Olson could have obtained years ago, does not convince the Court that Amazon could rely on them to present a defense in this action.

41. The Court finds that laches applies to Olson's claims.

42. The Court DISMISSES Olson's claims under the doctrine of laches, given that he unreasonably delayed in prosecuting them and Amazon faces a substantial evidentiary prejudice if it is forced to litigate the stale claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 7, 2023.

Marsha J. Pechman
United States Senior District Judge