UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YASMINE MAHONE and BRANDON TOLE, | CASE NO. C22-594 MJP |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| AMAZON.COM, INC., ET AL., | |
| Defendants. | |

This matter comes before the Court on the Motion to Dismiss filed by Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon.com.dedc, LLC and Amazon.com.kydc LLC (collectively "Amazon"). (Dkt. No. 45.) Having reviewed the Motion, the Response (Dkt. No. 49), the Reply, and all supporting materials, the Court finds oral argument unnecessary and DENIES the Motion.

1

**BACKGROUND**

2

    Plaintiffs[1] Yasmine Mahone and Brandon Tole are a former and a current employee of

3

Amazon, respectively, who have filed claims under the Uniformed Services Employment and

4

Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq. ("USERRA") alleging that Amazon

5

discriminated against them based on their military service. Mahone alleges that Amazon

6

willfully discriminated against her on account of her military service and that Amazon failed to

7

offer her reemployment. Tole alleges that Amazon violated USERRA by failing to reemploy him

8

with appropriate seniority upon his return from a two-and-a-half year military obligation.

9

Plaintiffs seek to represent a class of similarly situated individuals.

10

    The Court previously granted in part Amazon's motion to dismiss the first amended

11

complaint. (Order (Dkt. No. 34).) The Court found that Mahone lacked standing to assert claims

12

for back or front pay, but granted her leave to amend her claim that Amazon willfully violated

13

USERRA and her claim for reemployment. (Id.) Plaintiffs filed a second amended complaint

14

(SAC) that added Tole's claims. (Dkt. No. 44.) Amazon moves to dismiss Mahone's amended

15

claims and Tole's new claims. The Court reviews the new allegations in the SAC.

16

**A.    Mahone**

17

    Mahone worked for Amazon from July 16, 2020 until she was terminated on October 18,

18

2020. (SAC ¶ 27.) While employed for Amazon, Mahone performed various periods of military

19

service that required her to take unpaid military leave. (Id. ¶ 27.) She participated in military

20

service obligations from October 16 through October 18, 2020. (Id. ¶ 31.) She gave timely notice

21

22

23

24

[1] The Court has dismissed the third named plaintiff, Dain Olson, finding that his claims are barred by laches. See Findings of Fact and Conclusions of Law re: Laches. This moots Amazon's arguments concerning the adequacy of Olson's claims and the Court does not address them.

1    to Amazon of her service obligations and took military leave without pay from October 15-18,

2    2020. (Id. ¶ 32.) "On Sunday, October 18, 2020, Plaintiff Mahone was performing military

3    service obligations when she received an email from Amazon terminating her employment

4    because her UTP [unpaid time off] balance was 36 hours, which was a direct result of the three

5    shifts she missed for the military drill weekend." (Id. ¶ 33.) Mahone alleges that all of the unpaid

6    time off she took was for military obligations. (Id. ¶ 26.)

7         Mahone newly alleges that on "October 22, 2022" (which the Court construes as October

8    22, 2020 given the other allegations in the SAC) an Amazon case manager emailed to "confirm

9    if [Mahone] believe[d her termination] . . . had anything to do with un-reported Military leave

10   dates." (SAC ¶ 34.) Four days later, Mahone responded that she was performing military drills

11   when she was terminated and then provided a copy of the drill schedule the following day. (Id. ¶

12   35.) The Amazon "case manager" took this information and "escalate[d] the case to our

13   specialist for a review." (Id. ¶ 36.) Roughly two weeks later, the case manager informed Mahone

14   that: "our escalations department evaluated your termination case and informed us that since

15   documentation was not provided timely, the leave time was not coded causing the negative UPT

16   hours" and that Amazon's Disability and Leave Services (DLS) team "will not proceed with the

17   reinstatement request." (Id. ¶ 37.) It is unclear from this quoted statement whether the untimely

18   "documentation" to which the manager referred was Mahone's pre-leave notice or the request for

19   reemployment.

