The Honorable Marsha J. Pechman

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### AT SEATTLE

| | |
|---|---|
| YASMINE MAHONE, an individual, and BRANDON TOLE, an individual, on behalf of themselves and all others similarly situated, ) ) ) | **CASE NO. 2:22-CV-00594-MJP** |
| Plaintiffs, ) ) ) | |
| vs. ) ) | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT** |
| AMAZON.COM, INC., a Delaware corporation, AMAZON.COM SERVICES LLC; a Delaware Limited Liability Company; and AMAZON.COM.DEDC, LLC; a Delaware Limited Liability Company; and AMAZON.COM.KYDC, LLC, a Delaware Limited Liability Company ) ) ) ) ) ) ) ) ) ) | NOTE ON MOTION CALENDAR: FRIDAY, JANUARY 19, 2024 |
| Defendants. ) ) | |

Motion for Class Certification and
Memorandum in Support

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    USERRA PROTECTIONS OF MILITARY MEMBERS ................................. 2

III.   FACTUAL BACKGROUND ............................................................................. 7

     A.     Amazon's Policies and Practices ............................................................. 7

          1.     Military Leave of Absence ............................................................ 7

          2.     Unpaid Time Off (UPT) ................................................................ 8

          3.     Overall Value ................................................................................ 8

     B.     The Proposed Class Representatives Employment and Military Service ............. 11

          1.     Plaintiff Mahone. ........................................................................ 11

          2.     Plaintiff Tole. .............................................................................. 13

IV.    ARGUMENT ................................................................................................... 16

     A.     The Classes Satisfy Federal Rule of Civil Procedure 23(a) ................................ 17

          1.     Numerosity ................................................................................... 17

          2.     The Classes are Ascertainable and Properly Defined ................ 17

          3.     There are Numerous Questions of Law and Fact Common to the
         Classes ......................................................................................... 18

          4.     Plaintiffs' Claims are Typical of the Claims of the Class and
         Respective Subclasses ................................................................. 19

          5.     Plaintiffs will Fairly and Adequately Protect the Interests of the
         Classes ......................................................................................... 20

Motion for Class Certification and
Memorandum in Support

Page i

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

B.    The Classes Satisfy Rule 23(B)(3) ......................................................... 19

1.    Common Issues Predominate Over Questions Affecting Individual

Class Members. ...................................................................................... 19

a.    Common Issues Predominate Over Questions Affecting

Individual Class Members. ........................................................ 22

b.    Individual Damages Calculations Do Not Defeat

Predominance ............................................................................ 23

2.    A Class Action is the Superior Method of Adjudication ........................ 24

a.    The Class Members Have No Interest in Pursuing

Individual Actions an No Other Actions are Pending ................ 25

b.    This Court is the Appropriate Forum for this Litigation and

There Are No Manageability Issues .......................................... 25

V.    CONCLUSION ............................................................................................................ 26

Motion for Class Certification and
Memorandum in Support                    Page ii          PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

# TABLE OF AUTHORITIES

**CASES**

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 661-62 (E.D. Cal. 2008) ................................ 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) .................................... 21

*Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) ........................................ 20

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ...................... 22

*Boone v. Lightner*, 319 U.S. 561, 575 (1943) .................................................. 5

*Clarkson v. Alaska Airlines, Inc.,* 59 F.4th 424, 428 (9th Cir., Feb. 1, 2023) ................ 6

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) ...................................... 23

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) 25

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) .................................................................................... 17

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011) ................... 18

*Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) ..................... 5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). .............................. 18

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). ......... 17

*In re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) ............... 21

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) ....... 21

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ............................ 18

Motion for Class Certification and
Memorandum in Support

Page iii

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

*Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982) ...................................... 19

*Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 521 (C.D. Cal. 2012) ................................... 17

*Kincaid v. City of Fresno*, 244 F.R.D. 597, 603 (E.D. Cal. 2007)................................................. 20

*Lerwill v. Inflight Motion Pictures Inc*., 582 F.2d 507, 512-13 (9th Cir. 1978) ......................... 24

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) ................................................. 24

*Monroe v. Standard Oil Co*., 452 U.S. 549. 555 (1981) ................................................................. 6

*Myrick v. City of Hoover*, 69 F.4th 1309, 1312 (11th Cir., June 8, 2023) ..................................... 5

*O'Connor v. Boeing North American, Inc*., 184 F.R.D. 311, 335 (C.D. Cal. 1998) .................... 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663-664 (9th Cir. 2022).......................................................................................................................................... 16

*Owino v. Corecivic, Inc.*, 60 F.4th 437, 447 (9th Cir. 2022) ....................................................... 22

*Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) .................................................................... 19

*Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010)....................................................... 17

*Rivera-Melendez v. Pfizer Pharms*., LLC, No. 12-1023, *13, 14 (1st Cir. Sep 20, 2013) ............ 6

*Travers v. Fed. Express Corp*., 8 F.4th 198, 199 (3rd Cir., Aug. 10, 2021) ................................... 5

*Valentino v. Carter–Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996).. ................................... 17

*Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1154 (9th Cir. 2016)......................... 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).. ......................................................... 4

Motion for Class Certification and
Memorandum in Support

Page iv

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

**STATUTES**

38 U.S.C. § 4301 ............................................................................................................. 3

38 U.S.C. § 4301(a)(1) ................................................................................................... 5

38 U.S.C. § 4302(b) ..................................................................................................... 6, 7

38 U.S.C. § 4303(3) and (16) .................................................................................. 12, 13

38 U.S.C. § 4323(c)(2) ................................................................................................... 25

38 U.S.C. § 4323(d). ...................................................................................................... 24

**RULES**

20 C.F.R. § 1002.7(b) ...................................................................................................... 7

20 C.F.R. § 1002.85(b) .................................................................................................... 7

20 C.F.R. § 1002.87 ......................................................................................................... 7

20 C.F.R. § 1002.191 ....................................................................................................... 6

20 C.F.R. § 1002.192 ....................................................................................................... 6

20 C.F.R. §1002.193 .................................................................................................... 6, 11

20 C.F.R. § 1002.213 ....................................................................................................... 6

Plaintiffs Yasmine Mahone and Brandon Tole ("Plaintiffs"), on behalf of themselves and the class of all other similarly situated persons, as proposed Class Representatives, hereby submit the following Motion for Class Certification. This is a class action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et seq*. ("USERRA") against Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon.com.dedc, LLC and Amazon.com.kydc LLC's (collectively "Amazon").

