The Honorable Marsha J. Pechman

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

## AT SEATTLE

YASMINE MAHONE, an individual, and
BRANDON TOLE, an individual, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

    vs.

AMAZON.COM, INC., a Delaware
corporation, AMAZON.COM SERVICES
LLC; a Delaware Limited Liability Company;
and AMAZON.COM.DEDC, LLC; a
Delaware Limited Liability Company; and
AMAZON.COM.KYDC, LLC, a Delaware
Limited Liability Company

        Defendants.

**CASE NO. 2:22-CV-00594-MJP**

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
TUESDAY, SEPTEMBER 3, 2024

**ORAL ARGUMENT REQUESTED**

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 0

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

## I. INTRODUCTION

Amazon has filed a single Motion for Summary Judgment against both named Plaintiffs, Yasmine Mahone and Brandon Tole ("Plaintiffs"). Dkt. 121. Plaintiffs jointly submit this Opposition setting forth the triable issues of material fact relating to each of their individual claims. Although Amazon boasts of its accolades supporting employees who serve in our armed forces, the adverse employment actions Amazon took against Plaintiffs clearly show the opposite is true.

The Court previously Denied Amazon's Motion to Dismiss Plaintiffs' Second Amended Complaint on April 10, 2023 ("The April 10 Order") holding: "Having amended her claims, Mahone has now adequately alleged that Amazon willfully violated USERRA when it terminated her and failed to reemploy her. She has additionally alleged sufficient facts to state a claim for failure to reemploy under USERRA. And Tole has adequately alleged a claim for that he was not reemployed with the requisite seniority as required under USERRA." Dkt. 57, p. 17. The Court Denied Plaintiffs' Motion for Class Certification on July 29, 2024, holding: "While Mahone and Tole may possess individual claims under USERRA, they have not convinced the Court that this matter should proceed on a class basis." Dkt. 120, p. 26:13-14.

Both Mahone and Tole have valid claims under USERRA that must be allowed to proceed to trial. Genuine issues of material fact exist and there is sufficient evidence for a reasonable factfinder to find in each Plaintiff's favor. Both Plaintiffs were discriminated against by Amazon based on their military leave obligations. Mahone was willfully terminated for missing work to perform military duty while on an intermittent military leave of absence. Even after Amazon had actual knowledge that her termination was based on absence due to military leave, Amazon knowingly and willfully refused to re-employ her. Tole had his Overall Value ("OV") performance rating lowered by Amazon after notifying the company of his upcoming long-term leave of absence, was denied his right to have his prior pre-leave work accomplishments (performed prior to the 12 months wherein he had MLOA obligations preceding OV review) taken into account in his performance evaluations and was subsequently denied promotion based on his status as a military servicemember.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 0

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

## II.  LEGAL STANDARDS UNDER USERRA FOR
## PROTECTIONS OF MILITARY SERVICEMEMBERS

The Ninth Circuit recently articulated the importance of USERRA in a case against Alaska

Airlines entitled *Clarkson v. Alaska Airlines, Inc*.:

> For over sixty years, our nation has encouraged military service by continually easing the burden on servicemembers who must juggle military duties with civilian jobs. In the Selective Training and Service Act of 1940, Congress ensured for the first time—but not the last—that veterans returning to civilian jobs would not face discrimination on account of their service. Over the succeeding decades, re-employment rights were extended to military reservists and National Guardsmen. These protections remain all the more important today, as our nation relies on an all-volunteer military force. Indeed, just as the draft came to an end, Congress expanded servicemembers' protections in the Veterans' Reemployment Rights Act of 1974. Congress continued its tradition of recognizing the sacrifice and dedication of servicemembers in 1994 by enacting the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

*Clarkson v. Alaska Airlines, Inc*., 59 F.4th 424, 428 (9th Cir. 2023)

"Military reservists play a vital role in our nation's defense policy." *Myrick v. City of Hoover*, 69 F.4th 1309, 1312 (11th Cir.,2023). "When called to service, these men and women are expected to leave their civilian jobs, sometimes for years on end." *Id.* To alleviate this burden, Congress enacted USERRA. *Id.,* citing 38 U.S.C. §4301(a). "In short, USERRA recognizes that those who serve in the military should be supported, rather than penalized, for their service." *Clarkson,* 59 F.4th at 429.

 "The Supreme Court has long admonished courts to construe statutes protecting veterans liberally for the benefit of the veteran." *Id*. at 424 (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). ("[A]ny interpretive doubt is construed in favor of the service member, under the pro-veteran canon."); *see also, Boone v. Lightner*, 319 U.S. 561, 575 (1943) ("USERRA is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.")

"Congress intended USERRA and its predecessor statutes to protect reservists during their 'frequent absences from work' with the full understanding that those frequent absences 'could cause considerable inconvenience to an employer.'" *Clarkson,* 59 F.4th at 436 (citing *Monroe v.*

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 1

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

*Standard Oil* Co., 452 U.S. 549. 555 (1981)). "Nevertheless, 'Congress has provided . . . that employers may not rid themselves of such inconveniences and productivity losses by discharging or otherwise disadvantaging employee-reservists solely because of their military obligations.'" *Id.*

This case is about the obligations and entitlements in Sections 4311, 4313 and 4316 of USERRA (further codified by 20 C.F.R. § 1002.191) which protect against discrimination based on military service obligations, and provides that an employee is entitled to be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service.

The Department of Labor clarified that 20 C.F.R. § 1002.191 (Titled: "What position is the employee entitled to upon reemployment?") and 1002.192 (Titled "How is the specific reemployment position determined?") apply to both "discretionary and non-discretionary" promotions. *See Rivera-Melendez v. Pfizer Pharms., LLC*, 730 F.3d 49, 55 (1st Cir. 2013) (citing *Uniformed Services Employment and Reemployment Rights Act of 1994; Final Rules*, 70 Fed. Reg. 75246-01, 75271 (December 19, 2005)). Accordingly, the type of position is irrelevant to the reemployment analysis. "In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the position that that the employee would have attained if his continuous employment had not been interrupted due to uniformed service." 20 C.F.R. § 1002.192. *See also*, 20 C.F.R. §1002.213. An employee "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4302(b); *see also,* 20 C.F.R. §1002.193 ("The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service.").

USERRA expressly supersedes any agreement and/or employer policy. 38 U.S.C. §4302(b); 20 C.F.R. §1002.7(b). An employee need not request time off or permission to perform

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 2

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

1  military service obligations. The employee must give notice to the employer, such notice may be
2  verbal or written, and need not follow any particular format. 20 C.F.R. §§ 1002.87; 1002.85(b).

