1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   YASMINE MAHONE and BRANDON
     TOLE,

11                          Plaintiffs,

12          v.

13   AMAZON.COM, INC., et al.,

14                          Defendants.

15

CASE NO. C22-594 MJP

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

16

17       This matter comes before the Court on Defendants' Motion for Summary Judgment.

18   (Dkt. No. 121.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 124), the Reply

19   (Dkt. No. 125), and all supporting materials, and having held oral argument on September 20,

20   2024, the Court GRANTS in part and DENIES in part Defendants' Motion.

21                                    **BACKGROUND**

22       Plaintiffs Yasmine Mahone and Brandon Tole claim that Defendants Amazon.com, Inc.

23   and related entities (together "Amazon") mistreated them on account of their military service in

24

violation of the Uniformed Services Employment and Reemployment Rights Act of 1994

(USERRA). Mahone asserts that Amazon willfully violated USERRA by terminating and

refusing to reemploy her on account of her military service. Tole believes Amazon violated

USERRA by failing to reinstate him with proper seniority and advancement upon returning from

an extended military leave of absence. After providing a brief overview of USERRA, the Court

reviews the facts relevant to each Plaintiff's claims.

**A.    Legal Standards under USERRA**

USERRA was enacted in 1994 "to encourage noncareer service in the uniformed services

by eliminating or minimizing the disadvantages to civilian careers and employment which can

result from such service." 38 U.S.C. § 4301(a)(1). "USERRA protects the job security of

returning veterans." Hanson v. Cty. of Kitsap, 21 F. Supp. 3d 1124, 1136 (W.D. Wash. 2014)

(quoting Petty v. Metro. Gov't of Nashville & Davidson Cty., 687 F.3d 710, 716 (6th Cir. 2012)

(internal citations omitted)). "Through USERRA, Congress endeavored to 'clarify, simplify, and,

where necessary, strengthen the existing veterans' employment and reemployment rights

provisions.'" Belaustegui v. Int'l Longshore & Warehouse Union, 36 F.4th 919, 923 (9th Cir.

2022) (quoting Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002) (quotations

omitted)). "As a law advancing the interests of veterans, USERRA is 'liberally construed for the

benefit of those who left private life to serve their country in its hour of great need.'" Id. (quoting

Ziober v. BLB Res., Inc., 839 F.3d 814, 819 (9th Cir. 2016) (quotation omitted)).

"Several provisions of USERRA coordinate to provide this security: Sections 4312 and

4313, the 'reemployment provisions,' entitle veterans to reemployment after military service and

prescribe the positions to which they are entitled upon returning." Petty, 687 F.3d at 716 (internal

citations omitted). Section "4316 guarantees veterans the same benefits they would have enjoyed

absent the interruption in their employment and prevents employers from terminating without 'cause' any returning veteran within one year of his reemployment." Id. The "discrimination provision," § 4311, "prohibits employers from discriminating against veterans on the basis of their military service." Id. And Section 4318 governs pension plan benefits for returning veterans. 38 U.S.C. § 4318.

**B.     Yasmine Mahone**

Mahone, who is a Private in the Alabama Army National Guard, began working for Amazon on July 16, 2020, in Bessemer, Alabama. (Declaration of Yasmine Mahone ¶¶ 6-7 (Dkt. No. 124-21).) While she was employed by Amazon, she "performed various periods of military service obligations that required [her] to take military leave." (Id. ¶ 8.) Between October 16 and 18, 2020, Mahone performed a "drill weekend" during which she performed all-day military drills. (Id. ¶ 12.) Before taking leave she "timely notified Amazon of [her] impending military service obligations and took military leave without pay . . . from Thursday, October 15 through Sunday, October 18." (Id. ¶ 13.) "Amazon approved this request on September 29, 2020." (Id.)

Notwithstanding the time-off approval, Amazon informed Mahone on October 18, 2022 that she was terminated because she had a negative unpaid time-off (UTP) balance as a result of the hours she missed during the "drill weekend." (Mahone Decl. ¶ 13.) On October 22, 2020, a case manager from the Amazon Disability and Leave Services (DLS) team—Maggie Otarola— emailed Mahone asking "to confirm if [Mahone] believe[d] this had anything to do with un-reported Military leave dates." (Id. ¶ 14.) Otarola told Mahone to contact the HR Military Team if she believe she had been "incorrectly terminated" and to that she would "be required to provide military documentation to support any unreported dates." (Id.)

