UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRANDON TOLE,<br><br>  Plaintiff,<br><br>  v.<br><br>AMAZON.COM, INC., et al.,<br><br>  Defendants. | CASE NO. C22-594 MJP<br><br>ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS |

This matter comes before the Court on Plaintiff's Motion For Attorneys' Fees and Costs. (Dkt. No. 150.) Having reviewed the Motion, Defendants' Response (Dkt. No. 156), the Reply (Dkt. No. 158), and all supporting materials, the Court GRANTS Plaintiff's Motion, in part.

**BACKGROUND**

Plaintiff Brandon Tole and two other plaintiffs pursued classwide claims that Defendants Amazon.com, Inc. and related entities (together "Amazon") mistreated them on account of their military service in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA). The case was initial filed in May 2022, and Tole joined as a third

named plaintiff on January 4, 2023. Tole's claims survived a motion to dismiss, but not his co-plaintiff, Dain Olson. (See Second Amended Complaint (Dkt. No. 44); Order on Motion to Dismiss SAC (Dkt. No. 57); Findings of Fact and Conclusions of Law (Dkt. No. 56).) Along the way to class certification, Plaintiffs were partially successful in one motion to compel, but failed to defend against Amazon's motion to compel counsel for Plaintiff, Gene Stonebarger, to sit for a deposition to explain various summations he prepared in support of Plaintiffs' Motion for Class Certification. (See Order on Motions to Compel (Dkt. Nos. 77, 112).) The Court ultimately denied Plaintiffs' Motion for Class Certification and both Tole and Mahone were forced to pursue their claims individually. (See Order on Motion for Class Certification (Dkt. No. 120).) Amazon then succeeded in obtaining summary judgment in its favor as to Mahone, while Tole identified sufficient disputed material facts preventing summary judgment on his USERRA claims. (Order on Motion for Summary Judgment (Dkt. No. 127).) But the record before the Court was thin, consisting largely of Tole's own declaration, and no testimony or declarations from any of Tole's managers, co-workers, or other witnesses. In ruling on summary judgment, the Court noted that "[a]t trial, Tole will likely have an uphill battle in proving that he was eligible for a promotion and that, but-for his military service, he would have been promoted to L7 in the time-frame he believes." (Id. at 18-19.)

Roughly two weeks before trial, the Parties settled this matter. (See Case Scheduling Order (Dkt. No. 86); Notice of Settlement (Dkt. No. 143).) The Parties resolved Tole's claims on confidential terms, but were apparently unable to reach agreement on counsel's request for attorneys' fees and costs. (Dkt. No. 143.) The Parties then jointly moved for entry of a consent decree to allow the Court determine Tole's request for attorneys' fees and costs. (Joint Motion for Approval and Entry of Consent Decree (Dkt. No. 147).) The Parties noted that "[t]he Decree,

being entered into with the consent of the parties, shall not constitute an adjudication or finding on the merits of the case, nor be construed as an admission by Amazon or a finding of violation of any applicable federal law or regulation." (Id. at 2.) The Court granted the motion for entry of the consent decree, but declined to approve the following finding the Parties proposed:

> This Decree conforms with the Federal Rules of Civil Procedure and USERRA, and is not in derogation of the rights and privileges of any person. The entry of the Decree will further the objectives of USERRA and will be in the best interest of the parties.

(Consent Decree ¶ 7 (Dkt. No. 164); Court's Order on Joint Motion (Dkt. No. 163).) The Court explained that it lacked any basis on which to confirm that this proposed finding was appropriate or accurate. (Order on Joint Motion (Dkt. No. 163).) As entered, the Consent Decree includes the following findings:

> The Court has jurisdiction over the subject matter of this action and the parties to this action.
>
> The terms and provisions of this Decree are lawful, fair, reasonable and just. The rights of the parties are adequately protected by this Decree.

(Consent Decree ¶ 7.) The Consent Decree also contains the Parties' "agree[ment] that this Court shall retain exclusive personal and subject matter jurisdiction over any motions seeking reasonable attorneys' fees and costs attributable to the prosecution of Mr. Tole's individual claims, which Amazon reserves the right to oppose in whole or in part." (Id. ¶ 11.)