20        After Mahone filed suit in September 2022, Amazon advised Mahone's counsel that she

21   had been terminated due to "successive technical and human errors." (SAC ¶ 41.) Amazon's

22   outside counsel states that after Mahone filed suit, "Amazon investigated her claim" and

23   "acknowledged that Ms. Mahone had been mistakenly terminated due to an administrative error

24

1    and apologized for the error." (Declaration of Lauren M. Blas ¶ 5 (Dkt. No. 29).) Amazon then

2    "unconditionally offered Ms. Mahone reinstatement on June 30, 2022" and paid Mahone

3    $47,880. (Id. ¶ 6.) This sum included "all of the wages that Ms. Mahone would have earned

4    between October 18, 2020 [and] . . . December 2, 2021—the date she began working for a new

5    employer" and, as "a goodwill gesture, . . . all of the wages that Ms. Mahone would have earned

6    between the date she started her new employment and June 30, 2022—the date Amazon offered

7    her unconditional reinstatement, with no offset of earnings from Ms. Mahone's new

8    employment." (Id.)

9    **B.    Tole**

10   Tole was employed as an Outbound Area Manager with Amazon through its Military

11   Leaders Program (now named "Amazon Pathways"). (SAC ¶ 52.) Through the Pathways

12   program, members are expected over four years to "gain experience in as an Area Manager (L5),

13   Operations Manager (L6), Senior Operations Manager (L7), and then 'graduate' the Program to

14   the position of General Manager (L8)." (Id.) In December 2017, Tole was promoted to

15   Operations Manager (L6) and remained in that position at the time he took military leave in May

16   2019. (Id. ¶¶ 53, 60.) In January 2019, Tole provided written notice that he had accepted military

17   deployment that was to last from May 2019 to the fall of 2021. (Id. ¶ 54.) Tole alleges that he

18   received positive performance reviews in the first quarter 2019 and that he believed he was

19   eligible for promotion to L7 in the spring of 2019. (Id. ¶ 56.) But after he provided notice of his

20   military service, he alleges that he "was pulled from consideration for L7 by his supervisor."

21   (Id.) Tole alleges that other individuals who were part of the Pathways Program who started

22   around the same time he did, but did not take military leave, were promoted. (Id. ¶¶ 57-59, 79-

23   82.)

24

After Tole took military leave, he was given a negative performance rating and put on a "focus plan," though he was not notified of the reasons negative rating or focus plan. (SAC ¶ 62.) While on leave, he received no bonus or increase in compensation. (Id. ¶ 64.) Amazon's policy on "Position Reinstatement" for those retuning form military leave provides for "reinstatement to prior position, or position that you would have been in had you not taken military leave[.]" (Id. ¶ 67.) Tole returned to work for Amazon in November 2021 and was assigned the position of Inbound Operations Manager (L6) and scheduled for a night shift. (Id. ¶ 69.) Tole's supervisor informed him in January 2022, that he was starting with a "clean slate," and that none of the progress he made before taking military leave could towards his L7 promotion. (Id. ¶ 70.) Tole was also told in January 2022 that he had received a negative rating while on leave, but that he would not receive the basis for this rating. (Id. ¶ 71.) At this same meeting, a manager told Tole that he was "'too new to rate'" and that he would be given an introductory rating that negatively impacted his bonus and eligibility for promotion. (Id. ¶ 72.) Tole was told that he was next eligible for promotion in August 2022. (Id. ¶ 73.) Tole alleges that in the spring 2022, his supervisor told him that he might be removed from the Pathways Program for not being promoted to L7 within thirty-six months given that his pre-leave work did not count towards his promotion. (Id. ¶ 75.) Tole has not been given an opportunity to interview for a promotion and remains the longest tenured L6 at his location—twenty-eight months at the same pay grade. (Id. ¶ 76.)

## ANALYSIS

### A.    Legal Standard

Amazon moves to dismiss under both Rule 12(b)(1) and Rule 12(b)(6). The Court reviews the applicable standards.