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), Plaintiffs seek certification of nationwide Classes of all current and former employees of Amazon who were or are currently serving in the United States Armed Services or National Guard ("Military Employees" or the "Class"). Plaintiffs also seek certification of the following subclasses: 1) the "Hourly Military Employee Subclass" consisting of a nationwide class of all current and former hourly employees of Amazon who were or are currently serving in the United States Armed Services or National Guard; and 2) the "Salaried Military Employee Subclass" consisting of a nationwide class of all current and former salaried employees of Amazon who were or are currently serving in the United States Armed Services or National Guard.

## I.   INTRODUCTION

Amazon lists among its Leadership Principles that Success and Scale Bring Broad Responsibility: "We are big, we impact the world, and we are far from perfect. We must be humble and thoughtful about even the secondary effects of our actions."[1] Actions speak loader than words. Amazon has failed in its responsibilities to its Military Employees by not implementing adequate policies and procedures to protect them and ensure their employment rights under USERRA.

This case challenges Amazon's policies, practices and/or omissions relating to its failures to protect military servicemembers in violation of USERRA. Amazon's policies and practices regarding Military Leave of Absence ("MLOA") are applied the same to the Class of all Military Employees. Likewise, to the extent there are specific policies applicable to Hourly or Salaried

[1] https://www.amazon.jobs/content/en/our-workplace/leadership-principles

Military Employees, those respective policies and practices applied the same to the respective Subclasses. As such, common questions of law and fact are pervasive and predominate in this case. Indeed, the common and salient issues are straightforward:

1. Did Amazon's policies and practices concerning MLOA violate USERRA?

2. Did Amazon's policies and practices concerning its Overall Value ("OV") ranking in conjunction with MLOA violate USERRA?

3. As to the Hourly Military Employee Subclass, did Amazon's policies and practices concerning Unpaid Time Off ("UPT") in conjunction with MLOA violate USERRA?

4. Were Amazon's violations of USERRA willful warranting liquidated damages in an additional amount equal to the present value of the Class's and Subclass's lost wages and other benefits pursuant to Section 4323(d)(1)(C)?

The answer is the same for all Class and respective Subclass members, and the evidence overwhelmingly proves the answer is "Yes" to each common question presented.

Class "claims must depend upon a common contention . . . . of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Determination of the common contentions presented in this case will resolve central issues relating to Amazon's policies and practices relating to MLOA, UPT an OV in one stroke, respectively. The claims will be based on the resolution of overtly common issues of law and fact.

## II.  USERRA PROTECTIONS OF MILITARY SERVICEMEMBERS

The Ninth Circuit recently articulated the importance of USERRA in a case against Alaska Airlines entitled *Clarkson v. Alaska Airlines, Inc.*:

> For over sixty years, our nation has encouraged military service by continually easing the burden on servicemembers who must juggle military duties with civilian jobs. In the Selective Training and Service Act of 1940, Congress ensured for the first time—but not the last—that veterans returning to civilian jobs would not face discrimination on account of their service. Over the succeeding decades, re-employment rights were extended to military reservists and National Guardsmen.

Motion for Class Certification and Memorandum in Support

Page 2

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

These protections remain all the more important today, as our nation relies on an all-volunteer military force. Indeed, just as the draft came to an end, Congress expanded servicemembers' protections in the Veterans' Reemployment Rights Act of 1974. Congress continued its tradition of recognizing the sacrifice and dedication of servicemembers in 1994 by enacting the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

*Clarkson v. Alaska Airlines, Inc*., 59 F.4th 424, 428 (9th Cir., Feb. 1, 2023)

"Military reservists play a vital role in our nation's defense policy." *Myrick v. City of Hoover*, 69 F.4th 1309, 1312 (11th Cir., June 8, 2023). "When called to service, these men and women are expected to leave their civilian jobs, sometimes for years on end." *Id.* To alleviate this burden, Congress enacted USERRA. *Id.* citing 38 U.S.C. §4301(a). "In short, USERRA recognizes that those who serve in the military should be supported, rather than penalized, for their service." *Clarkson,* 59 F.4th at 429.

"Congress enacted USERRA to mitigate the employment disadvantages that stem from non-career military service." *Id.,* (citing 38 U.S.C. §4301(a)(1)). "In pursuit of this purpose, Congress imposed a number of obligations on employers and granted a number of entitlements to military employees." *Id.* "The Supreme Court has long admonished courts to construe statutes protecting veterans liberally for the benefit of the veteran." *Clarkson*, 59 F.4th at 424 (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S. Ct. 1105, 90 L. Ed. 1230 (1946)). ("[A]ny interpretive doubt is construed in favor of the service member, under the pro-veteran canon."); *see also, Boone v. Lightner*, 319 U.S. 561, 575 (1943) ("USERRA is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.")

"Congress intended USERRA and its predecessor statutes to protect reservists during their 'frequent absences from work' with the full understanding that those frequent absences 'could cause considerable inconvenience to an employer.'" *Clarkson,* 59 F.4th at 436 (citing *Monroe v. Standard Oil* Co., 452 U.S. 549. 555 (1981)). "Nevertheless, 'Congress has provided . . . that employers may not rid themselves of such inconveniences and productivity losses by discharging or otherwise disadvantaging employee-reservists solely because of their military obligations.'" *Id.*

Motion for Class Certification and
Memorandum in Support

Page 3

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

This case is about the obligations and entitlements in Sections 4311, 4313 and 4316 of USERRA (further codified by 20 C.F.R. § 1002.191) which provides that an employee is entitled to be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service.

The Department of Labor clarified that 20 C.F.R. § 1002.191 (Titled: "What position is the employee entitled to upon reemployment?") and 1002.192 (Titled "How is the specific reemployment position determined?") apply to both "discretionary and non-discretionary" promotions. *See, Rivera-Melendez v. Pfizer Pharms., LLC*, No. 12-1023, *13, 14 (1st Cir. Sep 20, 2013). Accordingly, the type of position is irrelevant to the reemployment analysis. "In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the position that that the employee would have attained if his continuous employment had not been interrupted due to uniformed service." 20 C.F.R. § 1002.192. *See also*, 20 C.F.R. §1002.213. An employee "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4302(b); *see also,* 20 C.F.R. §1002.193 ("The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service.").