3       The "discrimination provision," Section 4311(a) of USERRA, provides that a person "who
4  is a member of… performs, has performed…or has an obligation to perform service in a uniformed
5  service shall not be denied… reemployment, retention in employment…or any benefit of
6  employment by an employer on the basis of that membership… performance of service, or
7  obligation." Section 4311(c) further provides that "[an] employer shall be considered to have
8  engaged in actions prohibited… if the person's membership… or obligation for service in the
9  uniformed services is a motivating factor in the employer's action." Discriminatory motive in a
10  USERRA 4311 case is often difficult to determine, as it is almost never open and obvious, but may
11  be inferred from a variety of circumstances, such as a close temporal proximity between her
12  protected activity and the adverse employment action. *Coffman v. Chugach Support Servs., Inc*.,
13  411 F. 3d 1231, 1234 (11th Cir. 2005); *see also*, *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013
14  (Fed Cir. 2001).

15       Although USERRA does not specifically define the term "motivating factor," it has been
16  held that the term as used in section 4311 "means that if the employer was asked at the moment of
17  the decision what its reasons were and if it gave a truthful response, one of those reasons would be
18  the employee's military position or related obligations." *Robinson v Morris Moore Chevrolet-
19  Buick, Inc.*, 974 F.Supp. 571, 576 (E.D. Tex. 1997) "In other words, [the plaintiff]'s military
20  position and related obligations were a motivating factor in [the employer]'s decision if it relied
21  upon, took into account, considered, or conditioned its decision on [the employee]'s military-
22  related absence." *Id.; McMillan v. Department of Justice*, 812 F.3d 1364, 1372 (Fed. Cir. 2016).

23       There is no requirement that a discriminatory or retaliatory reason be the exclusive reason
24  for an adverse action taken against an employee for the action to be unlawful. USERRA's
25  legislative history makes clear that Congress rejected a "sole factor" test. H.R. Rep. No. 103-65,
26  pt. 1, at 24 (1993) ("To the extent that courts have relied on dicta … that a violation of this section
27  can only occur if the military obligation is the sole factor, those decisions have misinterpreted the

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 3

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

original legislative intent and history of [USERRA] and are rejected on that basis."), as reprinted in 1994 U.S.C.C.A.N. 2449, 2457. Federal appellate courts are unanimous that the sole-factor test does not apply to USERRA claims. *See Sheehan*, 240 F.3d at 1014.

A court can infer a discriminatory motivation from a variety of considerations, such as: (1) the temporal proximity between the employee's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and other actions of the employer; (3) an employer's expressed hostility toward members protected by the statute combined with its knowledge of the employee's military activity; and/or (4) disparate treatment of similarly situated employees. *Annarumma v. City of High Springs Fla.*, 846 Fed. Appx. 776, 782 (11th Cir. 2021); *Coffman* ,411 F.3d at 1238. "[I]n USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the agency action, upon which the [Defendant] must prove, by a preponderance of evidence, that the action would have been taken despite the protected status." *Coffman*, 411 F.3d at 239, quoting *Sheehan*, 240 F.3d at 1014. Here, there are no undisputed legitimate stand-alone reasons that the adverse employment actions taken against Mahone and Tole, respectively, would have been taken despite their protected status as military servicemembers.

### III.  FACTUAL BACKGROUND

**A.    Amazon's Policies and Practices**

    **1.    Military Leave of Absence (MLOA) Polices Applicable to Both Plaintiffs**

In 2020, Amazon began administering its MLOA in-house. Declaration of Brian J. Lawler ("Lawler Decl."), Ex 1 [AMAZON-OLSON02787]; Ex. 2; Hughes Depo., p. 41:24-42:17. Prior to December 2021 there was no person at Amazon in a position to manage the MLOA policy, "it was a new job." Lawler Decl., Ex. 2; Hughes Depo., p. 24:2-16. At all times after termination of third party leave administration agreements in 2021, Department of Leave Services ("DLS") case managers (who administered all types of leaves) were assigned in ways unknown by Amazon and responsible for managing the rights of the Military Employees while on MLOA. Lawler Decl., Ex.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 4

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

2; Hughes Depo., pp. 32:5-34:17. Amazon did not put any person in a position specific to training any employees on MLOA until mid-2021 when it put Brian Poole in a position to train case managers. Lawler Decl., Ex. 3; Poole Depo., pp. 16:5-14. On August 18, 2022, more than three months after the filing of this lawsuit, Amazon for the first time created a "USERRA Military Case Management SOP." Lawler Decl., Ex. 4.

### 2.    Unpaid Time Off (UPT) Policy Applicable to Mahone

While it is true that Amazon's MLOA policies state that there is no written documentation required and that unpaid time off will not be deducted, Amazon's UPT SOPs each contain a section titled "Intermittent Military LOA" wherein Amazon states its policy and practice to require employees with a military service obligation to submit prior documentation to have the MLOA coded. Lawler Decl., Ex. 9 at AMAZON_03634; Ex. 10 at AMZ-SUPP-00004 ("Associates with an open Intermittent Military LOA often are attending military drills or boot camp. The associate has to submit a drill letter/military order to their DLS Case Manager to have the time coded.").

It was in fact the miscoding based on inadequate prior documentation that caused Mahone's UPT to be exhausted which caused her to be terminated. Although she had provided prior notice of her MLOA, Amazon did not recognize the notice as meeting its requirements, which resulted in the miscoding. Declaration of Yasmine Mahone in Support of Plaintiff's Opposition to Amazon's Motion for Summary Judgement ("Mahone Decl.") at ¶¶ 12-19.  After Amazon's review of the miscoding, Amazon determined that "since documentation was not provided timely, the leave time was not coded causing the negative UPT hours" and thus Amazon's DLS team would "not proceed with the reinstatement request." *Id*. Had the prior documentation requirement not been improperly included in Amazon's UPT SOPs relating to Intermittent MLOA, Mahone's UPT time would not have been miscoded.

Moreover, the "USERRA Military Case Management SOP" on which Amazon relies to claim it had adequate UPT protections in place for MLOA, was not created until August 18, 2022, after this lawsuit was initiated. Lawler Decl., Ex. 4.