Mahone provided proof to Otarola that she was "performing military service during October 15-18, 2020" and sent a copy of her fiscal year 2021 drill schedule. (Mahone Decl. ¶ 15.) Otarola told Mahone that her request for reinstatement would be "escalated" to a "specialist for review." (Id. ¶ 16.) Roughly two weeks later Otarola emailed Mahone, stating:

> [O]ur escalations department evaluated your termination case and informed us that since documentation was not provided timely, the leave time was not coded causing the negative UPT hours. At this moment, the DLS team will not proceed with the reinstatement request.

(Id. ¶ 17.)

After Mahone filed suit in September 2022, Amazon advised Mahone's counsel that she had been terminated due to "successive technical and human errors." (Second Amended Complaint ¶ 41 (Dkt. No. 44).) Amazon offered unconditional reinstatement and back pay totaling $47,880. (Declaration of Lauren M. Blas ¶¶ 5-6 (Dkt. No. 29).) Mahone did not accept reemployment, but did accept the cash payment. (Id. ¶ 8; Mahone Decl. ¶ 22.)

In support of its theory Mahone's termination and non-rehire were mere mistakes, Amazon relies on a declaration from Brian Poole, an Operation Manager who manages the global military leave of absence program. (Declaration of Brian Poole ¶¶ 1, 8 (Dkt. No. 90).) Though he was not involved in Mahone's termination, Poole reviewed Mahone's personnel file and provides his opinion that "her termination was related to human error" on two fronts. (Id. ¶¶ 26-29.) First, Poole believes that although Mahone timely notified Amazon of her October 15-18, 2020 military leave and Amazon approved it, the "leave dates were entered in Amazon's timekeeping system incorrectly." (Id. ¶ 27.) He states that "Mahone began to accrue negative UPT when she did not clock in for her shift beginning on October 15, 2020." (Id.) Though not explicit, Poole appears to suggest that someone failed to make sure the timekeeping system coded her travel day, October 15, 2020, as one of the days when Mahone was on military leave.

1    Second, as to the reemployment process, Poole concludes that "one of the individuals conducting

2    the reinstatement review made a mistake." (Poole Decl. ¶ 29.) He believes "the reviewer

3    recognized that Ms. Mahone was attending a military drill from October 16 to October 18, 2020,

4    time during which she should not have accrued negative UPT," but "mistakenly did not consider

5    Amazon's policy and practice of allowing its employees guaranteed safe travel time and rest time

6    prior to service in accordance with USERRA." (Id.) According to Poole "the reviewer

7    mistakenly believed the negative UPT accrued by Ms. Mahone on October 15, 2020, in advance

8    of her drill date, had been accrued without any excuse and justified her termination according to

9    Amazon's policies, which provide that employees who accrue negative UPT may be subject to

10   termination." (Id.)

11       In opposition, Mahone offers no response to Poole's declaration and identifies no

12   contradictory facts. Mahone largely relies on her declaration, which asserts that Otarola "and

13   other employees of Amazon's 'escalation department' had actual knowledge of USERRA and

14   Amazon's obligations thereof." (Mahone Decl. ¶ 18.) But Mahone has not identified any

15   deposition testimony from Otarola or anyone from the escalations department. Aside from her

16   own declaration, Mahone identifies one page of a deposition of Brianna Morell, in which Morell

17   testified that when unpaid time off is deducted, there is no check to see if the person is on leave.

18   (Deposition of Brianna Morell at 23 (Dkt. No. 124-8).) Mahone also cites Amazon's response to

19   an interrogatory that asked Amazon to identify all persons involved in Mahone's termination—a

20   response that appears not to provide information relevant to the pending Motion. (Amazon's

21   Supplemental Responses to Plaintiff's Interrogatory No. 8 (Dkt. No. 124-9).)

22       \\

23       \\

24

1    **C.     Brandon Tole**

2          Tole, who is a commissioned officer in the U.S. Marine Corps Forces Reserve began his

3    employment with Amazon in 2017 "as an Outbound Area Manager," at a level of "L5."