Tole now asks the Court to award his attorneys $1,657,445 in fees and $15,442.11 in costs. (See Reply at 7 (Dkt. No. 158).) In support of the fee request, Tole's counsel seek approval of the following hourly rates: (1) $1,200/hour for Gene Stonebarger; (2) $900/hour for Brian Lawler; (3) $600/hour for Kevin Wilson; (4) $775/hour for Daniel Kalish; and (5) $875/hour for Jill Malat. (See Mot. at 12.) Stonebarger claims he reasonably spent 677.4 hours litigating this matter. (Declaration of Gene Stonebarger ISO Reply ¶¶ 2-3 (Dkt. No. 160); Stonebarger Decl.

Ex. 2 (Dkt. No. 152-2).) Brian Lawler claims to have spent 611 hours litigating this matter. (Declaration of Brian Lawler ¶ 8 (Dkt. No. 151); Supplemental Lawler Decl. ¶ 3 (Dkt. No. 159).) Wilson claims to have spent 445.5 hours litigating this case. (Declaration of Kevin Wilson ¶ 7 (Dkt. No. 153); Supplemental Wilson Decl. ¶ 4 (Dkt. No. 161).) Kalish, who has served as local counsel, asks the Court to award compensation for the 67.2 hours he spent and the 6.2 hours his partner, Jill Malat, spent serving as local counsel. (See Declaration of Daniel Kalish Ex. 2 (Dkt. No. 154); Supplemental Kalish Declaration ¶¶ 6-9 (Dkt. No. 162).) These hours include the additional time counsel claims to have incurred in writing the reply briefing to the present motion.

As to his requested hourly rate, Stonebarger, a solo practitioner, notes that of his 25 years in practice, he has spent 15 years experience litigating USERRA claims, including as co-counsel with Brian Lawler. (Stonebarger Decl. ¶¶ 2-5 (Dkt. No. 152). He claims that his currently hourly rate of $1,200/hour, which he set in December 2023, should apply to all of the hours he spent litigating this case. (Id. ¶ 9.) He believes his rate is "consistent with the rates for an attorney with my stature, expertise, experience and reputation in the legal community[.]" (Id. ¶ 9.) Stonebarger claims his "rate is comparable to the prevailing market rates in the Seattle legal community for an attorney of my skill, reputation, experience and expertise in complex business litigation." (Id.) Stonebarger does not claim that any client has paid this rate or any other rate, and he has not submitted a declaration from a fellow attorney to speak to his hourly rate, skill, experience, expertise, or reputation. Instead, he relies on "data available in the 2023 Litigation Hourly Rate Survey & Report issued by the National Association of Legal Fee Analysis" (NALFA) that he purchased. (Id.) He claims that based on his skill, experience, and reputation, he believes he fits the highest tier within this data set, which qualifies him for $1,200/hour. (Id. ¶ 10.) He also notes

that in 2021 the Santa Clara Superior Court approved a rate of $850/hour and that between 2016-2020, his "prior rate of $795 per hour was approved by Courts" in Illinois and California. (Id. ¶ 11.) He further claims that between 2014 and 2016 courts in California approved a rate of $750/hour, and that between 2012 and 2014, courts in California also approved a $650/hour rate. (Id. ¶¶ 12-13.)

Brian Lawler has over twenty years of experience and a focus on USERRA claims dating back to 2009. (Lawler Decl. ¶¶ 2-3, 6-7.) He claims that his current hourly rate of $900/hour is "consistent with the rates for an attorney with my stature, experience and reputation in the legal community and my nationally recognized expertise in USERRA." (Id. ¶ 11.) Lawler relies on the same NALFA data that Stonebarger purchased to support his assertion that his rate is consistent with a "Tier 3" rate, though he does not explain why he fits this tier. Like Stonebarger, Lawler offers no declaration from a Washington-based attorney to back up his requested rate. (Id. ¶ 11.) Lawler points out that in 2024, the Nueces County Court (in Texas) granted a fee petition that included a $750/hour rate. (Id. ¶ 13.) Lawler does not explain why he is now claiming a rate that exceeds this by $150/hour. Lawler also claims that several times since 2019, the "MSPB" (which the Court believes refers to the Merit Systems Protection Board) has awarded him fees in the rate of $700/hour. (Id. ¶ 10.) As with Stonebarger, Lawler does not claim that any client has paid his $900/hour rate or any other rate, and he does not identify when he set his $900/hour rate.