1    Amazon's Rule 12(b)(1) motion asserts a factual challenge to the Court's subject matter

2    jurisdiction premised on the theory that Mahone's claims are moot because her injuries are not

3    redressable. (Mot. at 5-7.) "[I]n a factual attack, the challenger disputes the truth of the

4    allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for

5    Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) "In resolving a factual attack on

6    jurisdiction, the district court may review evidence beyond the complaint without converting the

7    motion to dismiss into a motion for summary judgment." Id. And "[t]he court need not presume

8    the truthfulness of the plaintiff's allegations." Id. Instead, "the party opposing the motion must

9    furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter

10   jurisdiction." Id. (citation and quotation omitted). The Court applies this standard only to

11   Amazon's Motion to Dismiss concerning Mahone's standing.

12        Amazon seeks dismissal of the balance of the SAC pursuant to Fed. R. Civ. P. 12(b)(6).

13   Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which

14   relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in

15   the light most favorable to the non-moving party and accept all well-pleaded allegations of

16   material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th

17   Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

18   Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to

19   relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A

20   claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

21   draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft

22   v. Iqbal, 556 U.S. 662, 678 (2009).

23

24

**B.    Legal Standards under USERRA**

USERRA was enacted in 1994 "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a)(1). "USERRA protects the job security of returning veterans." Hanson v. Cty. of Kitsap, 21 F. Supp. 3d 1124, 1136 (W.D. Wash. 2014) (quoting Petty v. Metro. Gov't of Nashville & Davidson Cty., 687 F.3d 710, 716 (6th Cir. 2012) (internal citations omitted)). "Through USERRA, Congress endeavored to 'clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions.'" Belaustegui v. Int'l Longshore & Warehouse Union, 36 F.4th 919, 923 (9th Cir. 2022) (quoting Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002) (quotations omitted)). "As a law advancing the interests of veterans, USERRA is 'liberally construed for the benefit of those who left private life to serve their country in its hour of great need.'" Id. (quoting Ziober v. BLB Res., Inc., 839 F.3d 814, 819 (9th Cir. 2016) (quotation omitted)).

"Several provisions of USERRA coordinate to provide this security: Sections 4312 and 4313, the 'reemployment provisions,' entitle veterans to reemployment after military service and prescribe the positions to which they are entitled upon returning." Petty, 687 F.3d at 716 (internal citations omitted ). Section "4316 guarantees veterans the same benefits they would have enjoyed absent the interruption in their employment and prevents employers from terminating without 'cause' any returning veteran within one year of his reemployment." Id. The "discrimination provision," § 4311, "prohibits employers from discriminating against veterans on the basis of their military service." Id. And Section 4318 governs pension plan benefits for returning veterans. 38 U.S.C. § 4318.

**C.    Mahone Has Standing**

Amazon again argues that Mahone does not have standing to pursue her claim that Amazon willfully violated USERRA and that she is entitled to liquidated damages. The Court disagrees.

USERRA allows the Court to award the following relief:

(A)The court may require the employer to comply with the provisions of this chapter.
(B)The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.
(C)The court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

38 U.S.C. § 4323(d)(1). Although the Ninth Circuit has not examined the contours of "liquidated damages" under this provision USERRA, at least one court has construed this provision to mean it provides for double the amount of lost wages and benefits. See Maher v. City of Chicago, 463 F. Supp. 2d 837, 840-46 (N.D. Ill. 2006). And this is consistent with the interpretation of a similar "liquidated damages" provision in the Age Discrimination in Employment Act. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985) (defining a similar liquidated damages provision in the ADEA to permit double damages); Paxton v. City of Montebello, 712 F. Supp. 2d 1017, 1021 (C.D. Cal. 2010) (noting that courts frequently look to case law interpreting the ADEA to interpret USERRA). The Court adopts this reasoning because a liquidated damage award must be in addition to the lost wages and benefits due provided for in Subsection (d)(1)(B) or Subsection (d)(1)(C)—recovery for willful violations of the Act—would be rendered superfluous.