USERRA expressly supersedes any agreement and/or employer policy. 38 U.S.C. §4302(b); 20 C.F.R. §1002.7(b). An employee need not request time off or permission to perform military service obligations. The employee must give notice to the employer, such notice may be verbal or written, and need not follow any particular format. 20 C.F.R. §§ 1002.87; 1002.85(b).

### III.  FACTUAL BACKGROUND

**A.    Amazon's Policies and Practices**

**1.    Military Leave of Absence (MLOA)**

In response to discovery "Amazon has produced the Military Leave Policy in effect during the relevant time period (2017-present) as BATES AMAZON-OLSON02772–2779; AMAZON-

Motion for Class Certification and
Memorandum in Support

Page 4

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

OLSON02752–2755; AMAZON-OLSON02764–2767; and AMAZON-OLSON02787–2793." Declaration of Gene J. Stonebarger in Support of Motion for Class Certification ("Stonebarger Decl."), Ex. 2, pp. 6:23-7:12; Declaration of Brian Lawler in Support of Motion for Class Certification ("Lawler Decl."), Exs. 2-5. Amazon had substantially similar MLOA policies and practices from 2016-2022. *Id*. Amazon outsourced its leave of absence administration, including its MLOA administration, to a third-party company (Reed) from 2017 through 2020. Lawler Decl., Ex. 9, Hughes Depo., 39:22-45:25. Amazon's 30(b)(6) witness regarding the topic of MLOA policies since 2017 (Anne Hughes) did not know what Reed's practices were relating to its administration of MLOA, how MLOA was tracked or how Amazon communicated with Reed about MLOA taken by Amazon's employees. Lawler Decl., Ex. 9, Hughes Depo., p. 44:3-45:25. Amazon has refused to provide discovery responses relating to its agreement with Reed for the administration of MLOA during this time period, which is the subject of a discovery dispute pursuant to LRC 37 pending before the Court. [Doc. 68.]

In 2020, Amazon began its MLOA administration in house. Lawler Decl., Ex 10 [AMAZON-OLSON00886]; Lawler Decl., Ex. 9, Hughes Depo., p. 41:24-16. Prior to December 2021 there was no person at Amazon in a position to manage the MLOA policy, "it was a new job." Lawler Decl., Ex. 9, Hughes Depo., p. 24:2-16. At all times after termination of the Reed agreements in 2021, Department of Leave Services ("DLS") case managers (who administered all types of leaves) were assigned in way unknown by Amazon and responsible for managing the rights of the Military Employees while on MLOA. Lawler Decl., Ex. 9, Hughes Depo., pp. 32:5-34:17. Amazon did not put any person in a position specific to training any employees on MLOA until mid-2021 when it put Brian Poole in a position to train case managers. Lawler Decl., Ex. 12, Poole Depo., pp. 16:5-14.

Amazon's MLOA policy has provisions that are inconsistent with USERRA and place unlawful burdens on its employees who intend to take MLOA. Lawler Decl., Ex. 10. Amazon requires its employees to "request" MLOA, and adds "whenever possible, Military LOA should be requested 30 days prior to the start of the leave." *Id*. Also, "Amazon may request that the

Motion for Class Certification and
Memorandum in Support

Page 5

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

employee submit Military Orders (or other documentation) at the time the Military LOA is requested in order to assist with administering the LOA . . . However, documentation is only required for Military LOA that exceeds a specified duration and upon the employee's request for reinstatement (return to work)." *Id.*

On August 18, 2022, more than three months after the filing of this lawsuit, Amazon for the first time created a "USERRA Military Case Management SOP." Lawler Decl., Ex. 7. The current MLOA policy has been in place since March 2022. Lawler Decl., Ex. 9, Hughes Depo, p. 25:11-21.

### 2.    Unpaid Time Off (UPT)

Amazon has produced its current UPT policy in response to discovery which remained consistent from 2019 through 2022. Stonebarger Decl., Ex. 2 [RFP 14] p. 13:8-21; Lawler Decl., Ex. 8; Lawler Decl., Ex. 10, Morell Depo, p. 43:2-25. "UPT is calculated based on how much time an employee misses outside of their shift." Lawler Decl., Ex. 10, Morell Depo, p. 21:2-19. There is only "one" type of UPT. *Id.* at p. 20:15-20. UPT only applies to hourly employees. *Id.* at p.22:4-6. There is no dispute that Mahone's unpaid time off was calculated and inputted consistent with Amazon's Policy for Unpaid Time Off (UPT). *Id.* When Amazon was asked to describe with particularity how and based on what criteria UPT is calculated and inputted into YOUR employees' files or databases, "Amazon refers Plaintiffs to its Policy for Attendance Unpaid Time (UPT) - US (BATES AMAZON-OLSON02794–2796), which explains, at a high level, the process for accruing and using UPT." Stonebarger Decl., Ex. 3 [Rogs 6 and 7] p. 8:20-10:11. There is no cross-referencing that occurs through automation or otherwise in Amazon's systems to determine whether an employee missing time is on MLOA. Lawler Decl., Ex. 10, Morell Depo, p. 23:15-20.

When asked to identify all of Amazon's "current or former employees who have been disciplined or terminated from their employment with YOU for having a negative UPT balance," and for "each individual identified, state the date of each disciplinary action or date of termination, the specific conduct leading to discipline or termination, and whether that employee was offered reinstatement": "Amazon refers Plaintiffs to its amended response to Request for Production

("RFP") No. 24." Stonebarger Decl., Ex. 3 [Rog 17], pp. 18:22-19:16. In Response to RFP No. 24 "Amazon responds to as follows: Amazon has produced a data file that contains information on all approved military-leave-of-absence events between 2018 (the earliest year for which data are available) and 2022, as well as certain employment information regarding each employee, as Bates number AMAZON_03324." Stonebarger Decl., Ex. 4 [RFP 24], p. 8:9-23.