In Amazon's assertion that it has protective MLOA policies and practices in place to

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 5

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

1  protect the rights of military servicemember employees, it refers to policies that currently exist but
2  which did not during the periods at issue in this case. In fact, based upon the references to the year
3  2023 in Dkt. #92-2, pp. 6 & 12, it can be inferred that these policies and practices were not
4  implemented until 2023, long after this case was initiated and likely as a result of it. Dkt. #92-2
5  (Amazon's Leave of Absence FAQs at AMAZON_03894). There is no foundation or reference to
6  when this document came into existence and began to be utilized by Amazon, and just because
7  Amazon changed its policies to add additional protective measures regarding UPT relating to
8  MLOA after the filing of this case, does not absolve Amazon of liability for its prior acts.

9      However, Amazon's UPT policy remained consistent from 2019 through 2022. Lawler
10  Decl., Ex. 5 [RFP 14] p. 14:8-21, Ex. 6, Ex. 7; Morell Depo, p. 43:2-25. "UPT is calculated based
11  on how much time an employee misses outside of their shift." Lawler Decl., Ex. 7; Morell Depo,
12  p. 21:2-19. There is only "one" type of UPT. Morell Depo. at p. 20:15-20. UPT only applies to
13  hourly employees. *Id.* at p.22:4-6. There is no dispute that Mahone's unpaid time off was
14  calculated consistent with Amazon's UPT Policy. *Id.* When Amazon was asked to describe with
15  particularity how and based on what criteria UPT is calculated and inputted into YOUR
16  employees' files or databases, "Amazon refers Plaintiffs to its Policy for Attendance Unpaid Time
17  (UPT) - US (BATES AMAZON-OLSON02794–2796), which explains, at a high level, the process
18  for accruing and using UPT." Lawler Decl., Ex. 8 [Rogs 6 and 7] p. 8:20-10:11. There is no cross-
19  referencing in Amazon's systems to determine whether an employee missing time is on MLOA.
20  Lawler Decl., Ex. 7; Morell Depo, p. 23:15-20. Amazon's person most knowledgeable on UPT
21  has never received any training from anyone at Amazon relating to its MLOA policy or USERRA.
22  Lawler Decl., Ex. 7; Morell Depo, p. 18:9-11.

23      The SOPs consistently list UPT as a Termination Type that is used "when an employee has
24  negative unpaid time balance" and the termination date is to be one day after the triggering event.
25  *Id*.; Lawler Decl., Ex. 9 (AMAZON_03643 and AMZ-SUPP-00017), Ex. 7; Morrell Depo, pp.
26  22:19-23:8; p. 29:11-23.

27      Amazon's UPT SOPs each contain a section titled "Intermittent Military LOA" wherein

---

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 6

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

Amazon states its policy and practice is to require employees with a military service obligation to submit prior documentation to have the MLOA coded. Lawler Decl., Ex. 10 at AMAZON_03634 and Ex. 7 at AMZ-SUPP-00004. Specifically, Amazon states in its UPT SOPs in effect since 2017 as follows: "Associates with an open Intermittent Military LOA often are attending military drills or boot camp. The associate has to submit a drill letter/military order to their DLS Case Manager to have the time coded." *Id*.; Lawler Decl., Ex. 7; Morell Depo., p. 33:6-20. Although inconsistent with Amazon's Other Military Leave Policies, Mahone was terminated pursuant to Amazon's UPT Policy set forth above. *Id.* Her termination while on MLOA due to a negative UPT balance would have been avoided if the DLS Case Manager had properly coded her absence as being exempt from UPT deduction prior to Mahone taking her MLOA.

### 3. Overall Value (OV) Rating Policy Applicable to Tole

Pay and promotion decisions at Amazon are based upon Company-wide policies and practices tied to Overall Value (OV) ratings of the Employees. Amazon's employee performance evaluation system generally includes five separate tiers: "Least Effective" ("LE"), the poorest rating an employee can receive; "Highly Valued" ("HV"), which is further broken into three separate sub-categories ranging from HV1, HV2, and HV3, wherein HV1 is the lowest and HV3 is the highest; and "Top Tier" ("TT"), which is the highest rating an Amazon employee can receive. Declaration of Brandon Tole in Support of Plaintiff's Opposition to Amazon's Motion for Summary Judgement ("Tole Decl.") at ¶16; Lawler Decl., Ex 11, Dwyer Decl.; Ex. 2, Hughes Depo., p. 73:10-14.

In its OV Rating policies and practices, Amazon utilizes formulaic "calibration" with "equitable distribution of talent [OV] ratings" including "guidelines for percentages of overall values in each of the categories for each level of organization." Dkt. #97-11, pp. 27:16-28:2. "It is a general calibration across an organization." *Id.* at 28:14-20. The OV performance code/rating/ranking assigned to an Amazon employee is a factor utilized by Amazon in determining employee compensation. Lawler Decl., Ex. 12 [RFA 34], p. 6:19-7:9.

Amazon's policy is that an employee should be in an Amazon employment position for

1  two months to be eligible to receive an OV Rating. Lawler Decl., Ex. 2Hughes Depo., p. 130:17-

2  24. Amazon employees are only eligible for promotion and compensation increases if they receive

3  a positive OV Rating. Amazon utilizes fixed target percentages across the company as to the

4  proportion of employees to be included in each OV category, and each site is required to comply

5  with these percentages. Lawler Decl., Ex. 13; Dwyer Depo., pp. 17:19-18:4, pp. 21:4-23:15. The

6  OV performance code/rating/ranking assigned to an employee is an important factor utilized by

7  Amazon in determining employee compensation. Lawler Decl., Ex. 12 [RFA 34], p. 6:19-7:9.

8  These OV ratings directly impact an employee's incentive compensation, eligibility for

9  promotions, and retention in employment. *Id.* These OV rankings may also result in employees

10  being faced with disciplinary action, such as performance improvement plans ("PIP") a/k/a "focus

11  plans," or even termination from employment. *Id.*

12      OV ratings are not disclosed to employees. Lawler Decl., Ex. 13; Dwyer Depo., pp. 32:19-

13  33:20. Across the entire Company, Amazon employees are forced into a curve on the OV rating

14  schedule such that a certain % of them are required to be rated in each respective rating category,

15  including the LE category. Lawler Decl., Ex 13; Dwyer Depo., p. 26:23-33:20; Ex. 2; Hughes

16  Depo., p. 73:10-14. When an employee is placed in the LE rating category, a requirement is

17  triggered for the employee's supervisor to prepare a PIP. OV rating is a factor considered as part

18  of the process. *Id.* ("There are multiple factors that are taken into consideration for promotion, and

19  overall value is a summation of performance, and it is one factor that will be looked into when

20  consideration for readiness for promotion."). Amazon conducts performance evaluations for

21  Military Employees after notice of MLOA, and even during MLOA. Lawler Decl., Ex. 2; Hughes

22  Depo., p. 130:3-24. This allows supervisors to conveniently place the Military Employee before

23  or during his/her leave period, into an inferior OV, including LE, to make room for others in the

24  curve and to avoid the burden of preparing PIPs. Tole Decl., ⁋⁋16, 17.