4    (Declaration of Brandon Tole ¶¶ 5-7 (Dkt. No. 124-20) ("Tole Decl.").) Tole was part of

5    Amazon's Military Leaders Program (now called "Amazon Pathways"), which is "an executive

6    management program wherein members would gain experience in as an Area Manager (L5),

7    Operations Manager (L6), Senior Operations Manager (L7), and then 'graduate' the Program to

8    the position of General Manager (L8)." (Id. ¶ 7.) "Participants in Pathways are generally

9    expected to 'promote' from Operations Manager (L6) to Senior Operations Manager (L7) within

10   a 36-month time period and to General Manager (L8) within a 60-month time frame."

11   (Declaration of Brian Dwyer ¶ 3 (Dkt. No. 92).) Those who "do[] not meet these expectations . . .

12   will generally be exited from the Program but can continue working  at Amazon in a non-

13   Pathways role[.]" (Id.)

14         In December 2017, Tole was promoted to Operations Manager (L6) and "expected to be

15   eligible for promotion to L7 during the spring of 2019[.]" (Tole Decl. ¶¶ 8, 11.) In support of this

16   assertion, Tole states that he received positive performance reviews from his supervisor in the

17   first quarter 2019, (id. ¶ 11), which he claims are documented in a report called a "ballcard."

18   (Deposition of Brandon Tole at 223-25.) Though Tole has not provided a copy of the ballcard, he

19   testified that he would have drafted the document and then his supervisor signed off on it. (Id. at

20   202-03.) In addition, Amazon filed a copy of a "Forte" review of Tole from 2019 that includes

21   both positive and negative comments from direct reports and supervisors about Tole's

22   performance. (Exhibit 3 to the Declaration of Brian Richman (Dkt. No. 97-3).)

23

24

1    In January 2019, Tole provided written notice that he had accepted military deployment

2    that was to last from May 2019 to the fall of 2021. (Tole Decl. ¶ 9.) After Tole provided notice

3    of his military service, he states that he "was pulled from consideration for L7 by his supervisor."

4    (Id.) Tole states that other individuals who were part of the Pathways program who started

5    around the same time he did and who did not take military leave were promoted. (Id. ¶¶ 12-14,

6    34-37.) After Tole requested military leave, but before he took it, he was given a negative

7    "overall value" (OV) rating of "least effective" (LE) and put on a "focus plan." (Id. ¶ 17;

8    Declaration of Brandon Tole in Support of Class Certification ¶ 18 (Dkt. No. 73).) An OV rating

9    is a performance-related metric used to "evaluate each eligible employee's performance and

10   potential for future contribution." (Declaration of Brian Dwyer ¶ 6 (Dkt. No. 92).) OV ratings are

11   not the "sole determinant of compensation" and are not available to all employees. (Id. ¶¶ 6, 9-

12   10.) "All employees who are otherwise eligible for OV ratings and who have worked for at least

13   two months (cumulative or consecutive) during the last 12 months of the performance year

14   should be assigned an OV rating." (Id. ¶ 11.) According to Brian Dwyer, a Senior Learning and

15   Development Specialist for the Pathways Program, when an individual takes military leave,

16   "an inter-disciplinary Amazon team, often including members of the legal department, will

17   assess the individual circumstances of any employee who takes a military leave lasting more than

18   10 months during the performance year and make a determination regarding an exemption on a

19   case-by-case basis" and possibly give an OV rating. (Id. ¶ 12.)

20   As to promotion eligibility, Dwyer explains that "[t]he promotions process is not uniform

21   across Amazon and varies based on a number of factors, such as job level, job code, and the type

22   of position." (Dwyer Decl. ¶ 13.) "[T]he promotions process for operations employees seeking to

23   move from L6 to L7 will typically follow a process known as the 'promotion pod.'" (Id.)