Kevin Wilson is a 2015 graduate of Northern Kentucky University School of Law, and has maintained his own law firm since 2018. (Wilson Decl. ¶¶ 2-6.) He asks for approval of a $600/hour rate based on the NALFA data Stonebarger purchased, claiming that he is a "Tier 2" attorney based on his skill, reputation, experience, and expertise. (Id. ¶¶ 8-9.) Wilson does not cite to or rely on a declaration from a Washington-based attorney to confirm that this rate is

consistent with the legal community and Wilson's skill, reputation, experience, and expertise. And Wilson does not identify any court that has approved any hourly rate, or any rate that he customarily charges his paying clients.

Local Counsel, Daniel Kalish, has nearly twenty-fives years of experience after graduating from Yale Law School and he asks for approval of $775/hour rate. (Kalish Decl. ¶¶ 3- 4.) He does not cite to a rate he customarily charges clients, but notes that more than six years ago, a King County Superior Court judge approved his rate of $600/hour in an employment matter. (Id. ¶ 6.) Kalish claims that his rate is "reasonable," but he does not aver that it is consistent with rates charged in this legal community for someone of his skill, reputation, and experience. (Id. ¶ 8.) Unlike the other attorneys, Kalish does not rely on NALFA data. But like the other attorneys, he has not provided any declaration from a Seattle- or Washington-based attorney to speak to his rate. As managing partner of HKM Employment Attorneys LLP, Kalish asks for approval of a rate of $875/hour for Jill Malat, a parter at HKM. (Id. ¶¶ 4, 7.) Kalish states that Malat's rate is "a reasonable and average rate of attorneys in the area with her experience" and that she has "fantastic reputation" spanning over thirty years. (Id. ¶¶ 7-8.)

As to costs, Plaintiffs identify $15,442.11, which were incurred by Stonebarger and Lawler. With little detail, Stonebarger claims he incurred $2,681.64 in "Travel/Lodging Expenses for Depositions." (Stonebarger Decl. Ex. 2 at 10.) Lawler's more detailed accounting shows he incurred $12,760.47 for deposition transcripts, a flight, ground transportation, and a hotel.

# ANALYSIS

## A. Legal Standard

"The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). To determine the fee award for a prevailing party, the Court begins by calculating a lodestar "by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. And "[i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

The Court determines the hourly rate by considering the "evidence produced by the parties, including fee rates of other attorneys in similar practices, awards in comparable cases, counsel's experience and reputation level, and the market rates, as well as two additional Kerr factors: the novelty/difficulty of the issues and the preclusion of other work." Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." Bell v. Clackamas County, 341 F.3d 858, 868 (9th Cir.2003). These are typical the rates for the forum district. See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir.1992). The Court may also rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. Ingram v. Oroudjiam, 647 F.3d 925, 928 (9th Cir. 2011).

In deciding the number of hours "reasonably expended," the Court considers whether the time on matter that was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at

434. The requesting attorney must provide reasonable documentation of the work performed to enable this determination. Id. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. Additionally, hours that are block billed "make[] it more difficult to determine how much time was spent on particular activities." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). The Court may reduce hours that are block billed, but it "should 'explain how or why . . . the reduction . . . fairly balance[s]' those hours that were actually billed in block format." Id. (quoting Sorenson v. Mink, 239 F.3d 1140, 1146 (9th Cir. 2001)).

**B.      Basis for Attorneys' Fee Award**

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598, 602 (2001). But under USERRA, the Court may "award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses." 38 U.S.C. § 4323(h)(2). A "prevailing party" is "'[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded[.]" Buckhannon, 532 U.S. at 603 (quoting Prevailing Party, Black's Law Dictionary 1145 (7th Ed. 1999)). As is important here, "[i]n addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." Id. at 604. "Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered 'chang[e][in] the legal relationship between [the plaintiff] and the defendant." Id. (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989)) (citation omitted). For example, in Maher v. Gagne, the Supreme Court found fees properly awarded under 42 U.S.C. §

1983 after the parties entered into a consent decree that provided the plaintiff some sought-after benefit without any determination that the plaintitff's constitutional rights had been violated. 448 U.S. 122, 127 (1980).