Previously, the Court found that Mahone lacked standing because Amazon had paid any and all back and front pay that was due, making her injury non-redressable. (Order on Motion to Dismiss at 9.) The Court explained that Mahone could have standing for a claim for liquidated

1   damages if she had provided sufficient allegations that Amazon's "failure to comply with the

2   provisions of [USERRA] was willful." 38 U.S.C. § 4323(d)(1)(C). If Mahone has alleged a

3   willful violation, then Mahone may be entitled to "liquidated damages." 28 U.S.C. §

4   4323(d)(1)(C). Regulations define "willful" to mean that "the employer either knew or showed

5   reckless disregard for whether its conduct was prohibited by the Act." 20 C.F.R. § 1002.312.

6   Considering the same term in the context of the Age Discrimination in Employment Act, the

7   Supreme Court has defined "willful" to mean that "'the employer either knew or showed reckless

8   disregard for the matter of whether its conduct was prohibited by the statute.'" Hazen Paper Co.

9   v. Biggins, 507 U.S. 604, 615 (1993) (quoting Thurston, 469 U.S. at 128). An intent to violate

10  the statute is not necessary; but it is also not sufficient that the employer simply knew of its

11  potential applicability. Thurston, 469 U.S. at 126–28 & n.19. Plaintiff has the burden of proving

12  willfulness, which may be shown by circumstantial evidence. Paxton, 712 F. Supp. 2d at 1021.

13       Mahone has now provided sufficient allegations of a willful violation of USERRA. As

14  alleged, Mahone provided pre-leave notice that she was taking leave for military drills. (SAC ¶

15  34.) She newly alleges that she asked for reinstatement and submitted materials showing that she

16  took leave for military drills. (Id. ¶¶ 32, 35.) Despite being aware of the reason for the leave and

17  showing concern that it might have been improper under USERRA to terminate her and not

18  reinstate her, Amazon nonetheless refused to reinstate her. (Id. ¶¶ 34-37.) These facts support a

19  claim that Amazon knew that it could not terminate Mahone for her military participation.

20  Indeed, Amazon has now conceded that it violated the Act in terminating Mahone. And its

21  failure to reemploy Mahone is similarly alleged to be the result of a willful violation of the Act.

22  The emails Mahone alleges she received confirm that Amazon knew Mahone could be entitled to

23  reemployment under USERRA, but that it decided her leave paperwork was untimely submitted

24

1    and denied her request. And Amazon has admitted this decision was improper. These allegations

2    suffice to show willfulness. And there is no evidence that Mahone has received double the

3    amount of all wages and benefits due, so Mahone has standing to pursue her claims. The Court

4    DENIES the Motion as to this claim.

5    **C.    Reemployment**

6         The Court previously granted dismissal of Mahone's reemployment claim because she

7    had not adequately alleged that she timely sought reemployment. The Court finds that the SAC

8    contains sufficient allegations that Mahone made a timely request for reemployment that

9    Amazon wrongly rejected.

10        "Section 4312 of USERRA provides a right to reemployment for members of the armed

11   services who comply with statutory notification requirements." Hanson, 21 F. Supp. at 117

12   (citing Wallace v. City of San Diego, 479 F.3d 616, 625 (9th Cir. 2007)). USERRA's Section

13   "4312 protects only a serviceperson's right to reemployment, which in turn triggers § 4313's

14   guarantee of the appropriate position of employment." Petty, 538 F.3d at 445. "Section 4312

15   only entitles a service person to immediate reemployment and does not prevent the employer

16   from terminating him the next day or even later the same day," while "§§ 4311 and 4316 operate

17   to protect the employee as soon as [he] is reemployed." Hart v. Family Dental Group, PC, 645

18   F.3d 561, 563 (2nd Cir. 2011) (citation and quotation omitted). To be entitled to reemployment,

19   the employee must "report[] to, or submit[] an application for reemployment to, such employer