Amazon's person most knowledge on UPT has never received any training from anyone at Amazon relating to its MLOA policy or relating to USERRA. Lawler Decl., Ex. 10, Morell Depo, p. 18:9-11. Amazon has refused to produce a witness on the Topic of "Standard Operating Procedures relating to Unpaid Time Off ("UPT")" pursuant to FRCP 30(B)(6) without any basis, which is also a dispute included in the LRC 37 submission [Doc. 68, p. 23] Amazon has refused to allow Plaintiffs to question Amazon through depositions regarding its delayed document productions of SOPs relating to UPT produced after the August 22, 2023 Depositions. *Id.*

### 3. Overall Value (OV)

Pay and promotion decisions at Amazon are based upon Company-wide policies and practices tied to Overall Value (OV) ratings of the Employees. Amazon's employee performance evaluation system generally includes five separate tiers: "Least Effective" ("LE"), the poorest rating an employee can receive; "Highly Valued" ("HV"), which is further broken into three separate sub-categories ranging from HV1, HV2, and HV3, wherein HV1 is the lowest and HV3 is the highest; and "Top Tier" (TT), which is the highest rating an Amazon employee can receive. Tole Decl., ¶13; Lawler Decl., Ex 1, Dwyer Decl. p.4:8-15; Ex. 9, Hughes Depo., p. 73:10-14. The OV performance code/rating/ranking assigned to an Amazon employee is a factor utilized by Amazon in determining employee compensation. Stonebarger Decl., Ex. 6 [RFA 34], p. 5:19-6:9.

These OV rankings directly impact an employees' incentive compensation, eligibility for promotions, retention in employment, and may also result in employees being faced with disciplinary action, such as performance improvement plans ("PIP") a/k/a "focus plans," or even termination from employment. *Id.* Across the entire Company, Amazon employees are forced into a curve on the OV rating schedule such that a certain % of Amazon employees are required to be

rated in each respective rating category, include in the Least Effective ("LE") category. Lawler Decl., Ex 11, Dwyer Decl, p. 26:23-33:20; Ex. 9, Hughes Depo., p. 73:10-14. When an employee is placed in the LE rating category, a requirement is triggered for the respective employee's supervisor to prepare a Performance Improvement Plan ("PIP"). OV rating is a factor considered as part of the process. *Id.* ("There are multiple factors that are taken into consideration for promotion, and overall value is a summation of performance, and it is one factor that will be looked into when consideration for readiness for promotion."). Amazon conducts performance evaluations for Military Employees while they are on MLOA. Lawler Decl., Ex. 9 Hughes Depo., p. 130:3-24. This leads to supervisors conveniently placing the Military Employee into an inferior OV, including LE, to make room for others in the curve and to avoid the burden of preparing PIPs. Declaration of Brandon Tole in Support of Motion for Class Certification ("Tole Decl."), ¶¶17, 18.

Amazon has unilaterally selected certain employment information regarding each employee to be included in the spreadsheet identified as AMAZON_03324, while withholding responsive employment information, including amongst other things: the OV rating/coding/points, NPS rating/coding/points, and Job Levels with corresponding promotion dates. Stonebarger Decl., ¶¶2-4. This information is the promotions and performance-related data regarding all employees across the company who took military leave; which Amazon has made clear that it not be producing without a court order. *Id.* The specific promotion and performance-related coding data being withheld is directly relevant to the class claims in this case, including whether Class members were deprived of the seniority rights, status, and rate of pay that they were entitled to as though the employee had been continuously employed during the period of service.

Amazon also has refused to produce a witness on the Topic of "Amazon's utilization of Overall Value (OV) rating, coding, ranking, and/or points relating to employee performance" pursuant to FRCP 30(B)(6) without any basis, which is also a dispute included in the LRC 37 submission [Doc. 68, p. 23.] OV ratings are not disclosed to employees and OV rating is a direct factor in determining promotions and compensation levels. Lawler Decl., Ex. 11, Dwyer Depo,

Motion for Class Certification and
Memorandum in Support

Page 8

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

pp. 32:19-33:20. The specific promotion and performance processes is directly relevant to the Class claims in this case, including whether the putative Class members were deprived of the seniority rights, status, and rate of pay that they were entitled to as though the employee had been continuously employed during the period of service. *See,* 20 C.F.R. §1002.193.

**B.      The Proposed Class Representatives Employment and Military Service**

The Military Employees' protected status as members of the military was a motivating factor in Amazon's denial of benefits, conditions and privileges of their employment as a result of their military responsibilities. The experiences and treatment of Plaintiff Mahone resulting from Amazon's policies and practices impacting Hourly Military Employees is similar to the other Hourly Military Employees. The experiences and treatment of Plaintiff Tole resulting from Amazon's policies and practices impacting Salaried Military Employees is similar to the other Salaried Military Employees.

**1.      Plaintiff Mahone**

Amazon has admitted that "the basis to terminate Mahone's employment with Amazon on October 20, 2020, was her negative UPT balance." Stonebarger Decl., Ex. 5, FRA No. 6. Mahone's negative UPT balance resulted from her MLOA wherein she was performing military service obligations. *Id.* [RFA 5] at p. 6:5-13.

Mahone was employed by Amazon in Bessemer, Alabama from July 16, 2020 until she was terminated on October 18, 2020. Declaration of Yasmine Mahone in Support of Plaintiffs' Motion for Class Certification ("Mahone Decl.") at ¶6. At all times relevant, Mahone was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16), as a member of the Alabama Army National Guard ("AANG") currently holding the rank of Specialist (paygrade E-3). *Id.* at ¶3; Stonebarger Decl., Ex. 5 [RFA 1], p. 4:24-2:3.

Mahone performed various periods of military service during her employment with Amazon that required her to take military leave. *Id.* at ¶4. From October 16 through 18, 2020, Mahone was performing military service obligations, also known as a "drill weekend" or "battle assembly." *Id.* at ¶8. Prior to the October drill weekend, Mahone timely notified Amazon of her

drill weekend and took military leave without pay ("LWOP") from Thursday, October 15 through Sunday, October 18. Mahone Decl. at ¶13. Amazon approved this request on September 29, 2020. *Id.*; Stonebarger Decl., Ex. 5 [RFA 3], p. 5:11-18. On Sunday, October 18, 2020, Mahone was performing military service obligations when she received an email from Amazon terminating her employment because her UTO balance was 36 hours, which was a direct result of the three shifts she missed for military service during the military drill weekend. Mahone Decl. at ¶14.

On October 22, 2022, Amazon Disability and Leave Services ("DLS") Case Manager Maggie Otarola emailed Mahone stating "[w]e wanted to reach you and you have recently been terminated from Amazon, and we want to confirm if you believe this had anything to do with un-reported Military leave dates. Please contact our HR Military Team, if you believe you were incorrectly terminated. You will be required to provide military documentation to support any unreported dates." *Id.* at ¶15. Mahone responded on October 26, 2020, that she provided proof that she was performing military service during October 15-18, 2020 prior to her departure to drill; and Mahone again emailed a copy of her fiscal year 2021 drill schedule to Otarola on October 27, 2020 – demonstrating that the time she was absent from Amazon in October was to perform her monthly military drill obligation. *Id.* at ¶16. Stonebarger Decl., Ex. 5 [RFA 8], p. 7:7-16. On November 11, 2020, Otarola emailed Mahone and stated "our escalations department evaluated your termination case and informed us that since documentation was not provided timely, the leave time was not coded causing the negative UPT hours. At this moment, the DLS team will not proceed with the reinstatement request." *Id.* at ¶18.