25      Amazon submits the Estevez Decl. in support of their Motion for Summary Judgment,

26  which simply re-iterates the prior analysis of Amazon's data sets that was performed in

27  conjunction with Amazon's Opposition to Plaintiffs' Motion for Summary Judgment. Dkt. 123.

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 8

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

Although this aggregate data was relevant to the Court's denial of Class Certification, it does not support Amazon's Motion here which applies to the specific adverse employment actions taken against Mahone and Tole based on their military service obligations.

**B.    Amazon's Adverse Employment Actions Against Plaintiff Mahone**

Amazon has admitted that "the basis to terminate Mahone's employment with Amazon on October 20, 2020, was her negative UPT balance." Lawler Decl., Ex. 14 [RFA 6], p. 7:14-22. Mahone's negative UPT balance resulted from her MLOA. *Id.* [RFA 4, 5] at p. 6:20-7:13.

Mahone was employed by Amazon in Bessemer, Alabama from July 16, 2020, until she was terminated on October 18, 2020. Mahone Decl. at ¶5. At all times relevant, Mahone was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16), as a member of the Alabama Army National Guard ("AANG") currently holding the rank of Specialist (paygrade E-3). *Id.*; at ¶¶5, 6; Lawler Decl., Ex. 14 [RFA 1], p. 4:24-2:3.

Mahone performed various periods of military service during her employment with Amazon that required her to take military leave. *Id.* at ¶7. From October 16 through 18, 2020, Mahone was performing military service obligations, also known as a "drill weekend" or "battle assembly." *Id.* at ¶11. Prior to the October drill weekend, Mahone timely notified Amazon of her drill weekend and took military leave without pay ("LWOP") from Thursday, October 15 through Sunday, October 18. Mahone Decl. at ¶12. Amazon approved this request on September 29, 2020. *Id.*; Lawler Decl., Ex. 14 [RFA 3], p. 5:11-18. On Sunday, October 18, 2020, Mahone was performing military service obligations when she received an email from Amazon terminating her employment because her UTO balance was 36 hours, which was a direct result of the three shifts she missed for military service during the military drill weekend. Mahone Decl. at ¶13.

On October 22, 2022, Amazon DLS Case Manager Maggie Otarola emailed Mahone stating "[w]e wanted to reach you and you have recently been terminated from Amazon, and we want to confirm if you believe this had anything to do with un-reported Military leave dates. Please contact our HR Military Team, if you believe you were incorrectly terminated. You will be required to provide military documentation to support any unreported dates." *Id.* at ¶14. Mahone

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    Page 9                    PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

responded on October 26, 2020, that she provided proof that she was performing military service during October 15-18, 2020 prior to her departure to drill; and Mahone again emailed a copy of her fiscal year 2021 drill schedule to Otarola on October 27, 2020 – demonstrating that the time she was absent from Amazon in October was to perform her monthly military drill obligation. *Id.* at ⁋15. Lawler Decl., Ex. 14 [RFA 8], p. 7:7-16. On November 11, 2020, Otarola emailed Mahone and stated "our escalations department evaluated your termination case and informed us that since documentation was not provided timely, the leave time was not coded causing the negative UPT hours. At this moment, the DLS team will not proceed with the reinstatement request." *Id.* at ⁋17.

Otarola, as a member of Amazon's "DLS Military Team," and other employees of Amazon's "escalation department" had actual knowledge of USERRA and Amazon's obligations thereunder. *Id.* at ⁋18; Lawler Decl., Ex. 18, p.64:16-65:3. Despite Amazon having knowledge that Mahone's UPT was to perform military service, they knowingly terminated her and failed to offer her reinstatement. *Id.* at ⁋19; Lawler Decl., Ex. 18, p.27:24 – 28:15. After the November 11, 2020 email from Otarola, Mahone received no communication from Amazon about her termination until she brought this legal action on May 4, 2022. *Id.* at ⁋20.

Amazon contends that when learned of its error in terminating Mahone, it promptly paid her full backpay and offered her unconditional reinstatement. Dkt. 121, p. 2:20-23. However, this was not prompt and was in fact almost two years after they terminated her on September 6, 2022. Dkt. 29, ¶6, 7, Ex. 4; Lawler Decl., Ex. 18, p.120:6-24.

### C.    Amazon's Adverse Employment Actions Against Plaintiff Tole

Tole began his employment with Amazon on June 19, 2017, and he is still employed by Amazon as an Operations Manager. Tole Decl. at ⁋5. Tole has had continued military responsibilities in the United States Marine Corps Reserve ("USMCR") since 2017, and at all times relevant, he was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16), holding the rank of Major. *Id.* at ⁋6; Lawler Decl., Ex. 14 [RFA 12], p. 8:19-24.

Tole began his employment as an Outbound Area Manager with Amazon through its

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

"Military Leaders Program" ("MLP"), which was an executive management program wherein members would gain experience in as an Area Manager (L5), Operations Manager (L6), Senior Operations Manager (L7), and then "graduate" the Program to the position of General Manager (L8). *Id.* at ¶7. The program was expected to be four years long. *Id.* This program has since been renamed "Amazon Pathways" ("Pathways") and is "designed to rapidly develop talented MBA or Masters-level graduates and high-potential transitioning military leaders with the skills they need to be Amazon General Managers and Directors." *Id.*

In December of 2017, Tole was promoted to Operations Manager (L6). *Id.* at ¶8. In Tole's performance review for the first quarter of 2019, his supervisor made several positive statements regarding his accomplishments. *Id.* at ¶10. Tole expected to be eligible for promotion to L7 during the spring of 2019, however, after notifying Amazon of his pending military service obligation, he was pulled from consideration for L7 by his supervisor. *Id.* at ¶11. From the time of his promotion to L6 to the time of his departure for military deployment in May of 2019, Tole had been in the role of Operations Manager (L6) for approximately seventeen months. *Id.* at ¶15.