24

"Leadership at individual worksites are given discretion with respect to nominating employees to a promotion pod, but generally consider factors that signal an employee's readiness for promotion[.]" (Id.) These factors include: "(1) the type of work the employee is performing and whether it is aligned with the employee's level/role; (2) whether the employee has demonstrated the requisite knowledge and skills pertaining to their current position; (3) whether the employee is operating in a "stretch" role, meaning is effectively performing work of someone at the next job level; and (4) the employee's performance, performance rating, and other individual contributions such as the sophistication and impact of outside projects they have conducted on top of their day-to-day responsibilities." (Id.) Dwyer explains that an OV rating is not required for promotion, and that site leaders can review an employee's "entire performance history in considering whether to promote the individual." (Id.) Promotions are subject to availability and typically require a successful series of "rigorous interview rounds with senior Amazon leaders . . . across different business lines." (Id. ¶¶ 14-15.) Dwyer is familiar with well-qualified Pathway participants with high OV ratings who were not promoted within their "first promotion pod and require a successive attempt at the 'pod' before being promoted." (Id. ¶ 15.)

While on leave, Tole received no bonus or increase in compensation. (Tole Decl. ¶ 19.) Tole returned to work for Amazon in November 2021 and was assigned the position of Inbound Operations Manager (L6) and scheduled for a night shift. (Id. ¶ 24.) Tole's supervisor informed him in January 2022, that he was starting with a "clean slate," and that none of the progress he made before taking military leave could count towards his L7 promotion. (Id. ¶ 25.) Tole was also told in January 2022 that he had received a negative OV rating while on leave, but that he would not receive the basis for this rating. (Id. ¶ 26.) At this same meeting, a manager told Tole that he was "'too new to rate'" and that he would be given an introductory OV rating of "highly

1   valued 1" (HV1). (Id. ¶ 27.) Tole was told that he was next eligible for promotion in August

2   2022. (Id. ¶ 29.) Tole asserts that in the spring 2022, his supervisor told him that he might be

3   removed from the Pathways program for not being promoted to L7 within thirty-six months

4   given that his pre-leave work did not count towards his promotion. (Id. ¶ 30.)

5           With his opposition, Tole submitted copies of text messages exchanged between his

6   supervisors that document Tole's complaints upon his return and their machinations as to how to

7   proceed. (Exhibit 16 to the Declaration of Brian Lawler (Dkt. No. 124-17).) Tole's supervisor

8   reported Tole's expectations surrounding promotion, his displeasure "that he has to start from the

9   beginning as L6 and work his way up," and his belief that "this is in violation of a federal law

10  that is designed to protect military members for taking LOA to serve the country." (Id. at 1.)

11  Tole's supervisor documented that Tole "is not happy with his HV1 rating" that did not "take his

12  service in[to] consideration" and that he was unhappy to be put on a "Focus plan while he was on

13  leave" without notice. (Id.) Tole's supervisory noted that he "wasn't happy the way he was

14  treaded [sic] by the senior team before his leave," which included comments from "some of the

15  seniors [who] told him to have a nice vacation as he was leaving to join the military." (Id.) In

16  response, one supervisor, Neal Ols, wrote that someone—possibly the Pathways "manager"—

17  "made it clear that [Tole's] timelines restarted when he returned more or less and it's not fair for

18  him to assume that he's going to get promoted" and that this applied to "[n]ot just the bad

19  performance, but any progress he made at all." (Id. at 1-2.) Tole's other supervisors noted that

20  Tole "has potential to be a great senior" and that "we will find a way to support him with his L7

21  promo." (Id. at 3.) Tole has not been given an opportunity to interview for a promotion and

22  remains the longest tenured L6 at his location—twenty-eight months at the same pay grade.

23  (Tole Decl. ¶¶ 31-32.)

24

1

**ANALYSIS**

2   **A.      Legal Standard**

3          Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

4   file, and any affidavits show that there is no genuine issue as to any material fact and that the

5   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

6   an issue of fact exists, the Court must view all evidence in the light most favorable to the

7   nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

8   Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is

9   sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The

10  moving party bears the initial burden of showing that there is no evidence which supports an

11  element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

12  Once the movant has met this burden, the nonmoving party then must show that there is a

13  genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the

14  existence of a genuine issue of material fact, "the moving party is entitled to judgment as a

15  matter of law." Celotex, 477 U.S. at 323-24.