Although the Court has approved a consent decree, it has not been provided with the terms of the settlement agreement or any basis on which to determine whether and to what extent Plaintiff has "prevail[ed]" on his USERRA claims. See 38 U.S.C. § 4323(h)(2). This puts this matter on different footing from Maher, where the district court knew that the settlement agreement afforded plaintiff a substantial benefit. 448 U.S. at 125, 129-30 (noting that the district court made a finding the plaintiff was the prevailing party and that she had a "substantial increase" in benefits). Here, the Court has made no affirmative finding regarding Plaintiff's success on his claims or the nature of the relief, if any, he obtained. At most, Plaintiff successfully defended against a motion to dismiss and a motion for summary judgment. But without knowing the terms of the settlement agreement, the Court has not and cannot make any determination whether Plaintiff prevailed. And Amazon contests this point. (See Resp. at 1 (Dkt. No. 156 at 6).) As such, the Court cannot and does not find Plaintiff to be a prevailing party entitled to fees under USERRA.

Notwithstanding this fact, Amazon concedes that Plaintiff is entitled to fees and costs under the Parties' settlement agreement "and the consent decree effectuating it." (Resp. at 1.) Specifically, Amazon states that it "agreed that Mr. Tole could seek only those fees 'attributable to the prosecution' of those settled 'individual claims,' which were based on Mr. Tole's supposed non-promotion." (Resp. at 2 (Dkt. No. 156 at 7).) This is consistent with the Consent Decree, which states that the Parties' "agree that this Court shall retain exclusive personal and subject matter jurisdiction over any motions seeking reasonable attorneys' fees and costs

1  attributable to the prosecution of Mr. Tole's individual claims, which Amazon reserves the right
2  to oppose in whole or in part." (Consent Decree ¶ 11.) The Court therefore finds that it may
3  award fees pursuant to the Consent Decree and settlement, but only for those hours attributable
4  to Plaintiff's individual claims.

**C.     Reasonable Fee**

The Court finds itself in an unusual position of assessing the reasonableness of the fee without knowing precisely what benefit the plaintiff obtained. The Court therefore relies on its familiarity with this matter, its litigation history, and the skill shown by Plaintiff's counsel. The Court reviews the hours expended, the rates requested, and any reductions based on the billing records to arrive at its calculation of a reasonable fee. The Court notes that the Parties are far apart, with Plaintiff requesting over $1.6 million, and Amazon conceding that only $122,000 is a reasonable award.

**1.     Hourly Rates**

Plaintiff's counsel have failed to provide sufficient evidence to justify the hourly rates requested.

Stonebarger, Lawler, and Wilson request approval of hourly rates for which there is inadequate evidentiary support. Customarily, counsel will provide a declaration from an attorney based in Washington who knows counsel's work in general and their work on the matter in question and who will opine on whether their requested rates are reasonable and in line with an attorney of their skill, expertise, and reputation for this locality. See Gates, 987 F.2d at 1405 (noting the need to consider localized rates). Here, counsel instead relies on data presented in the NALFA report. But the Court is unpersuaded that the NALFA data is adequate to justify the requested rates. The report's data are generalized and based on survey data that has not

necessarily been shown to accurately reflect Seattle market rates or this particular case. Moreover, the data tables are stratified based on "tiers" without any guidance on how to determine the relevant "tier" to which an attorney should fall. Here, counsel have simply self-selected the "tier" to which they claim to belong with little explanation or justification. The Court lacks any evidence to know whether that counsel fits the selected "tier" or whether the tier data accurately reflects each of these three attorneys' skill, reputation, and expertise or their performance in this case. Nor does the NALFA data claim to reflect the novelty and difficulty of the work, or whether this precluded counsel from other work—all relevant factors. See Dang, 422 F.3d at 814. In addition, Stonebarger's, Lawler's, and Wilson's requested rates are difficult to justify with comparison to Kalish and Malat's requested rates of $775/hour and $875/hour, who are both Seattle-based practitioners with similar or greater experience. This shows just how outside the market the requested hourly rates of $1,200, $900, and $600 are for attorneys with similar or far less experience.