20   in accordance with the provisions of subsection (e)." 38 U.S.C. § 4312(a)(3). Where the military

21   service lasts less than 31 days, the employee must report to the employer either by the next

22   regularly scheduled work period plus eight hours or as soon as possible after the eight-hour

23   period expired "if reporting within the period referred to in such clause is impossible or

24

1   unreasonable through no fault of the person." 38 U.S.C. § 4312(e)(1)(A)(i)-(ii). But failure to

2   comply with these timelines is not fatal to a claim for reinstatement where "the conduct rules,

3   established policy, and general practices of the employer pertaining to explanations and

4   discipline with respect to absence from scheduled work" might provide a different timeline. 38

5   U.S.C. § 4312(e)(3).

6        Mahone has now alleged that she asked for reemployment just eight days after

7   termination, and the Court finds this request timely. The SAC does not identify what Mahone's

8   next work period was, which makes it somewhat difficult to know whether Mahone asked for

9   reinstatement by the next work period. (See SAC ¶ 36.) But even if Mahone's request was not

10  made the by the next work period, it appears that Amazon had its own rules for reinstatement

11  that permitted Mahone to seek reinstatement within the time period she did. See 38 U.S.C. §

12  4312(e)(3). This is evidenced by the fact that the "HR Military Team" requested that Mahone

13  identify whether she was on military leave (Id. ¶ 34), and in response to her application for

14  reemployment, the DLS case manager stated that "the process takes around 2 weeks and, if

15  possible, the restatement is an HR's decision" (Id. ¶ 36). The Court finds that Mahone has

16  sufficiently alleged that she timely asked for reemployment within Amazon's own rules

17  governing requests for reinstatement.

18       In reaching this decision, the Court notes that the DLS case manager at Amazon told

19  Mahone that her "documentation was not provided [in a] timely" fashion. (SAC ¶ 37.) This

20  statement is ambiguous and could refer to either Mahone's notice that she was taking military

21  leave or asking for reemployment. Given the ambiguity, the Court construes it in Mahone's favor

22  and finds it to refer to her leave request, not the request for reemployment. The Court separately

23  notes that the SAC and Response brief refer to her termination occurring in both 2020 and 2022.

24

1   The Court construes the references to 2022 as a typo, given that the other dates all point to the

2   relevant events concerning her request for reemployment to have occurred.

3       The Court rejects Amazon's suggestion that Mahone had to physically report to work in

4   order to be reinstated and that she failed to do so. Amazon's argument turns on the statute's

5   language that the employee has to "notify the employer. . . of the person's intent to return to a

6   position of employment . . . by <u>reporting</u> to the employer" within the time limits. 38 U.S.C. §

7   4312(e)(1)(A) (emphasis added). The statute does not define "reporting," though it appears to

8   contrast with "submitting an application for reemployment," which is the process required for

9   those who are away from work for military service lasting more than 31 days. 38 U.S.C. §

10  4312(e)(1)(C)-(D). Regulations implementing this rule provide no greater clarity, stating only

11  that the employee must "report back to the employer." 20 C.F.R. 1002.115(a). The Court finds

12  no valid reason why requesting reemployment in writing cannot mean "reporting" to the

13  employer. A common understanding of the term "report" includes "to account for oneself." <u>See</u>

14  Merriam-Webster, "Report", available at https://www.merriam-webster.com/dictionary/report

15  (last visited Apr. 7, 2023). Accounting for oneself does not require an in-person action—this can

16  be done in writing or through other means. And particularly given that employees often work

17  remotely, reporting for work does not necessarily require showing up in person. For example,

18  one who "reports" as being sick need not actually physically appear at work to notify the

19  employer they are sick. And even if "reporting" required Mahone to physically appear for work,

20  the statute allows for alternative requests for reemployment if it complies with company's

21  policies. Here, the allegations strongly suggest that Mahone properly "reported" her request for

22  reemployment given that Amazon processed the request and has since admitted that it wrongly

23

24

1  failed to reemploy her. The Court rejects Amazon's argument and DENIES the Motion as to this

2  claim.