Otarola, as a member of Amazon's "DLS Military Team," and other employees of Amazon's "escalation department" had actual knowledge of USERRA and Amazon's obligations thereunder. *Id.* at ¶19. Despite Amazon having knowledge that Mahone's UPT was to perform military service, they knowingly terminated her from her position of employment and failed to offer her reinstatement despite Mahone providing proof of her military service obligation. *Id.* at ¶20. After the November 11, 2020 email from Otarola informing Mahone she would not be reinstated with Amazon, Mahone received no communication from Amazon about her termination

Motion for Class Certification and
Memorandum in Support

Page 10

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

1    until she brought this legal action on May 4, 2022. *Id.* at ¶21.

2                    **2.      Plaintiff Tole**

3            Tole began employment with Amazon on June 19, 2017, and he is currently still employed

4    by Amazon as an Operations Manager. Declaration of Brandon Tole in Support of Plaintiffs'

5    Motion for Class Certification ("Tole Decl.") at ¶6. Tole has had continued military responsibilities

6    in the United States Marine Corps Reserve ("USMCR") since 2017, and at all times relevant, he

7    was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3)

8    and (16), currently holding the rank of Major. *Id.* at ¶7; Stonebarger Decl., Ex. 5[RFA 12], p. 8:19-

9    24.

10           Tole began his employment as an Outbound Area Manager with Amazon through its

11   "Military Leaders Program" ("MLP"), which was an executive management program wherein

12   members would gain experience in as an Area Manager (L5), Operations Manager (L6), Senior

13   Operations Manager (L7), and then "graduate" the Program to the position of General Manager

14   (L8). *Id.* at ¶9. The program was expected to be four years long. *Id.* This program has since been

15   renamed "Amazon Pathways" ("Pathways") and is "designed to rapidly develop talented MBA or

16   Masters-level graduates and high-potential transitioning military leaders with the skills they need

17   to be Amazon General Managers and Directors." *Id.*

18           In December of 2017, Tole was promoted to Operations Manager (L6). *Id.* at ¶9. In Tole's

19   performance review for the first quarter of 2019, his supervisor made several positive statements

20   regarding his accomplishments. *Id.* at ¶10. Tole expected to be eligible for promotion to L7 during

21   the spring of 2019, however, after notifying Amazon of his pending military service obligation, he

22   was pulled from consideration for L7 by his supervisor. *Id.* at ¶12. From the time of his promotion

23   to L6 to the time of his departure for military deployment in May of 2019, Tole had been in the

24   role of Operations Manager (L6) for approximately seventeen months. *Id.* at ¶16.

25           After Tole departed on MLOA in May of 2019, he was rated "LE" by his Senior Operations

26   Manager and was assigned a "focus plan." *Id.* at ¶18. Tole was not notified by the supervisor who

27   rated him LE that he received such a rating, nor was he presented with a focus plan. *Id*. During

Tole's MLOA, he was assigned to five separate Senior Operational Managers. *Id.* at ¶19.

Tole did not receive any pay raises commensurate with his peers in the MLP, nor did he receive a bonus or increase to his compensation for the time he worked during 2019, despite having positive employee evaluations during his time working with Amazon. *Id.* at ¶20. On May 6, 2020, while still on MLOA, Tole spoke with Amazon's Senior Manager for the World-Wide Pathways program at that time, who advised Tole that "[f]rom a Pathways perspective, you pause where you were in your timeline, for example if you were at 12 months when you left, and you were gone for 12 months, you will come back at 12 months tenure in Pathways." *Id.*; Lawler Decl., Ex. 13.

Amazon's policy on "Position Reinstatement" for return from MLOA states "reinstatement to prior position, or position that you would have been in had you not taken military leave, is offered." *Id.* at ¶23. Tole returned to work at Amazon in early November of 2021 and was assigned to the position of Inbound Operations Manager (L6) and rescheduled to a night shift position to work under supervisor who was hired after Tole but promoted above Tole. *Id.* at ¶25. Plaintiff Tole scheduled a meeting with his supervisors on January 24, 2022 because he believed Amazon was not addressing his rights under USERRA. Lawler Decl., Ex. 14.

During the meeting, Tole specifically asked when he would be eligible for promotion to L7. *Id.* at ¶26. Tole's supervisor told him that none of the projects that he completed prior to his MLOA in 2019 would count towards his eligibility for L7, and that due to the time he was gone on MLOA, Tole progress towards L7 was starting over with a "clean slate." *Id.* This is consistent with Amazon's policies and practices of not giving any credit for work performed prior to the preceding 12 months of a review related to promotion or pay.

Amazon additionally reset Tole's "progress rating" – a mentoring metric utilized by Amazon managers, to zero percent, without explanation. *Id.* During the January 24th meeting, Tole also learned that he received the "LE" rating while he was on MLOA. When Plaintiff Tole asked for the basis for his "LE" rating, his supervisor would not provide that information. *Id.* at ¶27. Also, during the January 24th meeting, Tole was advised that he was "too new to rate," and that his Operational Leadership Ranking for 2022 would automatically be rated "HV1." *Id.* This

Motion for Class Certification and
Memorandum in Support

Page 12

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

ranking limited the bonus and incentive compensation for which Tole was eligible and was a violation of Amazon's corporate policy not to assign generic ratings to employees. *Id.* at ¶28. Tole was told in the January 24th meeting that the next opportunity for Tole to interview for promotion to L7 would occur in June 2022, but then in March 2022, Tole was told any interview for L7 would be delayed again until August 2022. *Id.* at ¶29.

Early spring of 2022, Tole's direct supervisor advised Plaintiff Tole that he may be subject to removal from the MLP due to the not meeting the Pathways standard of obtaining the position of L7 within thirty-six months. Tole was also told that he needed to "find more projects" because the former projects Tole completed prior to his MLOA would not count towards his eligibility to L7. *Id.* at ¶31. In August of 2022, Tole was not provided an opportunity to interview for promotion to L7. *Id.* at ¶32.