Tole gave notice on his long-term MLOA in January 2019, was moved to LE in April 2019 immediately preceding his long-term leave. *Id.* at ¶17. A material disputed fact exists as to whether Tole's OV was set at LE due to his imminent MLOA obligation, with Amazon's actual notice of the MLOA; or whether Tole's April 2019 OV rating was due to his 2018 performance as Amazon contends. Dkt. 123, p.8:1-5.

In conjunction with Tole departing on MLOA in May of 2019, he was assigned a "focus plan" by his Senior Operations Manager after being rated "LE." *Id.* at ¶17. Tole was not notified by the supervisor who rated him LE that he received such a rating, nor was he presented with a focus plan. *Id.* During Tole's MLOA, he was assigned to five separate Senior Operational Managers. *Id.* at ¶18.

Tole did not receive any pay raises commensurate with his peers in the MLP, nor did he receive a bonus or increase to his compensation for the time he worked during 2019, despite having positive employee evaluations during his time working with Amazon. *Id.* at ¶19. On May 6, 2020,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 11

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

while still on MLOA, Tole spoke with Amazon's Senior Manager for the World-Wide Pathways program at that time, who advised Tole that "[f]rom a Pathways perspective, you pause where you were in your timeline, for example if you were at 12 months when you left, and you were gone for 12 months, you will come back at 12 months tenure in Pathways." *Id. at* ℙ21.; Lawler Decl., Ex. 15.

Amazon's policy on "Position Reinstatement" for return from MLOA states "reinstatement to prior position, or position that you would have been in had you not taken military leave, is offered." *Id*. at ℙ22. Tole returned to work at Amazon in early November of 2021 and was assigned to the position of Inbound Operations Manager (L6) and rescheduled to a night shift position to work under supervisor who was hired after Tole but promoted above Tole. *Id.* at ℙ24. Tole scheduled a meeting with his supervisors on January 24, 2022 because he believed Amazon was not addressing his rights under USERRA. *Id.* at ℙ25; Lawler Decl., Ex. 16.

During the meeting, Tole specifically asked when he would be eligible for promotion to L7. *Id*. Tole's supervisor told him that none of the projects that he completed prior to his MLOA in 2019 would count towards his eligibility for L7, and that due to the time he was gone on MLOA, Tole progress towards L7 was starting over with a "clean slate." *Id.* This is consistent with Amazon's policies and practices of not giving any credit for work performed prior to the preceding 12 months of a review related to promotion or pay.

Amazon additionally reset Tole's "progress rating" – a mentoring metric utilized by Amazon managers - to zero percent, without explanation. *Id*. During the January 24th meeting, Tole also learned that he received the "LE" rating while he was on MLOA. When Tole asked for the basis for his "LE" rating, his supervisor would not provide that information. *Id.* at ℙ26. Also, during the January 24th meeting, Tole was advised that he was "too new to rate," and that his Operational Leadership Ranking for 2022 would automatically be rated "HV1." *Id* at ℙ27. This ranking limited the bonus and incentive compensation for which Tole was eligible and was a violation of Amazon's corporate policy not to assign generic ratings to employees. *Id.* Tole was told in the January 24th meeting that the next opportunity for him to interview for promotion to L7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 12

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

would occur in June 2022, but then in March 2022, he was told any interview for L7 would be delayed again until August 2022. *Id.* at ¶28.

In early spring of 2022, Tole's direct supervisor advised Tole that he may be subject to removal from the MLP for not meeting the Pathways standard of obtaining L7 within thirty-six months. Tole was also told that he needed to "find more projects" because the former projects Tole completed prior to his MLOA would not count towards his eligibility to L7. *Id.* at ¶30. In August of 2022, Tole was not provided an opportunity to interview for promotion to L7. *Id.* at ¶31.

Currently, Tole is the longest tenured L6 at his working location, having approximately 28 months experience at that pay grade. *Id.* at ¶32. Tole has never been formally disciplined while employed with Amazon. *Id.* at ¶33. All of Tole's non-military employee contemporaries in the MLP and Pathways still employed by Amazon at his location are currently L7s or L8s, while Tole remains an L6. *Id.,* at ¶¶ 11-14, 34; Lawler Decl., Ex. 14, [RFAs 15, 16] pp. 9:12-10:5. Other Amazon employees in the MLP to whom Tole has at least one year seniority over have been promoted to L7 or even L8. Tole Decl. at ¶35.

### IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Id.* at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, 'the moving party is entitled to judgment as a matter of law.'"

---

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 13

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

*Celotex*, 477 U.S. at 323-24." *Baker v. O'Reilly*, 2024 U.S. Dist. LEXIS 59898, *15-16 (W. Dist. Wash., April 1, 2024)

"The Ninth Circuit imposes a high standard for granting summary judgment in employment discrimination cases. The court has stated that 'very little evidence' is required to survive summary judgment because "the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record." *Schnidrig v. Columbia Mach., Inc*., 80 F.3d 1406, 1410 (9th Cir. 1996) (internal quotation marks and citation omitted); *Mayes v. Amazon.com.dedc LLC*, 2019 U.S. Dist. LEXIS 93485, *6 (W. Dist. Wash., June 4, 2019). "At the summary judgment stage, 'the judge's function is not . . . to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial.'" *Clarkson*, 59 F.4th at 434 (quoting *Anderson*, 477 U.S. at 249.)

## V.    ARGUMENT

### A.    Amazon has Discriminated Against Plaintiffs Based on Their Military Service Obligations and Status as Military Servicemembers

"The plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) he is a member of a protected class; (2) he was qualified for his position or performing satisfactory work; (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably, or other circumstances surrounding the adverse action give rise to an inference of discrimination. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the defendant succeeds, then the plaintiff must produce evidence that defendant's articulated reason is mere pretext for unlawful discrimination." *Mayes*, 2019 U.S. Dist. LEXIS 93485, *10-11 (internal citations omitted).

Plaintiffs are both (1) members of the protected class of military servicemembers; (2) were qualified for their respective positions and performed satisfactory work; (3) suffered an adverse employment action, and (4) the adverse employment actions were motivated by their status as military servicemembers with military obligations requiring absence from employment to take MLOA.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 14

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

In the April 10 Order, this Court held: "Having amended her claims, Mahone has now adequately alleged that Amazon willfully violated USERRA when it terminated her and failed to reemploy her. She has additionally alleged sufficient facts to state a claim for failure to reemploy under USERRA. And Tole has adequately alleged a claim for that he was not reemployed with the requisite seniority as required under USERRA. The Court therefore DENIES the Motion to Dismiss." Dkt. 57, p. 17. Having adequately alleged their respective claims at the pleading stage, Plaintiffs now present significant evidence supporting disputed material facts sufficient to allow the case to proceed to a jury trial.