16  **B.      USERRA Claim Elements**

17          USERRA protects servicemembers by making it illegal for an employer to deny "initial

18  employment, reemployment, retention in employment, promotion, or any benefit of employment

19  . . . on the basis of that membership, application for membership, performance of service,

20  application for service, or obligation." 38 U.S.C. § 4311(a). In order to prove that Amazon

21  violated USERRA, Mahone and Tole must show that their military status was a "motivating

22  factor" in Amazon's adverse employment determination. See 38 U.S.C. § 4311(c). To prove a

23  USERRA claim, "the employee first has the burden of showing, by a preponderance of the

24

1   evidence, that his or her protected status was 'a substantial or motivating factor in the adverse

2   [employment] action[.]"Leisek v. Brightwood Corp., 278 F.3d 895, 899 (9th Cir. 2002) (quoting

3   National Labor Relations Bd. v. Transp. Mgmt. Corp., 462 U.S. 393, 401 (1983) (modified by

4   Director, Office of Workers' Compensation v. Greenwich Collieries, 512 U.S. 267 (1994)). "The

5   factual question of discriminatory motivation or intent may be proven by either direct or

6   circumstantial evidence." Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001). The

7   "employer may then avoid liability only by showing, as an affirmative defense, that the employer

8   would have taken the same action without regard to the employee's protected status." Huhmann

9   v. Fed. Express Corp., 874 F.3d 1102, 1108 (9th Cir. 2017) (quotation and citation omitted).

10          Because Mahone accepted back pay and refused Amazon's reemployment offer, she may

11   only pursue a claim for liquidated damages that requires her to show that Amazon willfully

12   violated USERRA. (See Order Denying Second Mot. to Dismiss at 8-10 (Dkt. No. 57).) Mahone

13   must show that Amazon's "failure to comply with the provisions of [USERRA] was willful." 38

14   U.S.C. § 4323(d)(1)(C). Regulations define "willful" to mean "the employer either knew or

15   showed reckless disregard for whether its conduct was prohibited by the Act." 20 C.F.R. §

16   1002.312. Considering the same term in the context of the Age Discrimination in Employment

17   Act, the Supreme Court has defined "willful" to mean that "'the employer either knew or showed

18   reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Hazen

19   Paper Co. v. Biggins, 507 U.S. 604, 615 (1993) (quoting Trans World Airlines, Inc. v. Thurston,

20   469 U.S. 111, 128 (1985)); see 20 C.F.R. § 1002.312(c); see also Reed v. Honeywell Int'l, Inc.,

21   2009 WL 886844, at *9 (D. Ariz. Mar. 31, 2009) (A "willful" violation occurs when "the

22   employer knew or showed reckless disregard for the matter of whether its conduct was

23   prohibited."). An intent to violate the statute is not necessary; but it is also not sufficient that the

24

1    employer simply knew of its potential applicability. <u>Thurston</u>, 469 U.S. at 126–28 & n.19.

2    Mahone has the burden of proving willfulness, which may be shown by circumstantial evidence.

3    <u>Paxton v. City of Montebello</u>, 712 F. Supp. 2d 1017, 1021 (C.D. Cal. 2010).

4    **C.    Mahone Fails to Show Willful Violations of USERRA**

5           Mahone has not identified evidence sufficient to show that Amazon willfully violated

6    USERRA in terminating and refusing to reinstate her. The Court GRANTS summary judgment

7    in Amazon's favor on Mahone's two claims.

8           **1.    No Evidence of Willful Violation of USERRA re: Termination**

9           In addition to failing to argue the point, Mahone does not identify evidence showing that

10   Amazon willfully terminated her because of her military leave obligations. (<u>See</u> Opp. at 14-17

11   (arguing only that the failure to rehire Mahone violated USERRA).) The Court finds two fatal

12   flaws in Mahone's claim.

13          First, Mahone has not identified any evidence that anyone involved in her termination

14   acted knowingly or recklessly. Mahone cites only to her own declaration to explain the actions of

15   those involved in her termination. Without any support, Mahone asserts that "Otarola, as a

16   member of Amazon's 'DLS Military Team,' and other employees of Amazon's 'escalation

17   department' had actual knowledge of USERRA and Amazon's obligations thereunder." (Mahone

18   Decl. ¶ 18.) But Mahone has not deposed Otarola or anyone from Amazon's DLS team about

19   this issue, and fails to identify any evidence to support her conjectural assertion regarding their

20   knowledge or state of mind. This is not sufficient to raise a genuine issue of fact. Even if the