The Court also notes that the rates requested fall far afield from hourly rates approved by this Court in USERRA and other employment discrimination cases. For example, in a USERRA case decided ten years ago, the Court found $400/hour reasonable for an attorney of 20 years experience, and $350/hour reasonable for two attorney who had "much less experience, but [who] . . . supported the [request] . . . by substantial evidence." Hanson v. County of Kitsap, C13-5388 RJB, Dkt. No. 332 at 7 (W.D. Wash. June 30, 2015) (a case resulting in a favorable jury verdict for the plaintiff). The undersigned also approved a $525/hour rate for counsel in an employment discrimination case where counsel had 22 years of experience, obtained a $6.8 million verdict for her client, regularly billed clients at that rate, and provided three declarations attesting to the reasonableness of the rate. See Goldstine v. Fedex Freight Inc., C18-1164 MJP,

1  Dkt. No. 410 at 4-5 (W.D. Wash. Mar. 12, 2021). In that same case, the Court approved
2  $375/hour for counsel with eight years of experience, who provided no evidence what clients
3  regularly paid her and did not convince the Court that her skills were sufficiently comparable to
4  those closer to her requested $425/hour rate. Id. at 5-6. In another employment discrimination
5  case, the Court approved a $375/hour rate for an attorney with seven years of experience who
6  assisted in the recovery of an $11 million verdict for his client. See Kingston v. IBM, C19-1488
7  MJP, Dkt. No. 192 (W.D. Wash. June 29, 2021). In that same case, the Court approved
8  $525/hour for an attorney from the same firm with 15 years experience who regularly charged
9  $725/hour nationally and showed excellent trial work, as well as $525/hour for highly-skilled
10 local counsel with nearly twenty years of experience. Id.; see id., Motion for Attorneys' Fees,
11 Dkt. No. 146. Both attorneys provided supporting declarations from local practitioners.

12       Based on the Court's observations, it finds that lower hourly rates are appropriate for all
13 three attorneys. As to Stonebarger, the Court finds that a rate of $475/hour more accurately
14 reflects his skill, experience, reputation, and the results achieved in this litigation. The Court
15 arrives at that figure after considering: (1) the awards it has made in employment discrimination
16 cases; (2) the relative skill Stonebarger displayed throughout the life of this case; (3) the lack of
17 supporting evidence from local practitioners; and (4) and the lack of any evidence as to what
18 counsel recovered for Plaintiff. While the Court does not doubt Stonebarger has experience
19 litigating USERRA cases, it did not observe a high level of skill that might merit the substantial
20 rate requested. Additionally, Stonebarger made several missteps in this case, including preparing
21 summation data central to class certification that not only forced him to sit for a deposition, but
22 also lacked sufficient reliability to be admissible. Other than getting Tole's claims to survive a
23 motion to dismiss and summary judgment, Stonebarger and his compatriots were largely
24

unsuccessful in this action, having lost two of the named plaintiffs, class certification, and a motion to compel. And while the Court is aware that Stonebarger has been awarded fees at higher rates, none of those cases reflect this rates reasonable for this District. Nor do they reflect a rate the Court believes is reasonable based on the case before it.

As to Lawler, the Court finds that a rate of $450/hour is appropriate. As with Stonebarger, Lawler has not provided declarations from local counsel to support his $900/hour request. Given what the Court was able to observe, Lawler did not necessarily demonstrate any greater skill than Stonebarger, though he does have somewhat less experience overall. The Court finds greater merit in comparing Lawler's request to the hourly rates it has approved in recent employment discrimination cases. In so doing, the Court notes that counsel with similar experience, but who achieved substantial success (multi-million-dollar jury awards) and showed particularly strong trial and written advocacy were awarded $525/hour. See Goldstine, C18-1164 MJP; Kingston, C19-1488 MJP. Given the relative success achieved here and the skill shown along the way, the Court finds a $450/hour appropriate. The Court is aware that a Texas county court awarded Lawler $750/hour in 2024, but this does not make the fee request here reasonable. Even if the Court assumed this reflects a reasonable fee, the Court lacks any evidence why this would support a $150/hour increase for Lawler's work on this case. The Court also notes that Lawler does not claim that any client has paid his $900/hour rate and he offers no supporting evidence that his skill, reputation, and experience justify this rate. The Court approves the $450/hour rate, instead.

As to Wilson, the Court finds that a rate of $375/hour is appropriate. Wilson never argued before the Court, and he appears only to have assisted in drafting the briefing, in discovery, and in preparing for trial. The Court is not aware of any particular skill demonstrated by Wilson. It

notes that he has ten years of experience, but he has not cited to any rate he typically charges clients or any rate that a court has approved. Considering recent employment discrimination cases, the Court finds a rate of $375/hour more accurately reflects Wilson's skill, experience and reputation.