3  **D.**     **Tole States a Claim for Discrimination**

4          Amazon argues that Tole fails to state a claim for reemployment because he was not

5  entitled to any "automatic" promotion. This argument distorts the law and misreads the SAC.

6  The Court finds the claim sufficiently alleged.

7          Under USERRA, Amazon was forbidden from denying Tole "reemployment, retention in

8  employment, promotion, or any benefit of employment by an employer on the basis of that

9  membership, application for membership, performance of service, application for service, or

10  obligation." 38 U.S.C. § 4311(a). To survive dismissal, Tole must allege that his military service

11  was a "substantial or motivating factor" in the failure to be reemployed with the same potential

12  to be promoted—i.e., with the same seniority. Huhmann v. Fed. Express Corp., 874 F.3d 1102,

13  1108 (9th Cir. 2017). The "employer may then avoid liability only by showing, as an affirmative

14  defense, that the employer would have taken the same action without regard to the employee's

15  protected status." Id. (quotation and citation omitted).

16          The Ninth Circuit has endorsed the use of "two intersecting doctrines—the 'escalator

17  principle' and the 'reasonable certainty test'—. . . to determine the status or position to which a

18  returning service member is entitled." Huhmann, 874 F.3d at 1105. "The 'escalator principle'

19  provides that a returning service member not be [sic] removed from the progress ('escalator') of

20  his career trajectory, but rather return to a 'position of employment in which the person would

21  have been employed if the continuous employment of such person with the employer had not

22  been interrupted by such service.'" Id. at 1105-06 (quoting 38 U.S.C. § 4313(a)(2)(A)). "The

23  'reasonable certainty test' aids in determining the returning service member's position on the

24

1    'escalator,' inquiring into the position a returning service member would have been 'reasonably

2    certain' to have attained absent the military service." Id. at 1106 (citing 20 C.F.R. § 1002.191).

3    "In all cases, the starting point for determining the proper reemployment position is the escalator

4    position, which is the position that that the employee would have attained if his continuous

5    employment had not been interrupted due to uniformed service." 20 C.F.R. § 1002.192; see also

6    20 C.F.R. § 1002.213.

7          The "reasonable certainty test" contains "both a forward-looking and a backward-looking

8    approach." Huhmann, 874 F.3d at 1106. "First, the court determines whether it appears, as a

9    matter of foresight, that individuals like a given claimant who successfully completed training

10   would have obtained a certain position had employment not been interrupted by military

11   service." Id. Second, the court "analyzes whether, as a matter of hindsight, a particular claimant

12   either has, or would have, completed the necessary prerequisites for a position." Id. (citing Tilton

13   v. Mo. Pac. R.R. Co., 376 U.S. 169, 181 (1964) ("This requirement is met if, as a matter of

14   foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of

15   hindsight, it did in fact occur.")).

16         Crucial to Tole's claim is Huhmann's conclusion that "[t]he reasonable certainty test

17   applies to discretionary promotions." Id. (citing 70 Fed. Reg. 75,246, 75,271 (Dec. 19, 2005),

18   available at 2005 WL 3451172). This directly rebuts Amazon's contention that the reasonable

19   certainty test only applies to automatic promotions, not discretionary ones. (See Reply at 4-6.)

20   Indeed, Amazon selectively quotes one sentence from Huhmann while ignoring the quoted

21   language above. This undermines Amazon's entire argument. Amazon instead misplaces reliance

22   on the Batayola v. Seattle, a split decision that turned on a unique set of distinguishable facts.