Currently, Tole is the longest tenured L6 at his working location, having approximately 28 months experience at that pay grade. *Id.* at ¶33. Tole has never been formally disciplined during his employed with Amazon. *Id.* at ¶34. All of Tole's non-military employee contemporaries in the MLP and Pathways still employed by Amazon at his working location are currently L7s or L8s, while Tole remains an L6. *Id.* at ¶35; Stonebarger Decl., Ex. 5, [RFAs 15, 16] pp. 9:12-10:5. Other Amazon employees in the MLP to whom Tole has at least one year seniority over have been promoted to L7 or even L8. Tole Decl. at ¶36.

## IV. ARGUMENT

As the Ninth Circuit recently articulated in *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*:

> Rule 23 provides a procedural mechanism for "a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 408, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010). As a claims-aggregating device, Rule 23 "leaves the parties' legal rights and duties intact and the rules of decision unchanged," *id.,* and it does not affect the substance of the claims or plaintiffs' burden of proof, see 28 U.S.C. § 2072(b).
>
> To take advantage of Rule 23's procedure for aggregating claims, plaintiffs must make two showings. First, the plaintiffs must establish "there are questions of law or fact common to the class," as well as demonstrate numerosity, typicality and

Motion for Class Certification and
Memorandum in Support

Page 13

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

adequacy of representation.4 Fed. R. Civ. P. 23(a). A common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member. See *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Second, the plaintiffs must show that the class fits into one of three categories. See Fed. R. Civ. P. 23(b). To qualify for the third category, Rule 23(b)(3), the district court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.' *Tyson Foods*, 577 U.S. at 453 (cleaned up). The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a): the plaintiffs must prove that there are "questions of law or fact common to class members" that can be determined in one stroke, see *Wal-Mart*, 564 U.S. at 349, in order to prove that such common questions predominate over individualized ones, see *Tyson Foods*, 577 U.S. at 453-54. Therefore, courts must consider cases examining both subsections in performing a Rule 23(b)(3) analysis.

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663-664 (9th Cir. 2022)

## A.     The Classes Satisfy Federal Rule of Civil Procedure 23(a)

Under FRCP 23(a), a plaintiff must show: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P.  23(a). Once these four prerequisites are satisfied, a court must consider whether the proposed class can be maintained under the standards of Rule 23(b).  *See, e.g., Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

### 1.     Numerosity

FRCP 23(a)(1) requires that, to be certified, a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). No specific number of members is needed to warrant a class action. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648,

Motion for Class Certification and
Memorandum in Support

Page 14

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

653 (4th Cir. 1967); *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010)).

Here, Amazon's records show that since January 1, 2015 through July 24, 2023 there were at least 14,842 Amazon Employees who took MLOA totaling 121,843 leave periods. Stonebarger Decl., ¶¶ 2-4. Of the 14,842 military servicemembers, 10,756 no longer work for Amazon. *Id.*

### 2. The Classes are Ascertainable and Properly Defined

Although not explicitly referenced in Rule 23(a), some courts have held that there is an additional prerequisite to certification – that the class be ascertainable. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012). A class definition satisfies Rule 23's implied ascertainability requirement if the class is defined by reference to objective factors and it is administratively feasible to determine whether a particular individual belongs to the class. *Id.* Here, the Amazon has admitted that the members of the Class and Subclasses can be identified from records maintained by Defendant. Plaintiff seeks class certification of the following classes:

**Military Employee Class:** All current and former employees of Amazon who were or are currently serving in the United States Armed Services or National Guard.

**Hourly Military Employee Subclass:** All current and former hourly employees of Amazon who were or are currently serving in the United States Armed Services or National Guard.

**Salaried Military Employee Subclass:** All current and former salaried employees of Amazon who were or are currently serving in the United States Armed Services or National Guard.

The members of each Subclass are also included in larger Class. The Class and Subclasses satisfy the Ninth Circuit's ascertainability requirement as they are: (a) clearly defined and not vague; and (b) defined by objective criteria.

### 3. There are Numerous Questions of Law and Fact Common to the Classes

FRCP 23(a)(2) requires that the case involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, "all questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."

---

Motion for Class Certification and
Memorandum in Support

Page 15

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

1    *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

2         Commonality is satisfied when the claims of the Class "depend upon a common contention

3    ... [that] must be of such a nature that it is capable of class-wide resolution – which means that

4    determination of its truth or falsity will resolve an issue that is central to the validity of each one

5    of the claims in one stroke." *Wal-Mart,* 564 U.S. 338, 349-50 (2011). Although, for purposes of

6    Rule 23(a)(2), even a single common question will do. *Id.* "Whether a question will drive the

7    resolution of the litigation necessarily depends on the nature of the underlying legal claims that

8    the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014);

9    *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011). "In order for the

10    plaintiffs to carry their burden of proving that a common question predominates, they must show

11    that the common question relates to a central issue in the plaintiffs' claim." *Olean Wholesale*

12    *Grocery Coop., Inc.*, 31 F.4th at 665 (citing *Wal-Mart*, 564 U.S. at 349-50).

13         The claims at issue here involve Amazon's violations of Sections 4311, 4313 and 4316 of

14    USERRA through its common policies and practices relating to MLOA, UPT and OV. If these

15    policies and practice are found to be unlawful, the findings would affect all Class and respective

16    Subclass Members in the same way. "In determining whether the 'common question' prerequisite

17    is met, a district court is limited to resolving whether the evidence establishes that a common

18    question is capable of class-wide resolution, not whether the evidence in fact establishes that

19    plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 667. "While such

20    an analysis may 'entail some overlap with the merits of the plaintiff's underlying claim,' *Wal-Mart*,

21    564 U.S. at 351, the '[m]erits questions may be considered [only] to the extent [] that they are

22    relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'"

23    *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 667 (quoting *Amgen Inc. v. Conn. Ret. Plans &*

24    *Tr. Funds,* 568 U.S. 455, 466 (2013)). "Rule 23 grants courts no license to engage in free-ranging

25    merits inquiries at the certification stage." *Id.*

26

27

Motion for Class Certification and          Page 16        PILOT LAW, P.C.
Memorandum in Support                                     4632 Mt. Gaywas Drive
                                                    San Diego, CA 92117
                                                    Tel: 619-255-2398

**4.    Plaintiffs' Claims are Typical of the Claims of the Class and Respective Subclasses**

Federal Rule of Civil Procedure 23(a)(3) mandates that the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P.  23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F.2d at 508. "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir. 2014).