**B. Amazon Violated USERRA for Failing to Re-Employ Mahone Following Her Intermittent Military Leave of Absence**

In October and November 2022, Mahone exchanged multiple emails with Amazon wherein she sought reemployment, provided proof that she was performing military service establishing that she was terminated for taking MLOA, and was still denied reemployment. *Id.* at p.6, ¶¶34-40; Mahone Decl. at ¶¶11-17.

In the April 10th Order, this Court also found as follows regarding Mahone's request of reemployment:

> The Court finds that the SAC contains sufficient allegations that Mahone made a timely request for reemployment that Amazon wrongly rejected. . .
>
> "
>
> Mahone has now alleged that she asked for reemployment just eight days after termination, and the Court finds this request timely. . . .
>
> This is evidenced by the fact that the "HR Military Team" requested that Mahone identify whether she was on military leave (*Id.* ¶ 34), and in response to her application for reemployment, the DLS case manager stated that "the process takes around 2 weeks and, if possible, the restatement is an HR's decision" (*Id.* ¶ 36). The Court finds that Mahone has sufficiently alleged that she timely asked for reemployment within Amazon's own rules governing requests for reinstatement.
>
> In reaching this decision, the Court notes that the DLS case manager at Amazon told Mahone that her "documentation was not provided [in a] timely" fashion. (SAC ¶ 37.) This statement is ambiguous and could refer to either Mahone's notice that she was taking military leave or asking for reemployment. Given the ambiguity, the Court construes it in Mahone's favor and finds it to refer to her leave request, not the request for reemployment.

> The Court rejects Amazon's suggestion that Mahone had to physically report to work in order to be reinstated and that she failed to do so. Amazon's argument turns on the statute's language that the employee has to "notify the employer. . . of the person's intent to return to a position of employment . . . by reporting to the employer" within the time limits. 38 U.S.C. § 4312(e)(1)(A) (emphasis added).

Dkt 57, 10-11.

### C. Mahone is Entitled to Liquidated Damages for Amazon's Willful Violations of USERRA

Amazon's violations of USERRA against Mahone were willful and liquidated damages in an additional amount equal to the present value of her lost wages and other benefits pursuant to Section 4323(d)(1)(C) should be awarded at trial. This is a matter for the trier of fact. Amazon's own conclusory and self-serving statement that it was simply "a mistake" in terminating Mahone does not conform to the evidence. Dkt. 121, p. 124:26. This "mistake" does not account for the context of Mahone's termination, whereby Amazon knew she took UPT leave, and that she was taking it to perform military service the weekend she was terminated. Dkt. 44 at p.7, ⁋39; Mahone Decl. at ⁋16. Amazon's "DLS Military Team," and other employees of Amazon's "escalation department" had actual knowledge of USERRA and Amazon's obligations thereunder to grant Mahone reemployment, yet Amazon refused to do so. *Id.* at p.7, ⁋38; Mahone Decl. at ⁋15. Moreover, the "mistake" sat idle for 97 weeks until it was addressed by Amazon, and only after she filed her lawsuit.

In the April 10th Order, this Court also held as follows:

> Previously, the Court found that Mahone lacked standing because Amazon had paid any and all back and front pay that was due, making her injury non-redressable. (Order on Motion to Dismiss at 9.) The Court explained that Mahone could have standing for a claim for liquidated damages if she had provided sufficient allegations that Amazon's "failure to comply with the provisions of [USERRA] was willful." 38 U.S.C. § 4323(d)(1)(C). If Mahone has alleged a willful violation, then Mahone may be entitled to "liquidated damages." 28 U.S.C. § 4323(d)(1)(C). Regulations define "willful" to mean that "the employer either knew or showed reckless disregard for whether its conduct was prohibited by the Act." 20 C.F.R. § 1002.312. Considering the same term in the context of the Age Discrimination in Employment Act, the Supreme Court has defined "willful" to mean that "'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Hazen Paper Co. v. Biggins*, 507 U.S. 604,

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 16

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

615 (1993) (quoting *Thurston*, 469 U.S. at 128). An intent to violate the statute is not necessary; but it is also not sufficient that the employer simply knew of its potential applicability. *Thurston*, 469 U.S. at 126–28 & n.19. Plaintiff has the burden of proving willfulness, which may be shown by circumstantial evidence. *Paxton*, 712 F. Supp. 2d at 1021.

Mahone has now provided sufficient allegations of a willful violation of USERRA. As alleged, Mahone provided pre-leave notice that she was taking leave for military drills. (SAC ¶ 34.) She newly alleges that she asked for reinstatement and submitted materials showing that she took leave for military drills. (*Id*. ¶¶ 32, 35.) Despite being aware of the reason for the leave and showing concern that it might have been improper under USERRA to terminate her and not reinstate her, Amazon nonetheless refused to reinstate her. (*Id.* ¶¶ 34-37.) These facts support a claim that Amazon knew that it could not terminate Mahone for her military participation. Indeed, Amazon has now conceded that it violated the Act in terminating Mahone. And its failure to reemploy Mahone is similarly alleged to be the result of a willful violation of the Act. The emails Mahone alleges she received confirm that Amazon knew Mahone could be entitled to reemployment under USERRA, but that it decided her leave paperwork was untimely submitted and denied her request. And Amazon has admitted this decision was improper. These allegations suffice to show willfulness. And there is no evidence that Mahone has received double the amount of all wages and benefits due, so Mahone has standing to pursue her claims. The Court DENIES the Motion as to this claim.

Dkt 57, 8-9.