21   Court accepted that Otarola and others knew of their obligations under USERRA, there is no

22   evidence they knew terminating Mahone would violate USERRA or that their acts were in

23   reckless disregard of the Act. Nor has Mahone offered any rebuttal to Poole's declaration

24

explaining his conclusion that Mahone's termination resulted from human error—a miscoding of

her time off. (Poole Decl. ¶ 27.) Indeed, Mahone agrees that her termination was the result of a

coding error. (See Pls. Opp. at 5 (noting that Mahone's time off had "been miscoded"; id. at 7

(stating that Mahone's termination could have "been avoided if the DSL Case Manger had

properly coded her absence").) This flatly undermines her claim. Without any factual support,

the claim cannot proceed.

        Second, Mahone fails to provide support for her theory that Amazon willfully violated

USERRA by terminating for not submitting a written request for military leave even though

USERRA permits any form of pre-leave notice. Mahone's argument relies on a set of standard

operating procedures that address "the Negative UPT process" for "hourly Core Associates for

NACF." (Exhibits 6 & 7 to the Supplemental Declaration of Gary Stonebarger (Dkt. Nos. 83-6,

86-7) (these appear to be duplicates).) The Court calls these the Negative UPT SOPs. Mahone

claims the Negative UPT SOPs violate USERRA by requiring "[a]ssociates with an open

Intermittent Military LOA" to "submit a drill letter/military orders to their DLS Case Manager to

have the time [off] coded." (Id. at 5.) There are several flaws in Mahone's argument. One,

Mahone concedes her military leave request was actually granted without any documentation, a

fact that contradicts her present argument. Two, Mahone has not identified any evidence

showing that the Negative UPT SOPs were applied to her leave request. Three, Mahone has not

provided any evidence explaining how these SOPs interact with Amazon's military leave policy

and other standard operating procedures that make clear documentation is not required to take

leave. Though Mahone cites to Morell's deposition, Morell did not testify that the Negative UPT

SOPs were applied to Mahone. (See Morell Dep. at 33 (Supp. Stonebarger Decl. Ex. 5).) Nor did

Morell explain how the SOPs apply generally or interact with Amazon's other military leave

1   policies and procedures. Four, Mahone offers no response to Poole's declaration in which he

2   states that standard operating procedures and policies did not require prior documentation and

3   which allowed for travel time to attend military drills that should have protected Mahone from

4   termination. (Poole Decl. ¶¶ 14-16, 29.) Mahone presents no evidence to support her theory that

5   her termination was caused by a knowing or reckless act. The Court therefore GRANTS

6   summary judgment as to her termination claim.

7           **2.        No Evidence of Willful Violation of USERRA re: Reemployment**

8           Mahone fails to show a material fact supporting her theory that Amazon willfully

9   violated USERRA by refusing to reemploy her, notwithstanding Mahone's claim that there is

10  "significant evidence supporting disputed materials facts sufficient to allow the case to proceed

11  to a jury trial." (Opp. at 15.) The Court agrees with Mahone that there is evidence Amazon knew

12  Mahone took military leave, that the leave caused her termination, and that this leave was

13  protected by USERRA. Accepting Mahone's declaration as true, Otarola told Mahone the

14  "escalations" team determined that because "the documentation [regarding her leave] was not

15  provided timely, the leave time was not coded causing the negative UPT hours" and that "[a]t

16  this moment, the DLS team will not proceed with the reinstatement request." (Mahone Decl. ¶

17  17.) Construed in Mahone's favor, this identifies a violation of USERRA because Amazon

18  improperly required Mahone to provide pre-leave documentation in order to take military leave.

19  See 20 C.F.R. § 1002.85(c) (requiring either verbal or written pre-leave notice in no "particular

20  format"). But Mahone offers no evidence that Amazon made this determination knowing that

21  such pre-leave documentation would violate USERRA or that imposing such a requirement was

22  a reckless disregard of USERRA. At best, Mahone supposes that "Ms. Otarola, as a member of

23  Amazon's 'DLS Military Team,' and other employees of Amazon's 'escalation department' had

24

1   actual knowledge of USERRA and Amazon's obligations thereunder." (Mahone Decl. ¶ 18.) But

2   Mahone offers no facts to support this conjecture, having apparently not deposed Otarola or a

3   single person involved in her case. What is more, Mahone fails to identify any facts that might

4   contradict Poole's assertion that the refusal to reinstate was the result of a compounding human

5   errors that ran contrary to Amazon's military leave policies and practices. (See Poole Decl. ¶ 27.)