Lastly, the Court finds that an award of $475/hour for Kalish and $500/hour for Malat to be appropriate. Kalish relies on no evidence to justify his requested rate of $775/hour except an award of $600/hour from a King County Superior Court employment case. (Kalish Decl.) The Court here is not convinced that the $600/hour rate reasonably reflects Kalish's skill shown in this matter. Kalish served as local counsel and admits that until March 2024, he only read emails after they were sent and "usually reviewed filings by Plaintiffs for the first time after they were filed." (Supp. Kalish Decl. ¶ 3.) It was only after the Court admonished Kalish that he had a substantive role to play as local counsel that he apparently began to perform the substantive duties of local counsel. In addition, the Court reviewed the transcript of Stonebarger's deposition in which Kalish repeatedly made improper objections and directed Stonebarger not to respond. Based on what the Court observed, Kalish should not be entitled to a rate any greater than Stonebarger. The Court notes that it sets this rate based explicitly on what it observed in this case, and sees no reason why Kalish might be entitled to a higher rate for worked performed outside of the role of local counsel or in other matters. As to Malat, Kalish himself avers that she has over 30 years experience, "has a fantastic reputation," and that her requested $875/hour "is a reasonable and average rate of attorneys in the area with her experience." (Id. ¶ 7.) This evidence, from a partner in the same law firm, is not particularly convincing. Malat herself only billed 6.2 hours in the lead-up to trial, and the Court never observed her advocate in this matter. Considering Malat's experience and the thin evidence of her reputation, the Court finds that she,

too, should be awarded $500/hour for her work. This is in line with the rates the Court has awarded to counsel with perhaps less experience but who showed excellent skill and results.

**2.      Time Expended**

The Court agrees with Amazon that there must be substantial reductions to hours expended in determining Plaintiff's request for fees.

First, the Court excludes all time spent by counsel before Tole became a plaintiff. As the Consent Decree makes clear, the Parties agreed that Plaintiff could seek an award for "reasonable attorneys' fees and costs attributable to the prosecution of Mr. Tole's individual claims." Here, Tole signed a representation agreement with counsel on January 3, 2023. (Lawler Decl. Ex. 2.) While some of the time spent before this would have served as the foundation for the complaint Tole joined, the Court finds that it should be excluded. After signing Tole as a client, counsel prepared and billed substantial time for preparing a second amended complaint. Thus, the Court is compensating counsel for the time the spent conferring with Tole and preparing his claims.

Second, the Court excludes time spent litigating issues specific to former Plaintiffs Yasime Mahone and Dain Olson. This is consistent with the Parties' agreed consent decree and the Consent Decree entered by the Court.

Third, the Court excludes the time counsel spent unsuccessfully seeking class certification. Plaintiff was unsuccessful in his attempts to have several classes certified, and the time spent on certification did not benefit the prosecution of Tole's individual claim. To this end, the Court also notes that the time incurred by Plaintiff in fighting Amazon's motion to compel Stonebarger's deposition and the deposition itself was not well spent and shall be excluded. The Court understands, though, that at least some of the class-related discovery also benefitted Tole's

individual claims, as counsel was able to develop testimony specific to the internal rating and promotions systems and Amazon's military-specific policies and procedures. This information was useful in Tole's opposition to the summary judgment and has not been excluded.

Third, as to Kalish, the Court excludes all of the time he billed before March 26, 2024. As Kalish admits, he did little more than review emails and filings, rather than provide legal advice or services. (Supp. Kalish Decl. ¶ 3.) Local counsel does not merely follow along with the litigation like one reads the news. "[L]ocal counsel must review and sign all motions and other filings, ensure that all filings comply with all local rules of this court, and remind pro hac vice counsel of the court's commitment to maintaining a high degree of professionalism and civility from the lawyers practicing before this court as set forth in the Introduction to the Civil Rules." Local Civil Rule 83.1(d)(2). As the Local Rules make clear, local counsel must provide substantive guidance to outside counsel, helping them navigate the local rules and abide by the expectations of practitioners in this District. Local counsel serves an important role, and the Court finds no merit in rewarding Kalish for time incurred when he was not meeting the basic requirements of his role before March 26, 2024.

### 3. Billing Practices

The Court agrees with Amazon that there are excessive hours in some of billing records submitted.