23   798 F.2d 355, 357 (9th Cir. 1986). Specifically, the plaintiff was a part-time bus driver for Metro

24

1    who took a month's leave to serve in the Marines and alleged that he missed out on Metro's call

2    to part-time bus drivers to apply to become full-time bus drivers. Id. at 356. The Court reasoned

3    that even if the plaintiff should have had the right to apply for full-time status, it was not

4    reasonably certain he would have been given the job, which depended on each applicant's

5    "fitness and ability" and where 105 of 426 applicants actually obtained employment. Id. at 356-

6    57. The Court did not hold that only automatic promotions could serve as a basis for a USERRA

7    claim such as Tole's. And the other cases Amazon cites are off-topic and out-of-circuit,

8    rendering them unhelpful, particularly in light of Huhmann's clear holding. (See Reply at 5-6.)

9            Tole has sufficiently alleged his military service was a substantial or motivating factor in

10   his failure to be returned to the same seniority and promoted to his reasonably certain next level

11   of employment upon his return. Tole alleges that he expected to be promoted in the Spring of

12   2019 around the time he took military leave. (SAC ¶ 56.) To this end, Tole identifies positive

13   reviews he received in the first quarter 2019 and by way of comparison to peers who started in

14   the Pathways Program at nearly the same time as he did and who were promoted to L7 and

15   beyond while Tole was on military leave. (Id. ¶¶ 55, 57-59, 80-81.) This comparison to others

16   who are similarly situated is relevant to showing a seniority right. See 20 C.F.R. § 1002.213.

17   And even though Tole was not promoted before he left for his military service, he was told by a

18   Senior Manager of the Pathways Program that Amazon would restart his service in the program

19   at the same point where he left. (Id. ¶ 66.) And yet, Amazon allegedly failed to reinstate Tole

20   with the same seniority, telling him instead that he would restart with a "clean slate," where none

21   of his progress towards advancement pre-leave would be counted towards his L7 promotion. (Id.

22   ¶ 70.) These allegations suffice to show that Tole reasonably expected, with foresight, to be

23

24

1    promoted upon his return, or shortly thereafter and that, in hindsight, he had the qualifications to

2    be promoted. Moreover,

3           Tole additionally alleges that his promotion was stymied after he gave notice of his

4    upcoming military service, when his supervisor "pulled [him] from consideration" for a

5    promotion. (Id. ¶ 56.) Not only was Tole not returned to the same point on the escalator when he

6    returned, he was placed on a "focus plan" and given a negative performance evaluation for

7    reasons never explained to him. (Id. ¶¶ 62, 70.) And Amazon refused to consider any of his prior

8    work as a grounds to promote him to L7, despite being assured that his time in the Pathway

9    Program would be counted upon his return. (Id. ¶ 62, 70.) These facts help support his claim of

10   discrimination in violation of USERRA's guarantee to be placed in the same position of seniority

11   upon the return, at a minimum.

12          Amazon makes much of the fact that Tole was not entitled to any automatic promotion

13   through the Pathways Program. This is not required under USERRA, as explained above. And,

14   as Tole points out, the Pathways Program had dates through which the participant was expected

15   to progress through the "ranks" of the program. (SAC ¶ 51.) Indeed, Tole was told that he could

16   be removed from the program if he failed to progress to L7 within thirty-six months. (Id. ¶ 74.)

17   So while there are discretionary aspects to the advancement, Tole has alleged sufficient facts to

18   suggest that he would have progressed to L7 or higher had he not taken military leave. It is for

19   the finder of fact to determine whether the facts support this and whether Amazon can support its

20   affirmative defense.

21          The Court DENIES the Motion as to this claim.

22

23

24

1

**CONCLUSION**

2          Having amended her claims, Mahone has now adequately alleged that Amazon willfully

3  violated USERRA when it terminated her and failed to reemploy her. She has additionally

4  alleged sufficient facts to state a claim for failure to reemploy under USERRA. And Tole has

5  adequately alleged a claim for that he was not reemployed with the requisite seniority as required

6  under USERRA. The Court therefore DENIES the Motion to Dismiss.

7          The clerk is ordered to provide copies of this order to all counsel.

8          Dated April 10, 2023.

9

10                                              Marsha J. Pechman
                                                United States Senior District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24