In the Ninth Circuit, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Hanlon*, 150 F.3d at 1020; *Staton*, 327 F.3d at 957. Typicality is satisfied so long as the named plaintiffs' claims stem from the same event, practice, or course of conduct that forms the base of the class claims and [is] based upon the same legal remedial theory. *See, Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

Courts in the Ninth Circuit "do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *Hanon*, 976 F.2d at 508 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 661-62 (E.D. Cal. 2008); *Kincaid v. City of Fresno*, 244 F.R.D. 597, 603 (E.D. Cal. 2007) (typicality satisfied where plaintiffs "challenge a uniform policy" toward the Class).

Mahone's claims are typical of every member of the Hourly Military Employee Subclass,

Motion for Class Certification and Memorandum in Support

Page 17

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

because she was an hourly employee and was subjected to the same MLOA, UPT and OV policies and practices as ever other member of the Subclass. Lawler Decl., Ex 11, Dwyer Decl., 26:23-33:20; Ex. 9, Hughes Depo., p. 73:10-14. Toles's claims are typical of every member of the Salaried Military Employee Subclass, because he was a salaried employee and was subjected to the same MLOA and OV policies and practices as ever other member of the Subclass. Amazon would have this Court limit Tole's typicality to other employes in the Pathways program, by the reality is that out of more than 900 Pathways participants only 5 or 6 of those persons have ever taken MLOA since 2021. Lawler Dec., Ex. 11, Dwyer Depo., p. 14:21-25, p. 17:1-20. Tole was subjected to the same MLOA policies and practices as every other Salaried Military Employee.

### 5. Plaintiff will Fairly and Adequately Protect the Interests of the Classes

The requirement of adequacy contained in FRCP 23(a)(4) ensures that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement involves the satisfaction of two factors: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both elements of Rule 23(a)(4) are satisfied here. Regarding the first element, it is well settled that "only a conflict that goes to the very subject matter of the litigation will defeat the party's claim of representative status." *O'Connor v. Boeing North American, Inc*., 184 F.R.D. 311, 335 (C.D. Cal. 1998). There is no evidence that Plaintiff has any interest which is antagonistic to the interests of the Class. The interests of Plaintiff and the Classes are fully aligned in determining whether Amazon's MLOA, UPT and OV policies and practices violate USERRA. There is no potential for conflict, as Plaintiffs will only succeed if the Classes also succeed. Plaintiffs are well-informed about the litigation, have and will continue to act in the best interests of the Classes, and will participate in the litigation as needed. Tole Decl., ¶¶2-5, 13-14; Mahone Decl., ¶¶2-5. *See, In re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) (finding Rule 23(a)(4)'s adequacy requirement satisfied where plaintiff possesses a "rudimentary understanding" of the action and a

Motion for Class Certification and Memorandum in Support

Page 18

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

"willingness to assist" counsel in the prosecution of the litigation).

In addition, Plaintiff has retained counsel with significant experience in prosecuting consumer class actions, including USERRA claims. GJS Decl., ¶¶10-16, Lawler Decl., ¶¶2-4.

**B.      The Classes Satisfy Rule 23(B)(3)**

If the Rule 23(a) prerequisites are satisfied, a court next considers whether the proposed class can be maintained under at least one (1) of the subparts of Rule 23(b). *See, e.g., Valentino*, 97 F.3d at 1234. Here, Plaintiff seeks certification under Rule 23(b)(3) which has two requirements: (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.      Common Issues Predominate Over Questions Affecting Individual Class Members**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Under FRCP 23(b)(3), the "focus is on the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation omitted). "[T]he common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets and alteration omitted).

"When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Olean Wholesale Grocery Coop., Inc*., 31 F.4th at 667 (quoting *Tyson Foods*, 577 U.S. at 453). "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Id.*

Motion for Class Certification and
Memorandum in Support

Page 19

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

Plaintiffs seeking class certification do "not need to present a fully formed damages model 'when discovery was not yet complete and pertinent records may have been still within Defendant's control.'" *Owino v. Corecivic, Inc.*, 60 F.4th 437, 447 (9th Cir. 2022) (citation omitted). "Rather, 'plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Id.* "In other words, 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Id.* (quoting *Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1154 (9th Cir. 2016)).

### a.    Common Issues Predominate as to Amazon's Policies and Practices Affecting its Military Employees

This case is distinguishable from the employment practices at issue in *Wal-Mart*, in that pay and promotion decisions at Wal-Mart "were generally committed to local managers' broad discretion, which is exercised 'in a largely subjective manner.'" *Wal-Mart,* 564 U.S. at 343. "As for salaried employees [at Wal-Mart], such as store managers and their deputies, higher corporate authorities have discretion to set their pay within preestablished ranges." *Id.* "Promotions work in a similar fashion." *Id.* "Wal-Mart permits store managers to apply their own subjective criteria when selecting candidates as 'support managers,' which is the first step on the path to management." *Id.*

In this case, pay and promotion decisions at Amazon are based upon Company-wide policies and practices tied to OV ratings of the Employees. OV (i.e., performance code/rating/ranking LE, HV1, HV2, HV3, TT, etc.) assigned to an Amazon employee is a factor utilized by Amazon in determining employee compensation. Stonebarger Decl., Ex. 5, [RFA 34], 5:19-6:9.

Like a in Title VII case, a protective statute may "be violated in many ways - by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company." *Wal-Mart*, 564 U.S. at 350. "Significant proof that an employer operated under a general policy of discrimination

Motion for Class Certification and
Memorandum in Support
                                        Page 20        PILOT LAW, P.C.
                                                        4632 Mt. Gaywas Drive
                                                        San Diego, CA 92117
                                                        Tel: 619-255-2398

1   conceivably could justify a class of both applicants and employees if the discrimination manifested
2   itself in hiring and promotion practices in the same general fashion, such as through entirely
3   subjective decisionmaking processes." *Id.* at 353. The Supreme Court in *Wal-Mart* "recognized
4   that, 'in appropriate cases,' giving discretion to lower-level supervisors can be the basis of Title
5   VII liability under a disparate-impact theory- since 'an employer's undisciplined system of
6   subjective decisionmaking [can have] precisely the same effects as a system pervaded by
7   impermissible intentional discrimination.'" *Wal-Mart*, 564 U.S. at 355. Amazon's OV ranking
8   system pervaded the rights of Amazon's Military Employees by affecting their pay and promotion
9   opportunities through artificially low OV ratings directly relating to their absence due to military
10  service obligations.