## D. Amazon Violated USERRA by Discriminating Against Tole and Refusing to Promote Him Based Upon His Military Service Obligations

Like a Title VII case, USERRA as a protective statute may "be violated in many ways - by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Amazon discriminated against Tole by utilizing promotion criteria that resulted in disparate impact to Tole due to Amazon's refusal to promote him. "Disparate impact claims assert that the employer has a facially neutral policy or practice that causes a disparate impact on a protected group, even if the employer has no intent to discriminate." *Id.* (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971)). "Disparate impact liability is premised on the idea that 'some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.'" *Id.* (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988)).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 17

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

Tole suffered disparate impact by Amazon's companywide OV Rating policies and practices, which lowered his OV Rating shortly after he provided notice of long term MLOA, and then started him from a clean slate upon his return from MLOA by only considering the prior twelve (12) months (including time in which he was on MLOA) in his annual performance reviews that determine OV Ratings. Lawler Decl., Ex. 17, p.250:9-20

Tole's supervisors directly discriminated against him by causing his career progression with Amazon to be halted after he took MLOA in 2019. Tole had received glowing praise for his accomplishments, contrasting his supposed performance issues Amazon goes to great lengths to depict. Lawler Decl., Ex. 17, p.200:14 - 201:12, p.210:19 – 215:6.  Moreover, Tole has presented sufficient evidence sufficient to establish the hostility to his performance, denial and delay of his promotion, which can all be traced to his military service obligations and his corresponding military leaves of absence while employed at Amazon. Lawler Decl., Ex. 17, p.225:12 – 226:7, p. 227:14-23; 264:11-265:16, p. 295:19-296:16, p. 341:16-24.

As mentioned above, 20 C.F.R. § 1002.191 and 1002.192 apply to both "discretionary and non-discretionary" promotions. *Rivera-Melendez, 730 F.3d at 55.* Accordingly, the *type* of position is irrelevant to the reemployment analysis. The only question is whether Tole would have attained L7 if his employment was not interrupted by his MLOA. "In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the position that that the employee would have attained if his continuous employment had not been interrupted due to uniformed service." 20 C.F.R. § 1002.192. *See also*, 20 C.F.R. § 1002.213.

Courts conducting the reasonable certainty analysis first determine whether as a matter of foresight, an individual who successfully completed training would have obtained a certain position had his employment not been interrupted by military service. *Huhmann v. Fed. Express Corp*., 874 F.3d 1102, 1106 (9th Cir. 2017) (citing *Tilton v. Mo. Pac. R.R. Co*., 376 U.S. 169, 181 (1964). *See also, Mullins v. Goodman Distr., Inc.*, 694 F. Supp.2d 782 (S.D. Ohio 2010) (denying summary judgment where supervisors told plaintiff that he would not have been denied promotion if he had not been gone so long on military duty). Second, the court analyzes whether an employee

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 18

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

1  has, as a matter of hindsight, completed the necessary prerequisites for the position. *Huhmann,*

2  874 F.3d at 1106.

3      Amazon's policy and practice of not considering work performed more than 12 months

4  prior to the OV review resulted in Tole's prior work accomplishments not being considered in his

5  OV reviews. He had his tenure reset upon his return and "was told that everything that I'd done

6  prior to leaving for military deployment no longer counts toward promotion." Lawler Decl., Ex.

7  17, p.11:9-12. "[A]n OV rating typically covers a year, and you review the work during that year."

8  Lawler Decl., Ex. 17, pp. 133:24-134:7.

9      Tole was eligible for promotion to L7 around the time he took MLOA in 2019. Since that

10 time, Tole has identified employees at his location who have been promoted to L7 or L8, three of

11 whom have similar seniority to Tole, while two have less seniority.) Tole Decl., ¶¶ 31-37. As a

12 matter of foresight, Tole can show that had he not taken MLOA, he would have progressed to L7,

13 and even L8 like his peers. *See also* 20 C.F.R. § 1002.213 ("The employee can demonstrate a

14 reasonable certainty that he would have received the seniority right or benefit by showing that

15 other employees [with similar seniority] received the right of benefit.") Similarly, regarding

16 hindsight, Tole's eligibility for promotion to L7 in 2019 indicates he met the prerequisites for the

17 position. Yet, to the extent Amazon argues that he did not, it is solely attributable to its own

18 discriminatory actions against Tole, by "resetting" his achievements towards L7 and continually

19 denying his promotion opportunities upon his return from MLOA. Tole Decl. ¶¶25-31. In any case,

20 these are issues for the finder of fact.

21     There is also an issue of fact regarding whether Amazon employees in the MLP and

22 Pathways program enjoyed a seniority-based benefit relative to their promotions. Amazon's

23 contention that neither program employs a seniority-based structure is problematic because both

24 the MLP and Pathways had generally set lengths – four years for the former, and (upon belief) five

25 years for the latter. SAC ¶ 51. Employees in each program are generally expected to progress

26 through four "ranks" from L5 to L8. *Id.* Accordingly, Amazon's argument that promotions within

27 either program are not automatic nor seniority-based conflicts with the very structure of the

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 19

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

1    programs. Discovery revealed that L5s are typically promoted to L6 after a reasonably predictable

2    length of time, as with L6s and beyond. In fact, Amazon confirmed this when Tole's supervisor

3    advised him that if he failed to obtain L7 within "thirty-six months" he could be removed from the

4    program. Tole Decl. ¶30.

5        In the April 10th Order, this Court also held the following regarding Tole's rights to

6    "reemployment, retention in employment, promotion, or any benefit of employment by an

7    employer on the basis of that membership, application for membership, performance of service,

8    application for service, or obligation." 38 U.S.C. § 4311(a).

9        Amazon argues that Tole fails to state a claim for reemployment because he was
     not entitled to any "automatic" promotion. This argument distorts the law and
10    misreads the SAC. The Court finds the claim sufficiently alleged.

11    Under USERRA, Amazon was forbidden from denying Tole "reemployment,
     retention in employment, promotion, or any benefit of employment by an employer
12    on the basis of that membership, application for membership, performance of
     service, application for service, or obligation." 38 U.S.C. § 4311(a

13

14    The Ninth Circuit has endorsed the use of "two intersecting doctrines—the
     'escalator principle' and the 'reasonable certainty test'—. . . to determine the status
15    or position to which a returning service member is entitled." *Huhmann*, 874 F.3d at
     1105. "The 'escalator principle' provides that a returning service member not be
16    [sic] removed from the progress ('escalator') of his career trajectory, but rather
     return to a 'position of employment in which the person would have been employed
17    if the continuous employment of such person with the employer had not been
     interrupted by such service.'" *Id*. at 1105-06 (quoting 38 U.S.C. § 4313(a)(2)(A)).
18    "The 'reasonable certainty test' aids in determining the returning service member's
     position on the 'escalator,' inquiring into the position a returning service member
19    would have been 'reasonably certain' to have attained absent the military service."
     Id. at 1106 (citing 20 C.F.R. § 1002.191). "In all cases, the starting point for
20    determining the proper reemployment position is the escalator position, which is
     the position that that the employee would have attained if his continuous
21    employment had not been interrupted due to uniformed service." 20 C.F.R. §
     1002.192; see also 20 C.F.R. § 1002.213.
22

23    The "reasonable certainty test" contains "both a forward-looking and a backward-
     looking approach." *Huhmann*, 874 F.3d at 1106. "First, the court determines
24    whether it appears, as a matter of foresight, that individuals like a given claimant
     who successfully completed training would have obtained a certain position had
25    employment not been interrupted by military service." *Id.* Second, the court
     "analyzes whether, as a matter of hindsight, a particular claimant either has, or
26    would have, completed the necessary prerequisites for a position." Id. (citing *Tilton
     v. Mo. Pac. R.R. Co*., 376 U.S. 169, 181 (1964) ("This requirement is met if, as a
27

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 20

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur.")).