6   Specifically, Poole notes that the termination should not have happened because the first day of

7   military leave was not correctly coded—a fact with which Mahone appears to agree. (Id.; Opp. at

8   5, 7.) And Poole suggests that the person in charge of determining the reinstatement failed to

9   correctly apply Amazon's leave policy and include the first day as military leave to account for

10  travel even though there were no military drills that day. (Poole Decl. ¶ 27.) Poole's explanation

11  remains uncontested and he has identified benign reasons for the refusal to reemploy that do not

12  demonstrate an anti-military animus, much less willfulness. On this record, there are no material

13  facts in dispute from which a jury might conclude that Amazon's refusal to reemploy Mahone

14  was the result of a reckless or knowing disregard for USERRA's protections. For these reasons,

15  the Court GRANTS the Motion in Amazon's favor.

16  **D.      Tole's Claim Turns on Disputed Material Facts**

17          Brandon Tole argues that Amazon violated USERRA by failing to reinstate him at the

18  position he would have attained had he not taken military leave. Tole has identified sufficient

19  material facts in dispute on which a jury could grant relief, making summary judgment improper.

20          Tole's claim under USERRA requires him to prove that his military service was a

21  "substantial or motivating factor" in the failure to be reemployed in "the job position that he or

22  she would have attained with reasonable certainty if not for the absence due to uniformed

23  service." 20 C.F.R. § 1002.191; see 38 U.S.C. § 4311(a). The Ninth Circuit endorsed the use of

24

1   "two intersecting doctrines—the 'escalator principle' and the 'reasonable certainty test'—. . . to

2   determine the status or position to which a returning service member is entitled." Huhmann, 874

3   F.3d at 1105. "The 'escalator principle' provides that a returning service member not be removed

4   from the progress ('escalator') of his career trajectory, but rather return to a 'position of

5   employment in which the person would have been employed if the continuous employment of

6   such person with the employer had not been interrupted by such service.'" Id. at 1105-06

7   (quoting 38 U.S.C. § 4313(a)(2)(A)). "The 'reasonable certainty test' aids in determining the

8   returning service member's position on the 'escalator,' inquiring into the position a returning

9   service member would have been 'reasonably certain' to have attained absent the military

10  service." Id. at 1106 (citing 20 C.F.R. § 1002.191). "In all cases, the starting point for

11  determining the proper reemployment position is the escalator position, which is the position that

12  that the employee would have attained if his continuous employment had not been interrupted

13  due to uniformed service." 20 C.F.R. § 1002.192; see also 20 C.F.R. § 1002.213.

14          The "reasonable certainty test" contains "both a forward-looking and a backward-looking

15  approach." Huhmann, 874 F.3d at 1106. "First, the court determines whether it appears, as a

16  matter of foresight, that individuals like a given claimant who successfully completed training

17  would have obtained a certain position had employment not been interrupted by military

18  service." Id. Second, the court "analyzes whether, as a matter of hindsight, a particular claimant

19  either has, or would have, completed the necessary prerequisites for a position." Id. (citing Tilton

20  v. Mo. Pac. R.R. Co., 376 U.S. 169, 181 (1964) ("This requirement is met if, as a matter of

21  foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of

22  hindsight, it did in fact occur.")). Crucial to Tole's claim is Huhmann's conclusion that "[t]he

23

24

1    reasonable certainty test applies to discretionary promotions." Id. (citing 70 Fed. Reg. 75,246,

2    75,271 (Dec. 19, 2005), available at 2005 WL 3451172).