First, Stonebarger has block-billed his time without any segregation of time spent on discrete tasks. This interferes with the Court's ability to determine whether the hours incurred were reasonably spent. And as Stonebarger's records shows, he has block billed large numbers of hours on many single days for multiple, divergent tasks. The Court doubts whether the time was well spent and the work performed efficiently. Without segregation of his time entries, the Court

believes that a large number of his billing entries reflect unreasonable hours spent. Accordingly, the Court reduces the block billing by 25% for all entries over 3 hours. For Stonebarger's reference, Kalish's billing records shows an appropriate level of detail and segregation of time billed in a single day.

Second, the Court finds that Stonebarger, Wilson, and Lawler billed excessive hours towards the same tasks and unreasonably duplicated work. Particularly considering that the Court is only looking to compensate for hours reasonably spent litigating Tole's individual claims, the Court finds that counsel expended excessive time for the same tasks, including briefing, discovery, and trial preparation. The Court has not been presented with compelling reasons why three attorneys were needed to bill on the same tasks. The Court has reduced therefore entries it has identified as excessive by 30% to reflect what it believes to be a reasonable time that should have been spent.

Third, the Court finds that both Lawler and Wilson have included vague time entries, often for .1 or .2 billing increments that do not allow the Court sufficient information to know whether the time spent was reasonable or not. Both Lawler and Wilson billed substantial time to "emails with co-counsel," "emails with opposing counsel," "conference with co-counsel" and the like without providing any insight into what the work was actually accomplished. These kinds of entries lack sufficient specificity to allow the Court to know what tasks were accomplished and whether the time spent reasonably advanced the litigation. The Court reduces by 75% the time billed by Lawler and Wilson for emails and conference among co-counsel and by 50% the time vaguely billed for emails and conferences with opposing counsel. The Court finds this reasonably calculated to identify those hours that might be reasonable to allow co-counsel to strategize and to work efficiently with opposing counsel.

1    Fourth, the Court notes that its reduction in hours billed also reflects the Court's view that
2    counsel focused far more on class-specific issues, rather Tole's individual claims throughout the
3    life of this case. As became apparent in the summary judgment briefing, counsel gathered
4    discovery from Amazon solely from corporate witnesses about HR policies in general, without
5    ever deposing an individual about Tole's specific circumstances. This was a knowing choice to
6    focus on class certification, rather than Tole's individual claims. This was also reflected in the
7    fact that Plaintiff's opposition to summary judgment relied solely on a declaration from Tole to
8    describe the circumstances around his employment. Given that the Parties have agreed the Court
9    must focus on the hours reasonably expended in litigating Tole's individual claims, the Court
10   finds that the reductions made above reflect the Parties' mutual goal.

**4.     Total Award**

Considering the adjustments explained above, the Court AWARDS: (1) $95,000 to Stonebarger (200 hours); (2) $86,400 to Lawler (192 hours); (3) $47,250 to Wilson (126 hours); (4) $7,125 to Kalish (15 hours); and (5) $3,225 to Malat (6.2 hours). In total, the Court finds an award of $239,030.00 is a reasonable sum to be awarded as attorneys' fees in light of the skill, experience, and reputation of counsel, the limited success Tole achieved, and the absence of any information as to the settlement agreement and what benefit was conferred. This reflects compensation for nearly 540 hours of work. While this is far less than what Plaintiff requested, the Court finds it reasonable and substantially more than the $122,000 Amazon suggested..

**D.     Costs**

Plaintiff also requests entry of an award of $15,442.11 in costs. Amazon concedes that these costs are reasonable. The Court finds these costs are reasonable and awards them in full.

# CONCLUSION

Plaintiff's Motion presents an unusual request given the posture of this case. The Parties settled this matter, and without disclosing any terms of the agreement, Plaintiff has asked for a substantial attorneys' fee award. The Court finds that the rates requested are unreasonable and that Plaintiff's counsel failed to supported the requested rates with sufficient evidence. Additionally, the Court finds substantial flaws in the billing records and excessive hours spent litigating this relatively straightforward employment discrimination matter. The Court finds that an award of $239,022 in fees and $15,442.11 is an appropriate award based on the record presented and the Court's intimate familiarity with this case. The Court therefore AWARDS Plaintiff $239,022 in attorneys' fees and $15,442.11 in costs. On these grounds, the Court GRANTS Plaintiff's Motion, in part.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 12, 2025.

Marsha J. Pechman
United States Senior District Judge