11                **b.      Individual Damages Calculations Do Not Defeat Predominance**
12          At class certification, Plaintiff must "establish[] that damages are capable of measurement
13  on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Plaintiffs' method
14  for calculating damages on a classwide basis must be consistent with their theory of liability by
15  "measur[ing] only those damages attributable to that theory." *Id.*; *see also, id.* at 435 ("The first
16  step in a damages study is the translation of the legal theory of the harmful event into an analysis
17  of the economic impact of that event."). Nevertheless, "[c]alculations need not be exact." *Id.*
18  However, in the Ninth Circuit, the fact that individualized damage calculations may be necessary
19  cannot, alone, defeat class certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir.
20  2013).

21          To prevent the Company from profiting from its unlawful and discriminatory conduct,
22  USERRA entitles Plaintiff and the Classes to compensation for lost benefits, liquidated damages,
23  and injunctive relief because of the employer's failure to comply with USERRA. *See,* 38 U.S.C.
24  §4323(d).  Here the damage calculations for the Military Employees suffering Amazon's unlawful
25  policies and practices affecting their job level and/or OV ratings can be calculated utilizing
26  Amazon's internal methodology/formula calculations for determining compensation based on
27  those respective job levels and/or OV ratings. Proper back pay can easily be calculated for Military

Memorandum in Support

                                    Page 21            PILOT LAW, P.C.
                                                       4632 Mt. Gaywas Drive
                                                       San Diego, CA 92117
                                                       Tel: 619-255-2398

Employees who were terminated as a result of Amazon's unlawful policies and practices. Damages can be calculated on a class-wide basis, based on the periods of military leave taken by Class Members as identified from the records retained by the Company. Stonebarger Decl., Ex. 1 and ¶¶2-4. And whether Amazon's policies and practices were willful violations of USERRA would result in the same formula for liquidated damages. *See,* 38 U.S.C. §4323(d).

### 2.     A Class Action is the Superior Method of Adjudication

Class actions have been found superior where individual claims are relatively small, there is a large volume of individual claims, individuals lack a compelling interest in controlling their own litigation, and there would be a great strain on judicial resources if individual claims were filed. *See, Lerwill v. Inflight Motion Pictures Inc*., 582 F.2d 507, 512-13 (9th Cir. 1978).

Rule 23(b)(3) enumerates the following factors for the court to consider in its superiority analysis: (A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; and  (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

In the Ninth Circuit, the ultimate test for superiority of the class action mechanism merely requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (*citing* 7A Wright & Miller, *Federal Practice and Procedure*, § 1779 (2d ed. 1986); *see also, Lymburner*, 263 F.R.D. at 543; *Greenwood*, 2010 U.S. Dist. LEXIS 3839.

### a.     Class Members Have No Interest in Pursuing Individual Actions and No Other Actions are Pending

The first factor to be considered is the interest of each class member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Here, as in *Hanlon*, the alternative mechanism would be individual claims for relatively small amounts in relation to the burdens of litigation. This would not only burden the court system that would be

deciding the same legal issues in a number of small cases but would also not make economic sense for litigants or lawyers. It is clear that if individual cases were brought regarding the claims alleged in this action "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023; *see also, Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

The second factor to be considered, "the extent and nature of any litigation concerning the controversy already commenced," Fed. R. Civ. P. 23(b)(3)(B), by members of the Class, also supports proceeding with certification in this action. As of the date of this filing, Plaintiff's counsel is not aware of any similar actions pending on the claims alleged in this action. *See,* Stonebarger Decl. at ¶17.  Thus, the second element is satisfied.

### b.   This Court is the Appropriate Forum for this Litigation and There Are No Manageability Issues

The Western District of Washington is the appropriate forum for this litigation. The Company's principal place of business is within this forum, and USERRA provides for any actions against private employers to enforce its protections be filed in Federal Court. 38 U.S.C. §4323(c)(2).

The above factors all indicate that class adjudication would be superior in this case. Absent class adjudication, judicial resources would be strained by scores of individual claims all addressing the identical issues. Additionally, given the risks and costs of litigation, it is unlikely that the potential class members would be willing to litigate on their own. Finally, there is no indication that individuals have a compelling interest in controlling their own litigation. Plaintiff's counsel is unaware of any individual litigation brought by any Class member seeking damages relating to the claims in this action. *See,* Stonebarger Decl. at ¶17. Thus, a class action is the only realistic chance for members of the Class to have their claims efficiently addressed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court: (a) grant Plaintiffs' Motion for Class Certification; (b) certify the nationwide Class and Subclasses as defined herein; (c) appoint Stonebarger Law, APC and Pilot Law, P.C. as Class Counsel; and (d) grant such other and further relief as the Court deems proper.

Motion for Class Certification and
Memorandum in Support

Page 23

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

1

2          DATED October 13, 2023

3          *s/ Gene J. Stonebarger*
           Gene J. Stonebarger (*admitted hac vice*)
           STONEBARGER LAW, APC
4          101 Parkshore Dr., Suite 100
           Folsom, CA 95630
5          Tel: 916-235-7140
           Email: gstonebarger@stonebargerlaw.com
6
           WSBA 35815
7          Daniel Kalish, Esq.
           HKM Employment Attorneys LLP
8          600 Stewart Street, Suite 901
           Seattle, WA 98101
9          Telephone: 206-838-2504
           Email: dkalish@hkm.com
10
11         Brian J. Lawler (admitted pro hac vice)
           PILOT LAW, P.C.
12         4632 Mt. Gaywas Dr.
           San Diego, CA 92117
13         Tel: 619-255-2398
           Email: blawler@pilotlawcorp.com
14
15         Kevin L. Wilson (admitted pro hac vice)
           KEVIN WILSON LAW PLLC
16         3110 Horton Avenue
           Louisville, KY 40220
17         Telephone: 502-276-5050
           Email: kevin@kwilsonlaw.com
18
19         *Counsel for Plaintiffs*
           *and the Proposed Putative Classes*
20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

I certify that on October 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to all registered users of the CM/ECF system.

Dated: October 13, 2023

*s/ Gene J. Stonebarger*
Gene J. Stonebarger

Motion for Class Certification and
Memorandum in Support

Page 25

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398