Crucial to Tole's claim is Huhmann's conclusion that "[t]he reasonable certainty test applies to discretionary promotions." Id. (citing 70 Fed. Reg. 75,246, 75,271 (Dec. 19, 2005), available at 2005 WL 3451172). This directly rebuts Amazon's contention that the reasonable certainty test only applies to automatic promotions, not discretionary ones. (See Reply at 4-6.) Indeed, Amazon selectively quotes one sentence from *Huhmann* while ignoring the quoted language above. This undermines Amazon's entire argument.

Tole has sufficiently alleged his military service was a substantial or motivating factor in his failure to be returned to the same seniority and promoted to his reasonably certain next level of employment upon his return. Tole alleges that he expected to be promoted in the Spring of 2019 around the time he took military leave. (SAC ¶ 56.) To this end, Tole identifies positive reviews he received in the first quarter 2019 and by way of comparison to peers who started in the Pathways Program at nearly the same time as he did and who were promoted to L7 and beyond while Tole was on military leave. (*Id.* ¶¶ 55, 57-59, 80-81.) This comparison to others who are similarly situated is relevant to showing a seniority right. See 20 C.F.R. § 1002.213. And even though Tole was not promoted before he left for his military service, he was told by a Senior Manager of the Pathways Program that Amazon would restart his service in the program at the same point where he left. (*Id.* ¶ 66.) And yet, Amazon allegedly failed to reinstate Tole with the same seniority, telling him instead that he would restart with a "clean slate," where none of his progress towards advancement pre-leave would be counted towards his L7 promotion. (*Id.* ¶ 70.) These allegations suffice to show that Tole reasonably expected, with foresight, to be promoted upon his return, or shortly thereafter and that, in hindsight, he had the qualifications to be promoted. Moreover,

Tole additionally alleges that his promotion was stymied after he gave notice of his upcoming military service, when his supervisor "pulled [him] from consideration" for a promotion. (*Id.* ¶ 56.) Not only was Tole not returned to the same point on the escalator when he returned, he was placed on a "focus plan" and given a negative performance evaluation for reasons never explained to him. (Id. ¶¶ 62, 70.) And Amazon refused to consider any of his prior work as a grounds to promote him to L7, despite being assured that his time in the Pathway Program would be counted upon his return. (*Id.* ¶ 62, 70.) These facts help support his claim of discrimination in violation of USERRA's guarantee to be placed in the same position of seniority upon the return, at a minimum.

Amazon makes much of the fact that Tole was not entitled to any automatic promotion through the Pathways Program. This is not required under USERRA, as explained above. And, as Tole points out, the Pathways Program had dates through which the participant was expected to progress through the "ranks" of the program. (SAC ¶ 51.) Indeed, Tole was told that he could be removed from the program if he failed to progress to L7 within thirty-six months. (*Id.* ¶ 74.) So while there are discretionary aspects to the advancement, Tole has alleged sufficient facts to

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 21

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

suggest that he would have progressed to L7 or higher had he not taken military leave. It is for the finder of fact to determine whether the facts support this and whether Amazon can support its affirmative defense.

Dkt 57, 13-16.

There is sufficient evidence for a jury to conclude that Tole's military status was a motivating factor in Amazon denying his promotion and other benefits of employment to both the denial of promotion to L7 *and* the "clean slate" reset of his progress towards promotion to L7. Ironically, Amazon's contentions for why it could not have discriminated against Tole demonstrates some of the ways they did. For instance, the allegation describing the MLP itself describes the program supporting "military leaders" who were "transitioning" away from the military to civilian life. Moreover, to the extent Amazon references promoting "other" employees with the "same time of service obligations" is plainly misleading.  The only other employee with a military background identified by Tole was Mr. Waterman, and there is no indication that Mr. Waterman had any military service obligation while employed with Amazon – much less one with a similar length to Mr. Tole's.[1] Lawler Decl., Ex 17, Tole Depo., p. 68:23-69:18, p. 285:11-286:5, p. 323:22- 329:12. At best, Amazon's contentions demonstrate that there are several disputed issues for the trier of fact.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court Deny Defendants' Motion for Summary Judgment in its entirety.

DATED August 26, 2024

*s/ Brian J. Lawler*
Brian J. Lawler (admitted *pro hac vice*)
PILOT LAW, P.C.

---

[1] It is also important to note that Amazon's citations to *general* statutes regarding military service misinform the varied types of service in the reserve components of the Uniformed Services. For example, members of the Individual Ready Reserve perform virtually no military service obligations unless they volunteer for it. In contrast, members of the Ready Reserve and perform a minimum requirement akin to the colloquial "once a month, two weeks a year" or longer in the case of individual augments to active duty. *See*, 10. U.S.C. § 10141 et. seq.; 10. U.S.C. § 12301 et seq.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398

4632 Mt. Gaywas Dr.
San Diego, CA 92117
Tel: 619-255-2398
Email: blawler@pilotlawcorp.com

Gene J. Stonebarger (admitted *pro hac vice*)
STONEBARGER LAW, APC
101 Parkshore Dr., Suite 100
Folsom, CA 95630
Tel: 916-235-7172
Email: gstonebarger@stonebargerlaw.com

WSBA 35815
Daniel Kalish, Esq.
HKM Employment Attorneys LLP
600 Stewart Street, Suite 901
Seattle, WA 98101
Telephone: 206-838-2504
Email: dkalish@hkm.com

Kevin L. Wilson (admitted *pro hac vice*)
KEVIN WILSON LAW PLLC
3110 Horton Avenue
Louisville, KY 40220
Telephone: 502-276-5050
Email: kevin@kwilsonlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on August 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to all registered users of the CM/ECF system.

Dated: August 26, 2024

*s/ Brian J. Lawler*
Brian J. Lawler

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Page 23

PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Tel: 619-255-2398