3          Tole has identified disputed material facts concerning whether Amazon violated

4    USERRA by restarting him back at L6 with a "clean slate" that did not consider any pre-leave

5    work towards a promotion. Tole's declaration identified his supervisor's statement that his pre-

6    leave work would not count toward his eligibility for promotion and that he would be given a

7    "clean slate" upon his return. (Tole Decl. ¶ 25.) While a jury might construe the "clean slate"

8    comment to reflect a benefit to Tole—that his supervisors would not consider his pre-leave OV

9    rating of LE and his "focus plan"—the Court must construe this fact in Tole's favor at summary

10   judgment. In addition to the "clean slate" comment, text messages from Tole's supervisors

11   similarly note that Tole would have "to start from the beginning as L6 and work his way up" and

12   that "[Tole's] timelines restarted when he returned more or less." (Dkt. No. 124-17.) A jury

13   could consider this as evidence that Amazon counted Tole's military leave against him by

14   placing him in a worse-off position than had he remained at Amazon and not taken leave. See 20

15   C.F.R. § 1002.191 (explaining that "[t]he escalator principle requires that the employee be

16   reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and

17   other job perquisites, that he or she would have attained if not for the period of service"); 20

18   C.F.R. § 1002.192 (noting that length of service is a factor relevant to determining the

19   appropriate position). Tole has also identified positive reviews of his performance from 2019 and

20   an expectation that he was eligible for a promotion to L7 by 2019. This evidence suffices to raise

21   a dispute of material fact as to whether Tole reasonably expected to return to Amazon in a

22   position of L6 with at least the same seniority (i.e., recognition of the projects he had completed

23   as an L6) and length of service as before he left. Indeed, Amazon does not argue that it was

24

1    appropriate to give Tole a "clean slate" upon his return. Instead, ignoring the "clean slate"

2    evidence altogether, Amazon explains that Tole's managers could consider his work performed

3    outside of a twelve-month period in determining a promotion and that an OV rating itself is not

4    even necessary for a promotion. (See Reply at 9-10.) Construing all of these facts in Tole's

5    favor, a jury could conclude that Amazon's decision to restart his employment with a "clean

6    slate" that discounted any of his pre-leave work violated USERRA by using his military leave as

7    a reason to place Tole in a worse-off position than had he not taken leave. Given these disputes

8    of material fact, the Court DENIES the Motion.

9         In reaching this decision, the Court notes that Tole has provided less evidence that it was

10    reasonably certain he "would have attained L7 if his employment was not interrupted by his

11    MLOA." (Opp. at 18.) Tole relies primarily on his own subjective belief about his eligibility,

12    which lacks specifics as to why precisely he should have been ready for promotion in 2019,

13    particularly since this was far quicker than the 36 months noted as typical for Pathways

14    participants in moving from L6 to L7. But the Court also recognizes that Amazon's standards for

15    promotion eligibility are quite vague. As Amazon explains, "[t]he promotions process is not

16    uniform" and managers instead have discretion to promote based on factors showing an

17    "employee's readiness for promotion." (Dwyer Decl. ¶ 13.) While the record before the Court is

18    not particularly robust, there does appear to be a dispute of fact as to Tole's readiness for

19    promotion and the impact of having been "reset" to the start of his L6 promotion that cannot be

20    resolved at summary judgment. And Amazon has not cited any evidence that might explain why

21    Tole has not been promoted since he returned or some neutral reason that might explain why

22    Tole finds himself in the same position at present. At trial, Tole will likely have an uphill battle

23    in proving that he was eligible for a promotion and that, but-for his military service, he would

24

1   have been promoted to L7 in the time-frame he believes. But at summary judgment, the Court

2   cannot resolve the dispute of fact. This is another basis on which the Court DENIES the Motion.

3                                                    **CONCLUSION**

4          Mahone has not identified sufficient evidence to show Amazon willfully violated

5   USERRA. At most, Mahone has shown that Amazon was aware of USERRA at the time of her

6   termination, but not that Amazon knowingly violated or recklessly disregarded its obligations

7   under USERRA. Tole, on the other hand, has produced evidence showing a dispute of material

8   fact supporting his theory that Amazon violated USERRA by refusing to consider any of his pre-

9   leave work in his pursuit of a promotion and that he has been unfairly denied a promotion as a

10  result of taking military leave. The jury must untangle the disputed evidence and resolve that

11  claim at trial. The Court therefore GRANTS in part and DENIES in part the Motion.

12         The clerk is ordered to provide copies of this order to all counsel.

13         Dated September 25, 2024.

14

15                                                    Marsha J. Pechman
                                                      United States Senior District Judge

16

17

18

19

20

21

22

23

24